UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

MELANIE WALSH, individually and on
behalf of all others similarly situated,

                Plaintiff,               Case No.
                                            6:14-CV-1290-ORL-31-KRS

v.

GLOBAL MARKETING RESEARCH
SERVICES, INC., a Florida corporation, and
ANTHONY DIANA, individually,

                Defendants.

**DEFENDANT, ANTHONY DIANA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR ALTERNATIVELY TO STRIKE CERTAIN PORTIONS OF PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Anthony Diana ("Diana" and "Defendant") by and through his undersigned attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Class Action Complaint and Demand for Jury Trial (the "Complaint") filed by Plaintiff, Melanie Walsh ("Walsh" and "Plaintiff") or, alternatively, to strike certain portions of the Complaint pursuant to Federal Rules of Civil Procedure 12(f) and, in support thereof, states as follows:

**INTRODUCTION**

Plaintiff filed her Complaint against Global Marketing Research Services, Inc. ("GMRS") and its "President" and "Registered Agent", Anthony J, Diana, alleging in the prefatory section of the Complaint titled "Nature of the Action" that "Defendants" are in the business of conducting telephone surveys by making autodialed calls to thousands of consumers nationwide; and repeatedly made autodialed "**telephone calls**" to the "**cell**

**phones**" of Plaintiff (see ¶2 of the Complaint)[emphasis added] and other members of the putative Class without their consent in violation of the Telephone Consumer Protection Act (47 U.S.C. §227) ("TCPA") (see ¶1 and ¶2 of the Complaint)[1]. It is Defendant's overall position that Plaintiff has alleged contradictory statements of fact throughout the Complaint by use of the term "Defendants" in numerous paragraphs[2], failing to differentiate between GMRS as a corporate Defendant and Anthony Diana as an individual officer and "Registered Agent" of GMRS. Plaintiff alleges in ¶7 of the Complaint that Diana is the "President" and "Registered Agent" for GMRS. In this regard, Plaintiff has improperly brought a "shotgun complaint" against Defendants, asserting a single count for an alleged violation of the TCPA [limited to an alleged violation of 47 U.S.C. §227(b)(1)(A)(iii), only] using the term "Defendants" interchangeably; making it is impossible to determine what allegations apply to GMRS and what allegations apply to Diana.

Plaintiff concedes that GMRS is "a telephone research service company that conducts telephone surveys for business and political purposes" (¶13 of the Complaint). Further, while Plaintiff alleges in ¶2 of the Complaint that Defendants made autodialed calls to the "cell phones of Plaintiff"; in the portion of the Complaint specific to Plaintiff, it appears that Plaintiff "ignored these calls" (see ¶23 of the Complaint); and, only answered one call and talked with a live GMRS operator (see ¶23 through ¶24 of the Complaint). The Complaint does not include any allegation that Diana was the live "operator" that talked with Plaintiff. No other facts addressing whether Plaintiff consented to the call or whether Plaintiff was

---

[1] For purpose of this Motion the symbol "¶" is used to for "paragraph" in reference to the Complaint.
[2] See Complaint at: ¶¶ 9, 10, 11, 13, 14, 16, 19, 20, 21, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, and 37.

placed on a "do not call" list are alleged in the Complaint. Clearly, Defendants were not alleged to have engaged in a commercial transaction and no allegations that Defendants are telemarketers are included in the Complaint.

While Plaintiff alleges that she received a call on her cell phone (¶22 of the Complaint), Plaintiff also fails to allege whether or not her cell phone number(s) had been ported from a land line number which is an express exemption to the application of 47 U.S.C. §227(b)(1)(A)(iii); which is the only part of the TCPA, at issue, in this case. See, 47 C.F.R. §64.1200(a)(1)(iv). Plaintiff's Complaint is replete with inconsistent allegations as to whether Defendants called either one or multiple "cell phones" of Plaintiff and whether as alleged in ¶23 and ¶24 of the Complaint, Plaintiff answered a single call or multiple calls from Defendants.

