## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated,<br><br>      *Plaintiffs*,<br><br>v.<br><br><br>GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, and JOHN DOES 1-100,<br><br>      *Defendants*. | Case No. 6:14-cv-1290-ORL-31-KRS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

### PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS
### WITH MEMORANDUM OF LAW IN SUPPORT[1]

Plaintiffs Robert Martin ("Martin") and Kristin Armstrong ("Armstrong") (collectively the "Plaintiffs") move in accordance with Rule 11(c)(2) of the Federal Rules of Civil Procedure for sanctions against Defendant Global Marketing Research Services, Inc. ("GMRS" or "Defendant"). In support, Plaintiffs state as follows:

### RELIEF REQUESTED

1.      Award Rule 11 sanctions against Defendant's counsel in the form of all attorneys' fees and costs incurred by Plaintiffs' counsel in responding to GMRS's improper and frivolous Motion for Sanctions ("Motion for Sanctions") (Dkt. 54.)

---

[1] Apart from this footnote and the lettering of exhibits, a copy of this Motion and Memorandum was served on GMRS on August 3, 2015. (See "Safeharbor Letter and Motion for Sanctions," a true and accurate copy of which is attached hereto as Ex. 1.) On August 19, 2015 the Court denied GMRS's Motion to Vacate or for Reconsideration and for Sanctions ("Motion for Sanctions") (Dkt. 56.) In its Order, the Court stated that, "If the Plaintiffs wish to seek imposition of sanctions against Global Marketing or its counsel for filing the motion, they should file a separate motion. *See* Doc. 55 at 3, fn 2." (Dkt. 56.) This is that separate motion. If granted, Plaintiffs' counsel respectfully requests leave to submit a declaration attesting to their lodestar (billable hours + hourly rates) and describing the work that they were forced to perform as a result of GMRS and its counsel's unsuccessful Motion for Sanctions.

2.      Such other relief as the Court deems just and appropriate.

## STATEMENT OF THE BASIS FOR RELIEF REQUESTED

1.      Defendant's Motion for Sanctions (dkt. 54) is itself sanctionable because it violates Rule 11. This is true for at least five (5) reasons:

2.      First, Defendant failed to comply with Rule 11(c)(2)'s "safe harbor" provision, which requires that a motion for sanctions be served on the non-moving party and not be filed for a period of at least twenty-one (21) days, during which time the non-moving party has an opportunity to withdraw or appropriately correct the supposedly-sanctionable material. Here, GMRS did not serve its Motion for Sanctions on Plaintiffs—instead, it simply filed the Motion for Sanctions without serving it or indeed without even warning Plaintiffs' counsel that it would be forthcoming.

3.      Second, and related, GMRS has improperly combined its Motion for Sanctions with its Motion to Vacate or for Reconsideration. Rule 11(c)(2) expressly states that, "a motion for sanctions must be made separately from any other motion."

4.      Third, Defendant's Motion for Sanctions states that "[Plaintiffs'] Motion to amend was granted without any consideration of possible defense objections [DE 47], thus denying Defendant an opportunity to be heard. It is believed the part of the amendments as to a new gerrymandering scope of class plaintiffs was overlooked in granting leave to amend." (Dkt. 54, 5 ¶5.) This statement is highly disingenuous and omits key facts. Indeed, GMRS fails to apprise the Court that the reason the Court did not consider GMRS's "possible defense objections" is because GMRS missed its own deadline to respond in opposition to Plaintiff's Motion to Amend. Plaintiff's Motion was filed on June 9, 2015 (dkt. 45), which put Defendant's 14-day deadline to respond under Local Rule 3.01(b) as June 23, 2015. The Court—receiving no

opposition from GMRS on or before that date—granted Plaintiffs' Motion on June 25, 2015. (Dkt. 47.)

5.      Fourth, the conduct that Defendant chiefly complains of—Plaintiffs' counsel's filing of lawsuits against GMRS in California and Pennsylvania—was not done for any improper purpose. Rather, the filing of the California and Pennsylvania lawsuits was necessitated by Defendant's: (i) consistent assertion—including repeatedly in its objections to discovery—that calls made outside the scope of the North Carolina survey for which former-plaintiff Walsh was called were irrelevant to the case, and (ii) refusal to provide any discovery related to any out-of-state consumers. That is, Defendant has maintained that calls made by GMRS to consumers in other states were not relevant to this litigation—despite the pleading of a nationwide class. Thus, to protect the interests of Plaintiffs' counsel's clients and class members in California and Pennsylvania (in the event the Court were to agree with GMRS and limit the scope of this case), Plaintiffs did precisely what GMRS's argument would force them to do: filed separate lawsuits in California and Pennsylvania and carved them out of the instant case and class definition.

6.      Fifth, Defendant improperly accuses Plaintiffs' counsel of breaching the confidentiality agreement signed after the Parties' unsuccessful mediation without ever explaining how counsel breached (which it did not). Defendant further improperly insinuates that Plaintiffs' counsel misled the Court by asking to substitute the named plaintiff for new representatives. (Dkt. 54, 3 ¶8) ("The request to drop Walsh as Plaintiff, based on defense counsel requiring her to be deposed in Boca Raton was knowingly false.").