Plaintiff clarifies the designated "Nature of the Action" in ¶3 of the Complaint by alleging that "GMRS caused harm" by "making these autodialed calls"; thereby omitting any allegation that Diana caused any harm to Plaintiff or the putative "Class". In ¶11 and ¶12 of the Complaint, Plaintiff attempts to further clarify her attempt to assert personal liability against Diana by making the conclusory allegation that "on information and belief, Defendants GMRS and Diana are alter egos of each other." The claim is apparently predicated on the allegation that Diana is the "President" and "Registered Agent" for GMRS (see ¶7 of the Complaint).

Further, Plaintiff has limited the key factual allegations in ¶11 and ¶12 relevant to the claims that Plaintiff should be allowed to pierce the corporate veil afforded GMRS "to avoid

an unjustified loss to Plaintiff" or to "avoid oppression, fraud and inequity". See ¶11 of the Complaint.

Plaintiff also asserts in a generalized statement that Diana "directly and personally participated in, directed and/or authorized and ratified conduct constituting the statutory violations". See ¶11 and ¶12 of the Complaint. In ¶12 of the Complaint, Plaintiff alleges that, "on information and belief"[3] Diana established and/or approved GMRS' policies and practices; oversaw operations; and, was directly involved in the business practice that violated TCPA. These same generalized allegations have been rejected as a basis for the imposition of personal liability on a corporate officer.

Plaintiff has failed to allege any specific facts which would support her conclusory allegations against Diana justifying the imposition of personal liability on Diana in this action. As a result, Plaintiff's Complaint fails to state a claim upon which relief can be granted and is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that shows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The

---

[3] While it is permitted for Plaintiff to allege "on information and belief", it is illustrative of the fact that Plaintiff fails to allege any specific facts other than conclusory generalized statements to support Plaintiff's assertion of personal liability in this action.

plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678.

While a complaint does not need detailed factual allegations to survive dismissal, "[a] pleading that offers labels and conclusions or a formulaic reaction of the elements of a cause of action will not do. Nor does a complaint suffer if it tenders naked assertions devoid of further factual enhancement." *Id.* A complaint is subject to dismissal under Rule 12(b)(6) if it does not allege sufficient facts to "raise a right to relief above the speculative level." *Wagner v. CLC Resorts and Developments, Inc.*, 2014 WL 3809130 (M.D. Fla. 2014). In sum, where a plaintiff's complaint fails to "nudge[] his claims . . . across the line from conceivable to plausible," it must be dismissed. *Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 570.

## ARGUMENT

Plaintiff's Complaint must be dismissed as to Defendant, Anthony Diana, because it fails to state sufficient factual allegations to establish a basis for individual liability on the part of Diana, with respect to the single call to Plaintiff by a live operator.

**Alter Ego Allegations.**

To pierce the corporate veil in Florida, a Plaintiff must allege that: (i) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was, in-fact, non-existent and the shareholders were in fact alter egos of the

corporation; (ii) the corporate form must have been used fraudulently or for an improper purpose; and (iii) the fraudulent or improper use of the corporate form caused injury to the claimant. *Gasparini v. Pordomingo*, 972 So.2d 1053 (Fla. 3d DCA 2008). In this case, Plaintiff does not allege facts sufficient to satisfy these elements. Instead, Plaintiff makes the conclusory allegation that:

> "On information and belief, Defendants GMRS and Diana are alter egos of each other. A unity of interest and ownership exists between them such that any separateness has ceased to exist, there is a commingling of property rights or interests such that Defendants GMRS and Diana essentially function as one, and they have acted in concert doing the acts alleged in this Complaint. In addition, upon information and belief, the conduct that gives rise to the claims for relief alleged herein was committed by, on behalf of, Defendants GMRS and Diana, and harmed Plaintiff and the proposed Class. Therefore, to avoid an unjustified loss to Plaintiff and the Class, or to avoid oppression, fraud, and inequity, recognition of Defendants GMRS' and Diana's separate corporate status should be disregarded." (¶11 of the Complaint).

Plaintiff's Complaint fails to establish the factual predicate to justify piercing the corporate veil under Florida law. *See, Gasparini v. Pordomingo*, 972 So.2d 1053 (Fla. 3d DCA 2008); citing *Lipsig v. Ramlawi*, 760 So.2d 170 (Fla. 3d DCA 2000) ("[E]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's identity was lawfully maintained").