7.      The only modicum of truth in the Motion for Sanctions is that Plaintiff's counsel was incorrect in stating that GMRS's counsel "indicate[] that he wanted to depose Ms. Walsh in Boca Raton." This was not an intentional misstatement. Plaintiffs' counsel simply confused

Orlando with Boca Raton—a distinction without a difference with respect to Ms. Walsh, who advised the Court that she could not devote the time necessary to represent the Class, including flying from her home in North Carolina to Florida to be deposed, and requested that she be replaced by individuals who could. Thus, it is improper for GMRS to assert that Plaintiffs in any way knowingly misled the Court. Such an assertion is made for no purpose other than to harass Plaintiffs and intimidate them and their counsel from continuing on with the litigation.

## **MEMORANDUM OF LAW**

### I.    **INTRODUCTION**

It is unfortunate when a party is forced to seek sanctions against another party, and it is an action Plaintiffs do not take lightly or without substantial justification. Recent developments have shown beyond doubt, however, that GMRS is acting in bad faith in this litigation. GMRS's Motion for Sanctions (dkt. 54) (combined with a motion to vacate or for reconsideration, which, as explained below, violates Rule 11(c)(2)) is a frivolous attempt to make arguments opposing Plaintiffs' already-granted Motion to Amend after missing its deadline to file a responsive brief. Additionally, GMRS has failed to serve the Motion on Plaintiffs as required under Rule 11, nor did GMRS's counsel raise the issue of sanctions during the Parties' meet-and-confer.

And in any case, GMRS ignores the fact that Plaintiffs only filed the separate lawsuits in California and Pennsylvania (and carved such states out the instant class definition) as a direct response to GMRS's objections in discovery that any information related to any surveys other than those involving the named Plaintiffs (now from North Carolina, like Walsh was, and New Hampshire) were irrelevant and its steadfast refusal to provide any information or responses related to any other surveys. GMRS simply wants it both ways—to refuse to produce discovery in this case related to calls it made to consumers in California, Pennsylvania, and other states while insisting that any claims asserted on behalf of such consumers must be litigated in this action.

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS                                    4

Further undercutting Defendant's arguments is the fact that Plaintiffs' counsel has been transparent with GMRS's counsel for months that there are other clients in other states and that it is thus unacceptable for this case to focus solely on the same surveys under which the named plaintiff(s) in this case were called—such a result leaves Plaintiffs' counsel's other clients and the millions of absent class members who received similar calls out in the cold.

Finally, Defendant's Motion for Sanctions is rife with its own inaccurate or misleading statements: (1) that Plaintiffs' counsel has breached a confidentiality agreement without explaining how such a breach supposedly occurred and (2) that Plaintiffs' counsel lied to the Court about the reason why former-named Plaintiff Walsh could no longer serve.

A motion pursuant to Rule 11 is itself subject to the rigors of Rule 11 itself. Here, GMRS and its counsel, Steven G. Schwartz, have materially violated the rule and should be sanctioned accordingly.

## II. STATEMENT OF FACTS AND BACKGROUND

*GMRS has spammed millions of consumers with its political survey calls.*

This case challenges political survey calls that GMRS makes to consumers who never consented to be called by GMRS in the first place. GMRS conducts political surveys using an autodialer to call cell phone numbers. GMRS obtains the phone numbers it calls from its third-party clients—politicians and political groups who apparently obtain the numbers from publicly-available voter registration lists. Upon receiving the list of numbers, GMRS loads the data into its dialing system and proceeds to spam consumers with its survey calls.

The Plaintiffs are just two out of potentially millions of individuals (likely in all 50 states) who've been called on their cellphones by GMRS over the past several years.

*The instant lawsuit is filed, the named Plaintiff can no longer serve as class representative, and a Motion to Amend is filed*

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS 5

On August 11, 2014, this case was filed on behalf of Melanie Walsh and all others similarly situated. (Dkt. 1.)

GMRS moved to dismiss on October 10, 2014 (dkt. 17), which the Court denied on December 16, 2014 (dkt. 30). Discovery was served on GMRS via mail on December 23, 2014. GMRS responded (past its deadline) to Plaintiff's interrogatories on January 30, 2015 and to Plaintiff's requests to produce on February 2, 2015. Several of GMRS's responses objected expressly on the grounds that GMRS would only provide answers with respect to the North Carolina Survey for which Plaintiff Walsh had been called. (*See e.g.* GMRS Ans. to Interrogs. Nos. 4, 6-8, 18-21, and GMRS Resp. to Plaintiff's Requests for Production No. 36.) Following a series of meet and confers—during which time GMRS's counsel repeatedly asserted GMRS's objection to the production of any information outside the North Carolina survey at issue with respect to Ms. Walsh—and confirmation from GRMS that further meet and confers were unnecessary, on July 13, 2015, Plaintiff filed a motion to compel against GMRS alerting the Court to several deficiencies in GMRS's responses. (Dkt. 49.) On July 14, 2015, the Court (Magistrate Judge Spaulding presiding) struck Plaintiffs' Motion to Compel (dkt. 51) and ordered the Parties to further meet and confer.