In her Complaint, Plaintiff takes the position that, because GMRS is a closely held corporation, Plaintiff should be permitted to disregard GMRS' corporate status and pursue claims directly against Diana. (*See*, ¶11 of the Complaint "to avoid an unjustified loss to Plaintiff and the Class, or to avoid oppression, fraud, and inequity, recognition of Defendants GMRS' and Diana's separate corporate status should be disregarded"). This assertion is repugnant to Florida law. *See, Gasparaini, supra*, "The law is clear that the mere ownership

of a corporation by a few shareholders, or even one shareholder, is insufficient reason to pierce the corporate veil." In order to state a cause of action against Diana, individually, Plaintiff is required to allege facts that would show that the actions of GMRS were fraudulent. *See, Resolution Trust Corporation v. Latham & Watkins*, 909 F.Supp. 923 (S.D. N.Y. 1995) ("Absent proof of intentionally fraudulent conduct, courts simply do not pierce the corporate veil under Florida law"); *see also, Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla. 1984) (the corporate veil will not be penetrated at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them). Plaintiff has failed to allege any facts that would allow the court to draw a reasonable inference that GMRS was organized or employed to mislead creditors or to work a fraud upon them and, unable to plead the required elements for the Court to pierce GMRS's corporate veil, Plaintiff asks that the Court pierce GMRS's corporate veil "to avoid oppression, fraud, and inequity" (¶11 of the Complaint). This is not the standard for piercing the corporate veil. Under Florida law, improper conduct warranting piercing of the corporate veil must be deliberate misconduct and court looks to shareholders' subjective motivation, and not to effect of their actions. *In re Hillsborough Holdings Corp.*, 166 B.R. 461 (M.D. Fla. 1994). Further, even if Plaintiff had alleged that corporate formalities were not observed, and that the corporation was a vehicle for the personal interests of the shareholders, and that it lacked equity capital, and that its affairs were dominated by another person, the pleading would not constitute allegations of improper conduct sufficient for the purposes of piercing the corporate veil. *Barkett v. Hardy*, 571 So.2d 13 (Fla. 2d DCA 1990). In this case, Plaintiff's conclusory allegation that GMRS and Diana are alter egos of each other

without an allegation of fraud is insufficient to state a cause of action against Diana, individually.

**Diana's Personal Participation**.

In an apparent recognition of Plaintiff's defective pleading under an alter ego theory, Plaintiff also alleges that:

> "On information and belief, Defendant Diana directly and personally participated in, directed and/or authorized, and ratified the conduct constituting the statutory violations alleged herein. On information and belief, Defendant Diana established and/or approved GMRS's policies and practices, oversaw operations, and was directly involved in the business practices that violated the TCPA." (¶12 of the Complaint).

These allegations are insufficient to state a cause of action against Diana. *See, e.g. Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885 (S.D. Fla. 2013) (complaint which alleged that shareholder was personally liable under TCPA because he controlled and authorized the company's policies relating to the TCPA was insufficient as a matter of law). In *Mais*, the court considered whether a claimant could pierce the corporate veil based on an alleged violation of the TCPA where the shareholder was the "vice president and 20% owner of" [defendant corporation] and the person who "control[led] the policies and practice of [defendant corporation] regarding the TCPA and [who] authorized those policies complained of herein." *Id.* at 3.

By entering summary judgment in favor of the defendant officer and against the claimant, the court noted that the claimant's complaint essentially failed to state a cause of action against the individual shareholder defendant and summary judgment should be entered on procedural grounds directed to the pleading at issue. *See, Mais* at 3:

> "[i]nitially, the Court finds that Brown is entitled to summary judgment on procedural grounds. As the Supreme Court has said, 'the pleading standard Rule 8 announces does not required "detailed factual allegations", but it demands more than an unadorned, the defendant unlawfully harmed me accusation' . . . the Complaint contains no other factual allegations against Brown and fails to assert any cause of action against him personally. 'Obviously, no relief can be granted where a plaintiff does not assert any substantive causes of action against a particular defendant . . .
>
> Because the Complaint fails to plead any substantive cause of action against Brown individually and otherwise contains scant factual allegations as to his role in the conduct complained of, the Plaintiff cannot obtain any relief from Brown as a matter of law."