On April 22, 2015, the Parties engaged in a full-day mediation session in an attempt to resolve the case. The mediation was unsuccessful and the mediator, Rodney Max, declared an impasse on May 26, 2015. (Dkt. 42.)

On June 4, 2015, Plaintiffs' counsel filed a case against GMRS in the Northern District of California styled *Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW (N.D. Cal. 2015). The *Zilveti* case—filed in direct response to GMRS's counsel's insistence that calls that GMRS made regarding surveys other than the surveys for which the named Plaintiffs

were called are irrelevant to this case—seeks to represent a Class of California residents called by GMRS in violation of the TCPA.

Two weeks following the declaration of an impasse at the mediation, former named plaintiff Walsh confirmed that she could not commit the time necessary to represent the class—including traveling to Florida to be deposed. Plaintiffs' counsel filed a Motion for Leave to Amend on June 9, 2015 to remove Ms. Walsh and to substitute in Mr. Martin and Ms. Armstrong as class representatives. (Dkt. 45.) Also in the Motion for Leave to Amend, Plaintiffs explained over two pages their need to modify the class definition to exclude California and Pennsylvania residents, and they advised the Court of the *Zilveti* case and that additional cases were likely to be filed. (Dkt. 45 at 14.)[2]

On June 25, 2015, the Court—having received no response from GMRS within the 14-days provided under Local Rule 3.01(b)—granted Plaintiffs' Motion to Amend. (Dkt. 47.) That same day, Plaintiffs' counsel filed a case in the Eastern District of Pennsylvania against GMRS for the same reason the *Zilveti* case was filed. The Pennsylvania case is styled *Thompson v. Global Marketing Research Services, Inc.*, 2:15-cv-03576-AB. GMRS filed a motion to dismiss in the *Thompson* case on July 31, 2015.[3]

On July 13, 2015 GMRS filed a Notice of Pendency of Other Actions in the *Zilveti* litigation. On July 27, 2015 Plaintiff's counsel filed a response explaining that the *Zilveti* matter

---

[2] GMRS filed a motion to dismiss or transfer in the *Zilveti* case on July 22, 2015. It is set for hearing on September 18, 2015.

[3] Though GMRS asserts in its Motion that "[t]he Pennsylvania federal court, Hon. Anita B. Brody presiding, has set a hearing on the Motion to Dismiss for August 3, 2015," (dkt. 54, 4) this is inaccurate. Rather, Judge Brody had set a Rule 16 Conference for August 3, 2015 but—on request from the Parties—rescheduled the Conference for September 16, 2015. No hearing on GMRS's motion to dismiss had been set as of the time GMRS filed its Motion for Sanctions in this case, nor has one been set as of the time this motion is being served on GMRS and its attorneys.

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS                                                    7

and the instant case did not actually contain overlapping class definitions, nor did the

Pennsylvania class definition overlap in any way.

Just two days later, on July 29, 2015, GMRS's counsel sent Plaintiffs' counsel an email

in which GMRS asserted *for the very first time*[4] that it objected to the Court's Order granting

leave to amend, stating, in full:

> I am filing a motion to vacate the 6/25/15 order allowing your amended complaint
> as to the change in the class definition removing CA and PA as the precursor for
> your California and PA lawsuits.  For purposes of a good faith certification I am
> stating in my motion that you oppose it.  If I am incorrect and you are now
> agreeable to dismiss your two other lawsuits and confine the litigation to the FL
> class action with whatever appropriate amendment to bring CA and PA back into
> the mix, let me know asap.
>
> I have obtained data as to all calls made to each of your four representatives
> plts.  The call data does not support the allegations in any of your three
> complaints. Please send me whatever records any of these four plts have that
> would document the date(s) on which they received a call from or spoke to
> anyone associated with  Global Marketing.  If you require some formal discovery
> request for this information please advise.

(*See* Schwartz July 29, 2015 email, attached as Exhibit A to Ex. 1 hereto.)

Shortly thereafter, Plaintiffs' counsel responded by writing:

> Steven:
>
> 1. I'm unclear as to the basis for your motion. You are filing a motion to dismiss
> because the class definition excludes other states? If so, you can state in your
> motion that you met and conferred with Plaintiff's counsel who indicated that they
> did not agree to dismissal based upon any alleged infirmity pertaining to the class
> definition.
>
> 2. Please share whatever information you've gathered. I'll circle up with the
> clients, but any request for phone records, notes of calls etc. will need to be made
> via formal discovery requests.

---

[4] Indeed, GMRS offered no justification, and continues to fail to offer one, for why it waited 52
days after Plaintiffs' filed their Motion for Leave to Amend (dkt. 45) and 36 days after the
Court's Order granting it (dkt. 47) to finally raise any objection to it at all. GMRS offers no good
cause, excusable neglect, or other basis for allowing it to file such a late opposition under the
guise of a motion to reconsider.

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS                                          8

(*See* July 29, 2015 Woodrow Email, attached as Exhibit B to Ex. 1 hereto.)

Notably, nowhere in Mr. Schwartz's July 29, 2015 email does he ever mention that GMRS will be moving for sanctions in addition to asking the Court to vacate or for reconsideration.[5] This was the only "meet and confer" conducted in regards to the relief sought in GMRS's Motion for Sanctions.