As considered in *Mais*, Plaintiff in the case *sub judice* alleges that Diana, as a corporate officer and director, should be personally liable under the TCPA based on an allegation that Diana personally participated in, directed and/or authorized, and ratified the company's phone policies. Plaintiff does not provide any factual allegations that Diana participated in the alleged wrongful conduct and, to the contrary, concedes that, when she answered the phone an "operator" (not Diana) came on the line and "identified himself and informed Plaintiff that he was conducting a survey." (Complaint at ¶23)[4].

The Court in *Mais* went on to distinguish the conduct at issue and reject those decisions from other circuits which would impose liability on a corporate officer based on their control of the company's policies and practices:

> "In this Court's view, personal liability should be exception rather than the rule and should require something more than mere control and authority over policies and practices that happen to violate the law. Some showing of intentional misconduct or gross failure to implement policies that comply

---

[4] The U.S. District Court for the Southern District of Florida in *Mais* noted in footnote that the Court was not aware of any case from the Eleventh Circuit Court of Appeals addressing whether an individual corporate officer may be held personally liable under the TCPA.

should be required. To the extent that the above-cited decisions would impose liability upon a lesser showing, this Court rejects them."

As a matter of law, Plaintiff's conclusory allegation that Diana authorized the conduct complained of and approved GMRS' business policies is insufficient to state a cause of action against Diana and to pierce GMRS's corporate veil. Even though the Court in *Mais* considered a motion for summary judgment, the Court specifically noted that "the Complaint fails to plead any substantive cause of action against Brown individually and otherwise contains scant factual allegations as to his role in the conduct complained of, the Plaintiff cannot obtain relief from Brown as a matter of law. . . Accordingly, Brown is entitled to summary judgment on this procedural ground." (*Mais* at 3). For this reason, it is asserted that the *Mais* court's analysis focused on the claimant's pleading sufficiency which is more analogous to a motion to dismiss than a motion for summary judgment.

Presumably, Plaintiff will assert there are cases from other jurisdictions where personal liability was imposed on a corporate officer for a violation of the TCPA; however, the facts in each of those cases are distinguishable and involved situations where the officer personally participated in offending conduct.[5] *See, David L. Smith and Associates, L.L.P. v. Stealth Detection, Inc.*, 327 S.W. 3d 873 (Texas App. 2010) (corporate officer personally designed advertisements to be "fax blasted", operated the fax blasting equipment, and removed names from the list of people to receive faxes); *Maryland v. Universal Elections*, 787 F.Supp.2d 408 (D. Md. 2011) (corporate officers were personally involved in the recording and uploading a pre-recorded message and directed the company to broadcast it);

---

[5] As noted in footnote 1 of the *Mais* decision, these cases are not persuasive in the Southern District. *Mais* at 5.

*Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816 (Conn. 2007) (corporate officers sent fax advertisements in violation of TCPA); *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892 (W.D. Tex. 2001) (corporate officers were personally responsible for developing fax number database, obtaining fax numbers from phone books, computer programs, and pubic sources, and purchasing numbers from third party, officers decided what numbers to include in the database and what software program to use in faxing the advertisements); *Jackson Five Star Catering, Inc. v. Beason*, 2013 WL 5966340 (E.D. Mich. 2013) (officer personally participated in the payment of and authorization of fax ads)[6]; *Covington & Burlington v. International Marketing & Research, Inc.*, 2003 WL 21384825 (corporate officers were directly involved in the development of company policy and procedures and were active in the day-to-day operations of the company from marketing to supervising employees); and *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 WL 4074620 (W.D. Mich. 2012) (officer and director personally participated in the broadcasting of advertisements, assembled and directed employees and third parties to send advertisements by fax, creating and approving the form of advertisements, determining the number and frequency of the facsimile transmissions, and paid employees and third parties to send the advertisements).