## III.  ARGUMENT

Rule 11(c) of the Federal Rules of Civil Procedure authorizes courts to impose sanctions—either by motion under Rule 11(c)(2) or on its own via Rule 11(c)(3)—on any party that fails to comply with Federal Rule 11(b). In relevant part, Rule 11(b) requires attorneys filing a pleading, motion, or other paper to certify to the best of their informed knowledge that:

> (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3)  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 "applies an objective reasonableness standard in terms of what was and should have been known at the time, keeping in mind that Rule 11 should not have a chilling effect on zealous or novel arguments." *Mirabili Ventures, Inc. v. Palaxar Grp.*, LLC, No. 6:07-CV-1788-ORL-28, 2010 WL 5582878, *9 (M.D. Fla. Dec. 15, 2010), *report and*

---

[5] These emails therefore contradict GMRS's counsel's statement that he "certifies pursuant to Rule 3.01(g) that he has conferred with opposing counsel on this motion and these other class actions recently filed in good faith attempt to resolve these matters, that Plaintiffs will not withdraw them and thus the issues raised in this Motion cannot be resolved without Court review." (Dkt. 54, 5.)

*recommendation adopted*, No. 6:07-CV-1788-ORL-28, 2011WL128349 (M.D. Fla. Jan. 14, 2011).

Central to the instant motion is that "[t]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11, Notes of Advisory Committee, 1993 Amendment; *see also Rich v. Taser Int'l, Inc.*, No. 2:09-CV-02450-ECR, 2012 WL 3155137 (D. Nev. Aug. 2, 2012); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008); *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 507 F. Supp. 2d 484, 492 (D.N.J. 2007); *Ackoff-Ortega v. Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 223 (D. Mass. 1995). That is, Rule 11 motions shouldn't be frivolously filed. But that is what GMRS and its attorney, Steven G. Schwartz, have done here.

As such, and as explained in detail below, this Court should impose sanctions on GMRS and its counsel based on their frivolous, procedurally-improper Motion for Sanctions.

## A.   GMRS's Motion For Sanctions Is Procedurally Improper.

GMRS's first problem is that its Motion for Sanctions fails to comply with Rule 11's procedural requirements. Specifically, under Rule 11(c)(2)[6], GMRS was required to: (1) send Plaintiffs a copy of the motion for sanctions and wait twenty-one (21) days before filing it, and (2) move for sanctions in a separate motion—not combine it with other Motions. GMRS's Motion for Sanctions violates both of these requirements.

### 1.   GMRS has failed to comply with Rule 11's "safe harbor."

---

[6] Though GMRS claims to seek sanctions under Rule 11(c)(3), this is either a typographical error or a misunderstanding of the Rule. Rule 11(c)(3) addresses sanctions imposed "on the Court's own initiative." Thus, a party cannot "move" for sanctions under Rule 11(c)(2). Rather, parties seeking to file a motion for sanctions under Rule 11 must do so under Rule 11(c)(2), which contains the "safe harbor" provision and the requirement that the motion must be made separately from any other motion.

Ignoring both the clear language of Rule 11 and an abundance of case law directly on point, GMRS filed its Motion without first complying with Rule 11's "safe harbor" provision by sending a copy of the Motion to Plaintiffs at least twenty-one days before filing it.[7] Rule 11 states, in pertinent part:

> **(2)** ***Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). **The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets**. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed.R.Civ.P. 11(c)(2) (emphasis added). The case law confirms that a twenty-one day "safe harbor" is required. *See Hyman v. Borack & Associates, P.A.*, No. 8:12-CV-1088-T-23TGW, 2012 WL 6778491, at *2 (M.D. Fla. Dec. 17, 2012) *report and recommendation adopted,* No. 8:12-CV-1088-T-23TGW, 2013 WL 68534 (M.D. Fla. Jan. 4, 2013) ("A motion for sanctions under Rule 11, F.R.Civ.P., is 'serious [ ]' …Consequently, when Rule 11 sanctions are initiated by motion, the moving party must serve a copy of the motion upon the opposing party at least twenty-one days before filing the motion with the court….This 'safe-harbor' permits the opposing party to withdraw or appropriately correct the pertinent papers, thereby avoiding court-

---

[7] It is worth noting that this is not the first time GMRS's counsel, Steven Schwartz, has skirted procedural rules and failed to timely raise arguments while seeking Rule 11 sanctions. *See Oliver v. Lauderdale Marine Center, LLC*, Case No. 0:08-cv-61690-CMA *7, n.3 (Dkt. 136.) (S.D. FL., Oct. 5, 2009) ("The Symphony also requests sanctions under Federal Rule of Civil Procedure 11, arguing that Nguyen intentionally misrepresented the basis for this Court's jurisdiction. (See Def.'s Reply Mem. to Pl.'s Resp. in Opp'n to Symphony's Emergency Mot. to Dismiss with Prejudice the Verified Compl. ("Reply") [D.E. 128] at 3, 7)("It is unclear why the Symphony did not raise this issue of the lack of subject matter jurisdiction sooner, having access to the information – where it was situated during the repair work – now presented in its papers. Because the Symphony raised the issue of Rule 11 sanctions for the first time in its Reply and failed to raise the issue of subject matter jurisdiction at its first opportunity, the Court does not address the request for sanctions.")