Acceptance of Plaintiff's assertion that Diana, as the "President" and "Registered Agent" of GMRS (see ¶7 of the Complaint), is personally liable for the actions of GMRS and its employees would eviscerate existing corporate law relating to individual liability for officers. Plaintiff's apparent interpretation of Florida law would impose individual liability

---

[6] *Compare, See, The Savannah Group, Inc. v. Trynex, Inc.*, 2013 WL 4734004 (N.D. Ill. 2013) (entering summary judgment in favor of corporate officer who was the head of marketing "blast fax" notation was placed on check after being signed and plaintiff's speculation that he would have approved a fax marketing campaign was not sufficient to impose personal liability).

on a corporation's officers for any involvement in the management of the corporation and the only way for an officer to avoid personal liability under the TCPA would be to completely separate himself or herself from the management of the corporation and have no involvement in the company's policies or business. This theory of liability creates a slippery slope for courts faced with claims of personal liability against officers in small businesses organized as a corporations.

**Shotgun Complaint Defects**.

Plaintiff's Complaint should also be dismissed as an improper "shotgun complaint" because it fails to distinguish those allegations directed against GMRS from those allegations directed against Diana such that it is impossible for Defendants to determine which allegations are relevant to each of the named Defendants. In a typical shotgun complaint, the pleading contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions. *Andela v. University of Miami*, 692 F.Supp.2d 1356 (S.D. Fla. 2010). Shotgun complaints impose a heavy burden on the trial court because it must sift through each and every count to determine which allegations are relevant to the cause of action purportedly stated. *Id*.

In this case, Plaintiff attempts to allege a single count against GMRS and Diana for an alleged violation of the TCPA without distinguishing those allegations which are directed at GMRS from those which are directed at Diana. The confusion created by Plaintiff's failure to distinguish those allegations directed at GMRS from those allegations directed at Diana

are further complicated at Plaintiff uses the term "Defendants" to interchangeably mean either GMRS or Diana.

For instance, in ¶32 of Plaintiff's Complaint, Plaintiff alleges that "Defendants made the telephone calls to cell phone numbers belonging to Plaintiff . . ." and attempts to assert that Diana through some management role is presumed to have also made the telephone calls. While, on its face, Plaintiff appears to allege that both Diana and GMRS made phone calls to Plaintiff's cell phone, this allegation is repugnant to the allegations in ¶23 that when Plaintiff answered her phone "she was connected to a live operator." Nowhere does Plaintiff allege that "Diana" served and acted as GMRS' "live operator."

By using the term "Defendants" interchangeably, Plaintiff attempts to allege that Diana personally made thousands of phone calls in violation of the TCPA. In ¶20 of the Complaint, Plaintiff alleges that an online complaint board has approximately 560 complaints from consumers receiving unwanted phone calls from "Defendants". Similarly, in ¶27, of the Complaint Plaintiff alleges that "Defendants placed calls to thousands of consumers."

A complaint must be dismissed where a plaintiff "alleges that the defendants are separate entities . . . but then fails to distinguish their misconduct," choosing instead to "indiscriminately lump[] [them] together." *George & Co., LLC v. Alibaba.com, Inc.* 2011 WL 6181940 (M.D. Fla. 2011) (Granting motion to dismiss where "[i]n nearly all of the counts, plaintiff simply assert[ed] that 'defendants' acts' constitute the particular cause of action" and also failed to articulate a theory of direct or contributory liability for each defendant). *Marco Island Cable v. Comcast Cablevision of the S., Inc.*, 2006 WL 82861 (M.D. Fla. 2006) (denying motion to amend complaint which 'lump[ed] all three defendants

[under one label]"); *Hughes v. Am. Tripoli, Inc.*, 2005 WL 1027864 (M.D. Fla. 2005) (dismissing complaint because plaintiff "must be more specific than 'defendants' in its allegations and counts. Other than paragraph 22, it appears that defendants which performed different functions have been lumped together; this provides insufficient notice and is confusing.").