imposed sanctions."); *White v. Brenner*, No. 6:10-CV-134-ORL-28, 2011 WL 4633783, at \*9 (M.D. Fla. Aug. 30, 2011) ("Movants' Motion fails to address the threshold issue of whether Movants complied with the safe harbor requirement of Rule 11 prior to filing the instant motion. Doc. No. 53. Thus, the Court finds that Rule 11 sanctions are not appropriate because Movants failed to comply with the safe harbor requirements.") *report and recommendation adopted,* No. 6:10-CV-134-ORL-28, 2011 WL 4633703 (M.D. Fla. Oct. 5, 2011); *see also Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006) ("Budget's failure to give Macort the twenty-one day safe harbor period forecloses Rule 11 sanctions for the initial filing of a frivolous suit.").

Hence, not only does the law clearly require that GMRS's Motion for Sanctions be denied, the Court should find that it is sanctionable: Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions [must be] warranted by existing law," existing law makes clear that a motion for sanctions cannot be filed without compliance with the 21-day "safe harbor," so filing a motion without affording a twenty-one (21) day safe harbor is itself sanctionable.

Accordingly, the Court should sanction GMRS for violating Rule 11(b)(2).

> **2.    GMRS improperly combines its Motion for Sanctions with requests for other relief and fails to describe specific conduct by Plaintiffs' counsel that allegedly violates Rule 11(b).**

Similarly, GMRS's Motion for Sanctions is meritless and violates Rule 11 because it was not filed (and first served) "separately from any other motion." Rather, GMRS combined its Motion for Sanctions with its motion to vacate or for reconsideration. (*See* Dkt. 54.) Again, Rule 11(c)(2) states, in relevant part, that, "**A motion for sanctions must be made separately from any other motion** and must describe the specific conduct that allegedly violates Rule 11(b)." Fed.R.Civ.P. 11(c)(2) (emphasis added).

Thus, the Court should sanction GMRS for this reason as well—combining its Motion for Sanctions with other violations is clearly not warranted by existing law and is thus a violation of Rule 11(b)(2).

    **B.**    **GMRS's Motion for Sanctions is grossly misleading and omits key facts, including its own failure to timely respond to Plaintiffs' Motion for Leave to Amend and its refusal to provide any discovery responses in this case related to out of state surveys, thereby necessitating the filing of separate lawsuits.**

Next, GMRS's Motion for Sanctions is misleading and omits crucial facts. First, GMRS missed its deadline to respond to Plaintiffs' Motion to Amend and—without explanation— complains that Plaintiffs' Motion was granted without consideration of its potential objections. It simply fails to provide any basis for filing its Motion to Vacate or to Reconsider *52* days after Plaintiffs filed their Motion for Leave to Amend and *36* days after the Court granted it. Second, GMRS appears incapable of acknowledging its repeated discovery objections or its refusal to provide any information related to surveys it conducted in states different from the states of the named plaintiffs. As explained below, the simple truth is that GMRS failed to object on time to Plaintiffs' Motion for Leave to Amend and now seeks Rule 11 sanctions against Plaintiffs' counsel on the wholly false premise that Plaintiffs' obtained the Order granting leave through subterfuge and without affording GMRS an opportunity to respond.

    **1.**    **GMRS missed its deadline to respond to Plaintiffs' Motion to Amend and now accuses the Court of missing key issues and ruling without consideration of GMRS's potential defense objections.**

In its Motion for Sanctions, GMRS requests the Court "[g]rant Defendant an opportunity to be heard on Plaintiffs' Motion to Amend because the June 25 Order was entered before any chance by Defendant to address numerous factual inaccuracies in Plaintiffs' Motion and improprieties in the amended action." (Dkt. 54, 1, ¶ B.) GMRS further asserts that, "[the] Motion to amend was granted without any consideration of possible defense objections [DE 47], thus denying Defendant an opportunity to be heard." (*Id.* at 2 ¶5.) Finally, GMRS accuses the Court

of "overlooking" a portion of Plaintiff's Motion. (*Id.* at ¶¶ 5,13.) ("Defendant respectfully asserts that when this Court reviewed Plaintiffs' motion to amend, this issues of creating some back door right to file similar suits in other courts was overlooked").

What GMRS fails to include in its Motion for Sanctions, however, is that **GMRS failed to timely file a response to Plaintiffs' Motion to Amend**. That is, Plaintiffs filed their Motion for Leave to Amend on June 9, 2015 and the Court ruled on June 25, 2015—GMRS simply failed to file any objection within the fourteen (14) days, which would've been June 23, 2015, required under Local Rule 3.01(b). Indeed, GMRS's Motion to Vacate or for Reconsideration and for Sanctions (dkt. 54) was filed 52 days after Plaintiffs' file the Motion for Leave to Amend and 36 days after the Court granted it. Instead of explaining its failure to timely object or offer good cause for why the Court should allow GMRS to re-litigate the issues raised in the Motion for Leave to Amend that it could've raised in a timely response had it chose to file one, GMRS dually asserts that: (1) a motion it did not initially bother objecting to is now sanctionable,[8] and (2) the Court did not provide GMRS with "an opportunity to be heard."