Accordingly, as shown in recent federal cases considering liability under the TCPA, a plaintiff cannot state a claim under the statute against multiple, distinct entities by simply alleging that "Defendants" and/or their "agents" made unlawful calls. For example, in *Cellco Partnership v. Plaza Resorts, Inc.*, 2013 WL 5436553 (S.D. Fla. 2013) the U.S. District Court for the Southern District of Florida dismissed a partnership's TCPA claims against multiple companies where the partnership asserted that "Defendant United Public, or those operating on its behalf, have place [unlawful calls]" and that the "United Public . . . [is] affiliated and act[s] in concert with [other defendants]." The court held that the TCPA allegations were inadequate, reasoning:

> Defendants are correct that the Complaint impermissibly lumps Defendants together. Each Defendant is alleged to be distinct legal entities, but the Complaint does not adequately explain under what theory of liability Plaintiff is proceeding under. Although the Complaint states that the entities are "affiliated" and "act in concert" with each other, these statements are simply too conclusory.

*Id* at 7; *see also Wolfkiel v. Intersections Ins. Services, Inc.*, 2014 WL 866979 (N.D. Ill. 2014)(dismissing class action complaint brought under TCPA where allegations that two companies "engage in joint telemarketing efforts" and "act in direct concert to solicit new customers" failed to raise the right to relief "above the speculative level"). Here, Plaintiff impermissibly bases his Complaint on the vague allegations and speculative self-serving

conclusions that "on information and belief" Diana "established and/or approved GMRS's policies and practices, oversaw operations, and was directly involved in the business practices that violated the TCPA." (See ¶12 of Plaintiff's Complaint).

While Plaintiff would attempt to confuse the issues and improperly make vague allegations which fail to distinguish between GMRS and Diana, the reason for Plaintiff's strategy is clear: Plaintiff is attempting to base her Complaint based on self-serving and conclusory allegations in order to cast the net of potential liability as wide as possible and attempt to pierce GMRS's corporate veil when should otherwise would be unable to do so. Based on the improper pleading of a "shotgun complaint" against GMRS and Diana, Plaintiff's Complaint is subject to dismissal.

**Motion to Strike**.

Alternatively, the Court should strike ¶20 of Plaintiff's Complaint in accord with Federal Rules of Civil Procedure 12(f), for the reason that such paragraph is immaterial, impertinent, and scandalous consisting entirely of hearsay designed solely to prejudice Defendants. In ¶20 of her Complaint, Plaintiff alleges that, according to the website 800notes.com, GMRS has received over 560 complaints and includes certain comments which Plaintiff alleges were posted on the 800notes.com website which purport to support Plaintiff's claims. These "complaints" which were made by anonymous individuals and posted on a message board operated by an anonymous website moderator are offered by Plaintiff solely to prejudice Defendants and to introduce inadmissible hearsay that would not otherwise be admissible. They purported website postings are immaterial to the issues in this lawsuit and Plaintiff cannot circumvent the Federal Rules of Evidence by including them

within the body of her Complaint. In accord with Federal Rules of Civil Procedure 12(f), ¶20 of Plaintiff's Complaint should be stricken.

**WHEREFORE**, Defendant, Anthony Diana, requests that the Court dismiss the Complaint filed by Plaintiff, Melanie Walsh pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, strike ¶20 of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(f) and for such other relief as this Court deems just and proper.

**/S/ JAMES H. FALLACE**
**JAMES H. FALLACE**
Trial Counsel
Florida Bar No.: 569909
Fallace & Larkin, L.C.
1900 S. Hickory Street, Suite A
Melbourne, FL 32901
(321) 951-9900
(321)724-6002
jim@fallacelarkinlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 10, 2014 the foregoing has been served using the CM/ECF system and e-mail to: law@stefancoleman.com upon Stefan Coleman, Esq., the Law Offices of Stefan Coleman, LLC, 201 S. Biscayne Blvd., 28th Floor, Miami, FL 33131.

**/S/ JAMES H. FALLACE**
**JAMES H. FALLACE**
Trial Counsel
Florida Bar No.: 569909
Fallace & Larkin, L.C.
1900 S. Hickory Street, Suite A
Melbourne, FL 32901
(321) 951-9900

(321)724-6002
jim@fallacelarkinlaw.com