Such baseless assertions violates Rule 11(b)(1), which makes sanctionable conduct that is presented "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed.R.Civ.P. 11(b)(1). Defendant's Motion undoubtedly causes unnecessary delay and needlessly increases the cost of litigation. If GMRS has objections to the proposed amendment, it should have filed a timely response brief and alerted the Court to its objections. Plaintiffs' would then have filed a timely reply and the Court could have ruled on a fully-brief Motion. GMRS chose not to respond and now seeks to sanction Plaintiffs' counsel for

---

[8] To be sure, the supposedly "subtle", as GMRS calls it, carve-out for California and Pennsylvania was discussed at length in Plaintiffs' Motion for Leave to Amend—the section on this point covered 2 full pages of the brief. (Dkt. 45, 12-14.)

winning an unopposed motion.[9] Due to its chosen path of conduct—not responding and then waiting over one month to seek to vacate and move for sanctions—Plaintiffs and the Court will now need to spend time dealing with essentially two separate motions (again, GMRS improperly combined its sanctions motion with its other motions).

And perhaps more egregiously, GMRS insinuates in its Motion for Sanctions that the Court "overlooked" its potential arguments and denied it "an opportunity to be heard." This forces the Plaintiffs and the Court to expend time going back through the docket and figuring out that the Court in no way denied GMRS anything—GMRS simply missed its 14-day response deadline under Local Rule 3.01(b). The Court did not deny it any opportunity at all. Likewise, the Court did not "overlook" the issues related to carving out California and Pennsylvania—Plaintiffs' Motion for Leave to Amend devoted over two pages of argument to the issue.

In sum, GMRS's Motion for Sanctions is a veiled attempt to cover for its own failure to timely respond to Plaintiffs' Motion for Leave to Amend. GMRS offers no reason explaining why it failed to respond in the first place, and its Motion for Sanctions—filed 38 days after its deadline to respond and 36 days after the Court granted the Motion for Leave to Amend—causes unnecessary delay and needlessly increases the cost of litigation. As such, the Court should find GMRS's Motion for Sancitons is sanctionable for these reasons as well.

> **2.  GMRS wants to have it both ways: on the one hand it won't produce any information regarding out-of-state surveys while at the same time objecting when any out-of-state cases are then filed.**

For its next (erroneous) argument, GMRS asserts that Plaintiffs' Counsel Steven Woodrow and Patrick Peluso have been "masterminding all three of these class actions" and

---

[9] GMRS can hardly argue that it was not on notice of the content or purpose of Plaintiffs' Motion to Amend and the eventual amended pleading—Plaintiffs' Motion was nearly fifteen pages long and clearly explained each aspect of the sought amendment and the proposed amended complaint was attached as an exhibit.

"should be admonished and sanctioned for such conduct pursuant to Fed.R.C.P. Rule 11(c)(3)[10]."

(Mot. for Sanctions ¶ 16.) In making this argument, GMRS contends that "there is simply no

factual or legal support for a watered down class definition of cell users nationally as the basis to

allow identical, overlapping lawsuits in other federal courts. Plaintiffs' counsel have plainly

thumbed their noses at the time-honored rules promoting judicial economy while embarking on

an escapable, abusive, multi-district vendetta against Defendant in violation of . . . Rule 11(b), all

arising from failed settlement talks." (Dkt. 54, 5, ¶15.)

Plaintiffs' counsel seriously regrets having to drag the Court into a dispute that amounts

to little more than bickering at first glance, but the record must be corrected. GMRS's Motion for

Sanctions is wholly silent as to the reason the separate lawsuits were filed in the first place: as a

reaction to GMRS's repeated objections that the instant lawsuit only pertains to the North

Carolina survey for which GMRS called former-plaintiff Walsh (and, most probably, Plaintiff

Martin who is also a North Carolina resident) and GMRS's refusal to provide *any* information

about *any* other surveys or clients. GMRS first raised these objections in its discovery responses.

For example, in its response to Interrogatory No. 4—which seeks the identity of all campaigns

through which GMRS made calls where prior express consent was obtained in the same way as

consent was supposedly obtained to call the named Plaintiff in this case—GMRS objected that it

such information is "unrelated to this Plaintiff's survey" and that "since there is no allegation

that Ms. Walsh was called during any other survey, this interrogatory is irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence." (*See* Interrogatories,

Interog. 4, attached as Exhibit C to Ex 1 hereto.) GMRS raised substantially-similar objections to

---

[10] As explained above, this is the improper Rule and it is unclear whether GMRS's counsel made
a typographical error or simply misunderstands Rule 11.

Interrogatories Nos. 6, 7, 8, 18, 19, 20, and 21 (*see id.*) and to Request for Production No. 36. (*See* Requests for Production, RTP 36, attached Exhibit D to Ex. 1 hereto.)

During discovery meet and confers between counsel, GMRS's attorney, Steven Schwartz, repeatedly asserted these same objections, insisting that GMRS would not provide any information about surveys other than the survey involving Ms. Walsh (and new-Plaintiff Martin).[11] Indeed, though GMRS suggests that the California and Pennsylvania lawsuits are some sort of concealed attempt at revenge after the mediation was unsuccessful, during the Parties' meet and confers held *prior* to the mediation GMRS's counsel repeatedly stated that it refused to produce any information about other surveys or clients apart from the North Carolina survey. Though Plaintiffs have challenged this (baseless) objection through their prior motion to compel, Plaintiffs' counsel has acted to protect the interests of clients and class members in California and Pennsylvania in the event that the Court ultimately agrees with GMRS's position.

At the end of the day, GMRS improperly seeks to have it both ways: first it refuses to produce any information or discovery regarding surveys conducted outside of the states where the named Plaintiffs reside and then it says sanctions are warranted when out-of-state cases are filed in response. The Court should see through GMRS's tactics and realize that Plaintiffs' counsel has not acted in bad faith at any point in this litigation.

---

[11] Following the filing of the Amended Complaint, GMRS's counsel requested the phone numbers for the new Plaintiffs. During one telephone discussion between counsel, GMRS's attorney indicated that Martin was likely called for the same survey about which Plaintiff Walsh had been called. GMRS's counsel also indicated that it would provide discovery responses for the New Hampshire survey involving Plaintiff Armstrong. GMRS's counsel did not offer to provide information about any other surveys, as GMRS appears to stand by its objection that only the surveys for which the named plaintiffs were called are in any way relevant to the instant lawsuit. Again, it is this (baseless) objection that has forced Plaintiffs' counsel to file separate lawsuits in other states.

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS                                        17

The omission of this information from GMRS's Motion for Sanctions is sanctionable under Rule 11(b)(3), which bars "factual contentions [without] evidentiary support." Fed.R.C.P. 11(b)(3). The statement that "Plaintiffs' counsel have plainly thumbed their noses at the time-honored rules of promoting judicial economy while embarking on an inescapable, abusive, multi-jurisdiction vendetta against Defendant" is meritless and utterly without factual support in light of GMRS's conduct that necessitated the filing of such cases in the first instance. Thus, the Court should sanction GMRS for violating Rule 11(b)(3) in this respect as well.

**C.**     **GMRS's Motion for Sanctions falsely accuses Plaintiffs' counsel of breaching a confidentiality agreement without providing any details regarding what private information has been disclosed and of lying to the Court about why Ms. Walsh could no longer serve as class representative.**

Lastly, GMRS further violates Rule 11 by falsely accusing Plaintiffs' counsel of breaching a confidentiality agreement without providing any details and—in response to an admitted but inconsequential misstatement—accusing Plaintiffs' counsel of lying about why Ms. Walsh could no longer serve as class representative.

**1.**     **GMRS should be sanctioned for seeking sanctions against Plaintiffs' counsel for breaching a confidentiality agreement without providing any details at all regarding the confidential information supposedly disclosed.**

First, GMRS contends in its Motion for Sanctions that:

Plaintiffs' Motion to amend and its stated grounds, is stunning in its violation of clear prohibitions on disclosure of confidential settlement communications. The amendments to the pleadings only arose after impasse reached during extended Court-ordered Mediation negotiations. Plaintiffs' harassment of Defendant by the proliferation of these lawsuits is plainly in retaliation for a breakdown in settlement negotiations over issues having no affect (sic) on any putative plaintiff. Plaintiffs' Motion to amend and the amendments themselves are a violation of Fed. R. Evidence Rule (sic) 408, this Court's local rule 9.07, and the Mediation Confidentiality Agreement signed by Plaintiffs' counsel (Exhibit C).

Undersigned counsel shall address these confidentiality violations in camera at an appropriate hearing on this Motion so as not to himself violation the Mediation confidentiality prohibitions.

(Dkt. 54, 3, ¶¶6-7.)

GMRS's contentions violate Rule 11's plain requirement that "a motion for sanctions must describe the specific conduct that allegedly violates Rule 11(b)." Fed.R.Civ.P. 11(c)(2). Because GMRS's Motion does not describe in any way the conduct it complains about, Plaintiffs are left to guess. After reviewing Plaintiffs' Motion to Amend, Fed.R.Evid. 408, and Local Rule 9.07, Plaintiffs still haven't a clue regarding what information GMRS contends they improperly disclosed.

First, the word "mediation" appears in only two portions of the fifteen-page Motion for Leave to Amend. The second sentence of Plaintiffs' Introduction states "The Parties' attempt to settle the case via private mediation was unsuccessful and the litigation has resumed." (Dkt. 45, 1.) Next—and still in the Introduction section—Plaintiffs informed the Court that:

> During the Parties' discovery meet and confer on February 12, 2015, counsel for GMRS indicated that the Parties should discuss settlement. Thereafter, on March 10, 2015 counsel for the Parties discussed different settlement models and ultimately agreed to engage in a formal mediation with national mediator Rodney Max. On April 22, 2015 counsel for the Parties, together with counsel for GMRS's insurer, Old Dominion, met in Boca Raton, Florida for a full day mediation. Despite best efforts, the Parties were unable to achieve a resolution and agreed to resume the litigation. On May 26, 2015, Mr. Max reported the impasse and adjourned of the mediation to the Court. (Dkt. 42.)

(Dkt. 45 at 3.) No other mention of the mediation was included in Plaintiffs' Motion for Leave to Amend. Hence, Plaintiffs merely stated that a mediation occurred, when it occurred, who was present, and that it was unsuccessful—all of which was reported to the Court by Mr. Max for public consumption in his notice of adjournment. (Dkt. 42.)

It is entirely unclear how such benign statements could violate the Federal Rules of Evidence and Local Rule 9.07. Federal Rule of Evidence 408 states:

**(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

**(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

**(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(Fed.R.Evid. 408.) Likewise, Local Rule 9.07 states:

**(a) Trial De Novo Upon Impasse:** If the mediation conference ends in an impasse, the case will be tried as originally scheduled.

**(B) Restrictions on the Use of Information Derived During the Mediation Conference:** All proceedings of the mediation conference, including statements made by any party, attorney, or other participant, are privileged in all respects. The proceedings may not be reported, recorded, placed into evidence, made known to the trial court or jury, or construed for any purpose as an admission against interest. A party is not bound by anything said or done at the conference, unless a settlement is reached.

(L.R. 9.07.) Because GMRS's Motion for Sanctions does not describe in detail what specifically Plaintiffs' have disclosed in breach of confidentiality, GMRS's Motion for Sanctions is devoid of factual support and simply wastes the litigants' and the Court's time. As such, GMRS and its counsel, Steven G. Schwartz, should be sanctioned for its Rule 11 violation.

> **2.** **GMRS should be sanctioned for seeking sanctions against Plaintiffs' counsel for statements made in Plaintiffs' Motion for Leave to Amend concerning Ms. Walsh's inability to continue serving as a class representative.**

Finally, GMRS should also be sanctioned for its false statement that "The request to drop Walsh as Plaintiff, based on defense counsel requiring here to be deposed in Boca Raton was knowingly false." (Dkt. 54, 3, ¶ 8.) Such a charge is entirely overblown and is made for no reason but to harass Plaintiff's counsel. Plaintiffs' counsel admitted to GMRS's lawyer that it

was an inadvertent error to include a statement in declaration offered in support of the Motion for

Leave to Amend that Defense counsel had requested Ms. Walsh's deposition occur in Boca

Raton Florida. As Plaintiffs' counsel admitted to GMRS's lawyer when GMRS's lawyer accused

Plaintiffs' counsel of "lying" to the Court on this issue, that the mention of Boca Raton was an

honest mistake—Ms. Walsh could not continue as a class representative because she did not

have the time available to devote to the case, including by traveling to Florida to be deposed.

To Ms. Walsh, there was (and remains) no material difference between having to fly to

Orlando as opposed to Miami—both were and continue to be too burdensome in her view for her

to continue representing the class. Walsh admitted she can no longer devote the time necessary to

prosecute the case by traveling to Florida at all, whether to Boca Raton or to Orlando. Indeed,

there is no material change in burden for someone to fly from North Carolina to Miami versus to

Orlando. In fact, flights from Raleigh to Miami, while requiring approximately 15 more minutes

of travel time (2 hrs. 5 minutes vs. 1 hour 50 minutes), are being listed on www.kayak.com and

www.google.com for approximately $80 less per round trip than flights to Orlando. (last visited

August 2, 2015).[12]

As such, GMRS's reaction to Plaintiffs' counsel's admitted misstatement is entirely

overblown and is made for no purpose other than to harass and denigrate Plaintiffs' counsel.

GMRS should be sanctioned for this violation of Rule 11(b)(1) as well.

## IV.   CONCLUSION

GMRS's Motion for Sanctions is made for entirely improper purposes. It fails to follow

proper procedure and makes patently false accusations against Plaintiffs while omitting key

facts. At the end of the day, GMRS's Motion is made for an entirely improper purpose and is

---

[12] For good measure, Raleigh to Fort Lauderdale is the same basic travel time as Orlando but $40 cheaper. www.kayak.com (last visited Aug. 2, 2015).

sanctionable under Rule 11—GMRS blew its deadline to respond to Plaintiff's Motion to Amend and, without providing any excuse for why it missed the deadline, filed its Motion to Vacate and for Sanctions to insert into the case arguments it could have timely raised and to which Plaintiffs could have replied.

Thus, this Court should award Plaintiffs their reasonable costs and attorneys' fees incurred in defending against GMRS's baseless Motion for Sanctions, in prosecuting their own Plaintiffs' Motion for Rule 11 Sanctions, and awarding any other relief the Court deems just and appropriate

Dated: August 25, 2015

**ROBERT MARTIN and KRISTEN ARMSTRONG**, individually and on behalf of all others similarly situated,

By: _/s/ Steven L. Woodrow
Stefan L. Coleman, Esq., Florida Bar no. 0030188
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
law@stefancoleman.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

*Pro hac vice*

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS                    22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 25, 2015 I served the above and foregoing **Rule 11 Motion for Sanctions** by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record. The undersigned further certifies that this Motion was first served on GMRS's counsel on August 3, 2015 in compliance with Rule 11's safe harbor provision.

/s/ Steven L. Woodrow