# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs*,<br><br>v.<br><br><br><br>GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, and JOHN DOES 1-100,<br><br>   *Defendants*. | Case No. 6:14-cv-1290-ORL-31-KRS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

### PLAINTIFFS' SECOND MOTION TO OVERRULE DEFENDANT'S OBJECTIONS AND TO COMPEL FURTHER ANSWERS TO DISCOVERY WITH MEMORANDUM OF LAW IN SUPPORT

  This case concerns Defendant Global Marketing Research Services, Inc.'s ("GMRS" or "Defendant") serial violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) *et seq*. Plaintiffs Robert Martin ("Martin") and Kristin Armstrong ("Armstrong") (collectively the "Plaintiffs") move under Rules 26 and 37 of the Federal Rules of Civil Procedure for an Order: (1) overruling GMRS's objections to Plaintiffs' interrogatories and requests for documents, and (2) compelling GMRS to provide further answers and documents as requested by Plaintiff in discovery. In support, Plaintiffs state as follows:

### RELIEF REQUESTED

  1. Overrule GMRS's objections to: (a) identifying its third party clients, on whose behalves it placed the calls at issue in this case and who GMRS has asserted were responsible for obtaining both the phone numbers GMRS called and any consent to call such telephone numbers, and (b) to providing its contracts and communications with such third party clients related to the making of the calls;

  2.  Overrule GMRS's objections to providing any call data or other responsive information for surveys that GMRS conducted outside the states of the named Plaintiffs—North Carolina for Mr. Martin and New Hampshire for Ms. Armstrong; and

  3.  Compel GMRS to provide supplemental Rule 26(a)(1) disclosures that remove the eight (8) current and former members of Congress, and other legislators and regulators who have no relevance to the litigation, who GMRS has indicated it may call to offer opinions regarding the intent of the TCPA when it was enacted in 1991.[1]

## STATEMENT OF THE BASIS FOR RELIEF REQUESTED

  1.  Defendant GMRS has raised several unsupportable objections to Plaintiffs' Interrogatories and Requests for the Production of Documents. Multiple, extended attempts to meet and confer to resolve these issues have proven unsuccessful. These objections include:

  2.  First, Defendant has objected to identifying its third party clients—politicians, political action committees, political campaigns and the like—even though the calls were made on behalf of such clients and such clients may have liability under the TCPA. Further, such clients possess relevant evidence: GMRS has answered in discovery that its clients were responsible for obtaining the phone numbers GMRS called and any prior express consent to call such numbers. Put simply, GMRS has no basis for withholding the identities of its clients or its contracts and communications with such clients regarding its making of the calls.

  3.  Second, and despite the fact that Plaintiffs allege a nationwide class (with the States of California and Pennsylvania excluded), GMRS refuses to produce any call data or other

---

[1] These three issues do not encompass all of the disputes between the Parties. Rather, this Second Motion to Compel focuses on the issues that the Parties have agreed they are unable to resolve at this time without the Court's intervention. The Parties continue to meet and confer on such other issues and Plaintiffs reserve all rights to bring them to the attention of the Court as necessary.

[2] It should be noted that GMRS repeatedly raises the unfounded objection that the Plaintiffs are

information for any of the call surveys that it conducted in states other than the states of the named plaintiffs (New Hampshire for Armstrong and North Carolina for Martin). According to GMRS's flawed logic, such surveys aren't at issue in this case unless a named plaintiff was called in connection with those other surveys. This is despite the fact that GMRS has admitted that it received consent to call such persons in the *exact same manner regardless of the survey or the state in which the survey was conducted* (ie., by obtaining the consumer's voter registration information and presuming—merely by virtue of having included their cell phone numbers on their voter registration forms—that the consumers somehow gave express consent under the TCPA to be called by GMRS using its autodialer). Further, GMRS's position would require Plaintiffs to gather 46 additional class representatives (one from each state apart from California and Pennsylvania) to have a nationwide class.

        4.       Third, GMRS's initial disclosures are riddled with irrelevant information that merely serves to multiple and needlessly add to the complexity of the litigation. This includes GMRS's naming of eight (8) current and former members of Congress and other government officials who GMRS claim it *may* choose to call as witnesses to testify regarding the intent of the statute. Such an exercise misuses the Court's and Parties' resources, as it is well-settled that courts are to interpret statutes by first looking to the language of the enactment and then, only where ambiguity is shown may the Court turn to extraneous information regarding the legislative intent. In no event are members of Congress or Commissioners of the FCC to be called as witnesses to opine regarding the intent of the enactment. As such, GMRS's inclusion of such individuals is improper and they should be stricken as potential witnesses.

        5.       The Court should award Plaintiffs their attorneys fees and costs for having to litigate these unsupported (and unsupportable) discovery objections.

**MEMORANDUM OF LAW**

I.      **INTRODUCTION**

GMRS refuses to provide information critical for Plaintiffs to meet the requirements of class certification and the merits of their TCPA claims. First, GMRS refuses to identify its third party clients on whose behalves it made the calls, despite the fact that such entities are plausibly liable for the calls and unquestionably possess relevant information—including details regarding how the phone numbers and any consent to call them was actually obtained. Second, GMRS refuses to provide call data or other relevant information about any surveys that GMRS conducted outside of New Hampshire and North Carolina, despite the Amended Complaint's allegations of a nationwide class and the fact that GMRS has already admitted that it obtained any consent to call everyone— *regardless of the survey for which they were called or their state of residence*—in the exact same way. And third, GMRS's Rule 26(a)(1) disclosures are replete with irrelevant information that should be stricken or supplemented.

In short, GMRS has asserted discovery objections that are unsupported and should be overruled. Further, because GMRS's objections are without any merit, the Court should award Plaintiffs their attorneys' fees incurred in having to litigate this Second Motion to Compel.

II.     **STATEMENT OF FACTS AND BACKGROUND**

A.      **GMRS has spammed millions of consumers with its political survey calls.**

This case challenges GMRS's political survey calls that it makes to consumers[2] who never consented to be called in the first place. GMRS conducts political surveys using an

---

[2] It should be noted that GMRS repeatedly raises the unfounded objection that the Plaintiffs are not "consumers" under the TCPA because the calls at issue here are political calls, not telemarketing. This misconstrues the law. The term "consumer" as used in the TCPA refers to consumers of telephones—cell phone and landline customers and consumers who have purchased fax machines—not "consumers" of any items being offered for sale during any particular call. Indeed, it is no defense that the purpose of the call was political in nature—the

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                                              4

autodialer to spam cell phone numbers. GMRS obtains the phone numbers it calls from its third-party clients—politicians and political groups who apparently obtain the numbers from publicly available voter registration lists. Upon receiving the list of numbers, GMRS loads the data into its dialing system and proceeds to conduct its surveys.

The Plaintiffs are just two out of millions of individuals who've been called on their cellphones by GMRS over the past several years.

### B. Plaintiff files suit and serves discovery; GMRS eventually provides "responses," and the Parties meet and confer.

The original named Plaintiff, Melanie Walsh, served discovery on GMRS via mail back on December 23, 2014. (Declaration of Attorney Steven Woodrow in Support of Plaintiff's Second Motion to Compel, ¶ 2 ("Woodrow Decl."), attached hereto as Exhibit A). GMRS responded to Plaintiff's interrogatories on January 30, 2015, and to Plaintiff's requests to produce on February 2, 2015—without requesting extensions as to either. (*Id*. ¶ 6.) Given the general evasiveness of GMRS's "answers," the parties engaged in meet and confers through multiple letters to GMRS's counsel, emails, and telephone calls. (*Id*. ¶ 4)

---

FCC has made clear that a caller must procure prior express consent to make autodialed calls to cellphones for political reasons (albeit such prior express consent may be oral, as opposed to the written consent required for telemarketing). *See In re Rules and Regs. Implementing Tel. Consumer Protection Act of 1991,* 27 FCC Rcd. 1830, 1841 ¶ 28 (Feb. 15, 2012) ("2012 TCPA Order") ("…while we revise our consent rules to require prior written consent for autodialed or prerecorded *telemarketing* calls, we maintain the existing consent rules for *non-telemarketing, informational* calls, such as those by or on behalf of tax-exempt non-profit organizations, **calls for political purposes**, and calls for other noncommercial purposes, including those that deliver purely informational messages such as school closings…Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications*, research or survey calls,* and wireless usage notifications. Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers**, but require either written or oral consent if made to wireless consumers and other specified recipients**.) (Emphasis added.)

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                                                                 5

**C.    The Parties attempt to settle the case through private mediation, but they are unsuccessful—GMRS then refused to meet and confer regarding the outstanding discovery.**

During a meet and confer on February 12, 2015 the Parties, in addition to discussing the discovery responses, also discussed settlement. (Woodrow Decl. ¶ 4.) The Parties thereafter agreed to table their discovery disputes pending mediation. (*Id*.) On April 22, 2015 the Parties engaged in a full day in person mediation session in Boca Raton Florida overseen by national mediator Rodney Max. (*Id*. ¶ 5) Unfortunately a settlement wasn't reached, and on May 22, 2015 counsel for Plaintiff asked GMRS's attorney for a date when they could resume their prior meet and confers. (*Id*.) On June 5, 2015 Mr. Schwartz responded that, "I discussed my discovery responses with Stefan well before the mediation so I do not see the need to do so again." (*Id*.)

Because several discovery issues remained outstanding, on June 24, 2015 Plaintiff's counsel again attempted to engage attorney Schwartz in a meet and confer, setting forth in a letter the outstanding discovery requests and disclosures at issue and asking for a response in seven (7) days. (Woodrow Decl. ¶ 6). GMRS's counsel failed to respond. On July 13, 2015, Plaintiffs filed their first Motion to Compel. (Dkt. 49.) On July 14, 2015, Magistrate Judge Spaulding struck Plaintiffs' Motion to Compel and Ordered, in part, that, "counsel for the parties shall again confer, in person or by telephone, in a good faith effort to resolve discovery disputes before a renewed motion is filed." (Dkt. 51.)

**D.    Further meet and confers held in the wake of Plaintiffs' First Motion to Compel have not resolved the discovery disputes.**

Following the striking of Plaintiffs' first Motion to Compel (dkt. 49) counsel for the Parties met and conferred regarding the discovery by telephone on July 23, 2015. (Woodrow Decl. ¶ 8.) Counsel for the Parties agreed to apply the discovery that was served under the name of the prior named plaintiff, Melanie Walsh, to the new named Plaintiffs and that GMRS would

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                                          6

provide supplemental responses as if the discovery had been issued by the new named Plaintiffs, Martin and Armstrong. (*Id*.) GMRS's counsel indicated he would attempt to provide the supplemental responses within 14 days. After granting itself several extensions, however, GMRS eventually provided its supplemental responses on August 18, 2015. (*Id*.)

On August 26, 2015, defense counsel made himself available to meet and confer regarding the supplemental responses and the outstanding discovery issues. (*Id*. ¶ 9.) During that discussion, counsel for the Parties confirmed that they remained "at issue" regarding GMRS's objections both to identifying its third party clients (or to providing any information about or contracts/communications with such clients) and to producing information in this case related to surveys conducted in states apart from New Hampshire, North Carolina (with the exception of California and Pennsylvania). (*Id*.) Counsel for the Parties also confirmed that they are at issue with respect to GMRS's initial disclosures and that GMRS will not, absent an Order from the Court, withdraw its references to members of Congress and other irrelevant individuals. (*Id*. ¶ 10.) As such, Plaintiff's counsel certifies under Local Rule 3.01(g) that the Parties have exhausted their attempts to reach a resolution on the issues set forth in this Second Motion to Compel, and, as explained below, the Court should overrule GMRS's objections.

### III.  ARGUMENT

Federal Rule of Civil Procedure 26 states that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," unless a court order provides otherwise. Fed.R.Civ. P. 26(b)(1). Relevant information need not be admissible if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Feise v. N. Broward Hosp. Dist.*, No. 14-CV-61556, 2015 WL 2341221, at *3 (S.D. Fla. May 12, 2015) The onus is on the party resisting discovery to show how the objected-to request is unreasonable or unduly burdensome. *See* Fed.R.Civ.P. 33(b)(4); *Panola Land Buyers Ass'n v. Shuman,* 762

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                                                                 7

F.2d 1550, 1559 (11th Cir.1985); *Rossbach v. Rundle,* 128 F.Supp.2d 1348, 1354 (S.D. Fla. 2000); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* 2001 WL 34079319 (S.D. Fla. 2001)("the burden of showing that the requested information is not relevant to the issues in the case is on the party resisting discovery") (citation omitted); *Gober v. City of Leesburg,* 197 F.R.D. 519, 521 (M.D. Fla. 2000)("The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information").

As explained below, GMRS has failed to properly respond to discovery and its objections should be overruled.

> A. **The Court should overrule GMRS's objections to identifying its third party client on whose behalves it placed the calls and who GMRS admits were responsible for obtaining both the numbers to be called and prior express consent to call them.**

First, GMRS has repeatedly objected to identifying its third party clients or to producing its contracts and communications with any of them. As requested by Plaintiff in Interrogatory No. 21 and as objected to by GMRS:

> **21. Identify all third parties on whose behalf You made any calls, identifying any campaigns or programs You operated for such third parties and the terms of any agreements between You and any such third parties.**
>
> ANSWER: Objection: This information involves proprietary, confidential trade secrets which are irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence in this case. Defendant has explained in response to Interrogatory number 8 that there was no indemnity agreement in place between GMRS and its clients such that the client had no obligation to defend or hold harmless GMRS for any claims being alleged in this lawsuit. In any event Defendant is believed obligated to maintain the confidentiality and anonymity of its clients, some of whom the media, candidates seeking election to local, state or national offices, political parties or action committees and in some instances, other pollsters needing additional staff to conduct their surveys for candidates, parties PAC's or general media. Defendant will not violate such confidentiality for fear of impairment of its credibility and usefulness with its clients. The disclosure of Defendant's clients will cause devastating financial ruin to its company in this highly competitive political pollster small industry. This interrogatory and Plaintiffs' amended complaint seeking to sue Defendant's clients for Defendant's actions is being done solely to harass Defendant and force some kind of extorted settlement of these groundless claims.

(*See* GMRS's Supplemental Responses to Plaintiffs' First Set of Interrogatories, attached to the Woodrow Decl. as Ex. 1.)[3] Likewise, as requested in Request for Production No. 20:

> **20. All Documents sufficient to identify any third parties from whom you obtained consent to call the phone number of Plaintiff or any Person you called in connection with the same campaign or program under which you called You Plaintiff, including any contracts or agreements between You and any such third party.**
>
> RESPONSE: None other than voter registration records in each state equally available to Plaintiffs.

(*See* GMRS's Supplemental Responses to Plaintiffs' First Set of Requests for Production, attached as Ex. 2.) (Emphasis in original).

GMRS's Amended Privilege Log served August 18, 2015, echoes GMRS's objection to disclosing "Contracts or agreements, invoicing, and emails between GMRS and its clients." (*See* "Amended Privilege Log," a true and accurate copy of which is attached as Ex. 3.) GMRS asserts that such information is properly withheld due to its status as "Proprietary; trade secrets; client confidentiality." (*Id*.) Likewise, with respect to survey "scripts" that GMRS has provided, the Amended Privilege Log indicates that its clients' names have been "redacted from the survey script and call data reports." (*Id*.)

GMRS's objections should be overruled and it should be compelled to identify its third party clients. First, GMRS's clients may be liable for the calls. Under the TCPA, even if the clients did not personally make the calls, "[t]he FCC has explained that vicarious liability [in the context of the TCPA] may be predicated upon federal common law agency principles." *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1754628, at *6 (M.D. Fla. Apr. 17, 2015) (citing *DISH Network,* 28 FCC Rcd. at 6586). Indeed:

> Such principles include classical agency (where a principal manifests assent that an agent shall act on the principal's behalf and subject to the principal's control);

---

[3] All citations exhibits are to those attached to the Woodrow Declaration, attached hereto as Ex. A.

> apparent authority (where the principal is accountable for the results of a third-party's belief about the actor's authority to act as an agent when the belief is reasonable and traceable to a manifestation of the principal); and ratification (when a principal knowingly accepts the benefits of the actor's conduct). *Id.* at 6586–87. The FCC has specifically "reject[ed]" the argument that vicarious liability extends beyond these delineated agency principles in the context of the TCPA. *Id.* at 6585–86

*Shamblin*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1754628, at *6; *see also Toney v. Quality Res., Inc.*, No. 13 CV 42, 2014 WL 6757978, at *10 (N.D. Ill. Dec. 1, 2014) (explaining that principals may have vicarious liability for TCPA violations "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification"). Accordingly, GMRS's clients may be liable for the calls to the extent such clients gave GMRS actual or apparent authority to make the calls or insofar as they ratified the calls. GMRS's contracts and communications with its third party clients—which undoubtedly spell out and discuss the rights and obligations of the parties with respect to the calls—are of course probative of whether any agency liability may attach.[4] Hence, Plaintiff needs this information to evaluate whether such entities should be added to the litigation.

Second, GMRS's third party clients undoubtedly possess relevant information. GMRS's discovery responses repeatedly assert that it relied on its third party clients to both: (1) provide it with phone numbers to call and (2) to obtain prior express consent to call such numbers. (*See* "GMRS Supplemental Answers to Interrogatory No. 1 ("Defendant's clients requesting political surveys to be conducted are believed to have purchased or otherwise acquired voter registry data

---

[4] Because GMRS's third party clients have potential liability, Plaintiffs added John Doe Defendants 1-100 when they filed the First Amended Complaint. On August 21, 2105 the Court extended the deadline for adding parties and stated "The deadline for motions to add parties is extended 60 days, until October 28, 2015. The Court expects the discovery dispute regarding Defendants' third-party clients to be resolved by September 30, 2015." (Dkt. 58.) As such, Plaintiffs present this Second Motion to Compel so that the discovery dispute regarding GMRS's third-party clients may be resolved consistent with the timing expected by the Court.

and these phone numbers as listed on those voter registry rolls and they in turn provided these phone number lists to Defendant."); Interrogatory No. 4 ("Defendant does not have any documents that show 'express consent'[5] by anyone prior to initiating a call to them to ask if they want to participate in a political survey. To the best of Defendant's knowledge, the phone numbers of any persons called for any survey conducted were obtained from published voter registration records available at state Boards of Elections or like government agencies and the particular phone numbers listed were volunteered by the voters registering to vote. Defendant asserts this operates as consent by the owner of the phone to which his/her published number is assigned to receive a call for political purposes at that phone number."); and Interrogatory No. 7 ("all phone numbers called were obtained from public voter registration records and by no other methods."), Ex. 1.) As such, GMRS's third-party clients are positioned to know specifically how consent was supposedly obtained and how such numbers were transmitted to GMRS.[6]

Despite the fact that GMRS's clients have both potential liability and relevant information, GMRS's counsel has refused during meet and confers to disclose the information, instead stating that GMRS would suffer financial harm if the information were produced. (Woodrow Decl. ¶ 9.) This is improper and adds to the delay and costs of the litigation. There

---

[5] It should not be lost on this Court that GMRS's admission that is has no "documents that show 'express consent' by anyone prior to initiating a call to them…" ultimately entitles Plaintiff and the to-be-certified class to summary judgment on GMRS's affirmative defense that it obtained consent to call people. (*See* GMRS's Ans. and Aff. Defenses to Amd. Compl. (dkt. 62)).

[6] As a corollary, given their obvious relevance, GMRS should have disclosed its third party clients in its initial disclosures. *Dunstan v. Wal-Mart Stores E., L.P.*, No. 307-CV-713-J-32TEM, 2008 WL 2025313, at *2 (M.D. Fla. May 9, 2008) ("The rules require that discovery be accomplished voluntarily; that is, the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosure.") (citing *Bush Ranch v. E.I. DuPont Nemours and Co.,* 918 F. Supp. 1524, 1542 (M.D. Ga. 1995), *rev'd on other grounds,* 99 F.3d 363 (11th Cir.1996)).

has been no showing that producing the information in discovery would cause GMRS economic harm, and, even if it could, GMRS hasn't proposed any confidentiality order.

Likewise, GMRS's assertion that the information sought is "proprietary" or "trade secrets" cannot stand. (*See* GMRS Amended Privilege Log 1, Ex. 3.) It is not enough to simply label a document "proprietary." *See Schwarz & Schwarz of Virginia, L.L.C. v. Certain Underwriters at Lloyd's London Who Subscribed to Policy No. NC959*, No. CIV.A. 6:07CV00042, 2009 WL 1043929, at *5 (W.D. Va. Apr. 17, 2009) ("To the extent that some documents referenced in the privilege log were also withheld on the basis of 'proprietary information,' the court will overrule that objection as review of these documents provides no discernible basis or reasonable justification for withholding relevant discovery."); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 14-1136-JAR, 2015 WL 404977, at *6 (D. Kan. Jan. 29, 2015) ("Nor does defendant meaningfully attempt to support its 'proprietary' objection.") *review denied*, No. 14-1136-JAR-JPO, 2015 WL 1978356 (D. Kan. May 1, 2015). "The burden is on the party claiming the privilege to establish those facts that are the essential elements of the privileged relationship or matter." *CSX Transportation, Inc. v. Admiral Insurance Company, Inc.,* 1995 WL 855421, *1 (M.D. Fla. 1995); *AARP v. Kramer Lead Marketing Group,* 2005 WL 1785199, *3 (M.D. Fla. 2005).

Further, under § 688.002 of the Florida Uniform Trade Secrets Act, a "trade secret" consists of: "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "(A) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and "(B) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Third Party*

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                                              12

*Verification, Inc. v. SignatureLink, Inc.*, No. 606CV-415-ORL-22DAB, 2007 WL 1288361, at *3-4 (M.D. Fla. May 2, 2007) (quoting FLA. STAT. § 688.002(4)). When trade secret privilege is asserted, the court must determine whether the information actually constitutes a trade secret. *Del Monte Fresh Produce Company v. Dole Food Company,* 148 F.Supp.2d 1322, 1324 (S.D. Fla. 2001).

Applied here, GMRS provides nothing to show that its clients (and related contracts and communications) constitute "information, including a formula, pattern, compilation, [or] method" that has independent economic value from not being generally known or that GMRS has made any effort to maintain the secrecy of such clients. Absent such proof, GMRS's repeated assertions that certain documents are "proprietary" or constitute "trade secrets" fall apart.

Striking matter from the privilege log or requiring additional detail does not obviate Plaintiffs' need for evidence. Rather, GMRS's objections should not only be overruled, the Court should compel GMRS to identify its third party clients and to produce its contracts and communications relating to GMRS's calls. Once the information is produced, Plaintiffs can determine whether such third parties need to be subpoenaed or added to the case as defendants.[7]

> **B.  GMRS should be compelled to produce in this lawsuit information related to surveys that it conducted in states other than New Hampshire and North Carolina (with the exception of California and Pennsylvania).**

The second issue that requires the Court's resolution concerns GMRS's objections to providing any information about surveys that GMRS conducted in states other than New

---

[7] As a final note here, the Court should reject Defendant's assertion that "This interrogatory and Plaintiffs' amended complaint seeking to sue Defendant's clients for Defendant's actions is being done solely to harass Defendant and force some kind of extorted settlement of these groundless claims." Such hyperbole is both misplaced and inaccurate. Plaintiffs need to see the contracts and communications between GMRS and its clients to determine the extent of each client's level or involvement in the making of the calls. Furthermore, no information is being sought for any improper purpose, such as harassment or to "force some kind of extorted settlement" of "groundless claims." Just the opposite is true: plaintiffs seek the information they need to prove their claims, which, notwithstanding GMRS's protests to the contrary, are meritorious.

Hampshire and North Carolina. That is, while GMRS has agreed to produce certain call reports and data to show the total number of calls made for each survey that GMRS conducted in New Hampshire and North Carolina, GMRS has refused to provide similar information about surveys it conducted in other states.[8] For example, Plaintiff asked for and received the following:

> **4. Identify all campaigns through which You called any Persons where You obtained prior express consent from the called Persons in the same manner as You or any Person acting on Your behalf obtained prior express consent to call Plaintiff on her cellphone or using a prerecorded or artificial voice.**
>
> ANSWER: Objection: overly broad, without any time limitation, unrelated to these Plaintiffs' surveys, unduly burdensome and harassing. As each telephone survey is to some extent unique, Defendant cannot answer this interrogatory without extensive, costly research as to hundreds of such surveys conducted over several years involving potentially millions of phone numbers. *Further, since there is no allegation as to any other people called for specific surveys at specific times or places other than North Carolina in March- April, 2014; or, New Hampshire in August, 2014, this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.* Defendant also objects to this interrogatory as it seeks proprietary information regarding its client lists, and proprietary information as to how clients conduct non-telemarketing political surveys to collect political opinions and likely voter trends that have nothing to do with this lawsuit. Without waiver of these objections, Defendant does not have any documents that show "express consent" by anyone prior to initiating a call to them to ask if they want to participate in a political survey. To the best of Defendant's knowledge, the phone numbers of any persons called for any survey conducted were obtained from published voter registration records available at state Boards of Elections or like government agencies and the particular phone numbers listed were volunteered by the voters registering to vote. Defendant asserts this operates as consent by the owner of the phone to which his/her published number is assigned to receive a call for political purposes at that phone number. See response to No. 3 above. Further, at no time did Defendant call these Plaintiffs using any artificial voice or pre-recorded device or message. All discussions between Defendant and any person calledto conduct these political surveys were by human operator-employees and not some pre- recorded messaging system. Every call to these or any Plaintiffs for such political surveys were conducted by a GMRS employee (not a pre-recorded or artificial voice), and made to discuss political opinions at the willing, discretionary participation of each person called, not to sell any products or services of any kind, nor to solicit any donations to any political party or candidate. If the person called, upon answering his/her phone, agrees to participate in the questionnaire, which generally takes about twenty (20) minutes, the survey is conducted. If he/she

---

[8] Given the separate litigation pending in California (*Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW (N.D. Cal. 2015) and Pennsylvania (*Thompson v. Global Marketing Research Services, Inc.*, 2:15-cv-03576-AB), Plaintiffs have not requested any data or other call information in this case for persons called by GMRS who are covered by the in California and Pennsylvania actions.

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                              14

elects not to participate and directs he or she not be called again, that person's phone number is put on an internal "Do Not Call" list and not contacted again. If the person is unclear as to whether he/she declines to participate in just that particular survey at that time or is requesting never to be called again, he/she is asked by the GMRS employee to clarify their wishes whether it is okay to be called again. Additionally as of September 1, 2014 no call to a known cell number was initiated by any autodialer device.

**17. Identify each Person by name, telephone, and date and time called, that You called where you obtained prior express consent to call the Person in the same manner by which You obtained prior express consent to call Plaintiff.**

ANSWER: Objection: harassing, abusive and repetitive of nearly all prior interrogatories as to consent. Without waiver, see prior responses.

**20. Identify all of Your calling campaigns or programs during the relevant time period through which You called Persons where you obtained prior express consent to call them in the same manner as You claim You obtained prior express consent to call Plaintiff, including without limitation the campaign or program through which You made any call to Plaintiff, describing for each such campaign or program: the start and end dates, the number of persons You called for each and their Identities (names, telephone numbers, and dates called), the identity of any third parties on whose behalf You made the calls or ran the campaign or program, Your methods for obtaining prior express consent to call Persons in connection with the campaign or program, and the campaign or program's geographic scope.**

ANSWER: Objection. This Interrogatory is repetitive of multiple prior requests for the same information. See above responses. Further, Defendant asserts such request is overly broad, unduly burdensome and otherwise improper in scope and time. Defendant relies on the voluntary publication of a voter's phone number as consent to be called at that number for political purposes, if not calls generally.

(*See* Ex. 1.)

During the meet and confers between counsel, GMRS's attorney indicated that GMRS would stand on its objections to providing any information in this proceeding about surveys in states other than New Hampshire and North Carolina (and to provide information about California consumers in the *Zilveti* case and about Pennsylvania consumers in the *Thompson* case). GMRS's lawyer conceded that for GMRS to consider such out-of-state information relevant to this proceeding, new named Plaintiffs from each state would need to be added to the case. (Woodrow Decl. ¶ 9.) This position is untenable.

PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY                                                     15

First, the information sought is plainly relevant—the class alleged in this case isn't limited to the states of the named plaintiffs. Rather, a (nearly) nationwide class is pled. As such, there is no basis for conducting discovery as if the class were limited to consumers in New Hampshire and North Carolina, and Plaintiffs need the phone numbers GMRS called for each state to demonstrate the size of the class, the number of calls, and the total amount of damages.

Second, simply because a named plaintiff may hail from one state that does not mean a different named plaintiff is needed to adequately represent persons who reside in all other states. This is particularly true where, as here, the Defendant admits that consent was obtained the exact same way for every person it called, regardless of the person's state of residency. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party"); *Hinman v. M & M Rental Ctr.,* 545 F.Supp.2d 802, 806–07 (N.D.Ill. 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("Again, the key question here is whether 'the same evidence will suffice for each member to make a prima facie showing' as to consent")*; see also Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 394 (N.D. Ohio 2012) (common consent can be shown "where the defendant had purchased a list of residential telephone numbers from a vendor and proceeded to cold call each number, including plaintiff's…."); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) ("Omnipak alleges that it obtained all of the recipients' facsimile numbers from the Manufacturers' News database. Therefore, whether the recipients' inclusion in the Manufacturers' News database constitutes express permission to receive advertisements via facsimile is a common issue.").

Indeed, GMRS hasn't pointed to a single variance in state laws that would suggest providing a telephone number while registering to vote amounts to consent to being called repeatedly with an autodialer in some states but not others. Absent such variances, if Martin and Armstrong are found to have consented to GMRS's calls by virtue of their having registered to vote in their respective states, then all of the persons who GMRS called consented for TCPA purposes—there are no state-to-state differences that would indicate registering to vote in any one particular state confers consent any more effectively than registering in a different state would. Put simply, GMRS has no basis for withholding information about states other than New Hampshire and North Carolina because consent was obtained in the same way for everyone. Rather, a near-national class is pled and GMRS should be compelled to produce responsive information for the other 46 states.

It is also worth noting that sustaining GMRS's objection would lead to the absurd result of nationwide class actions—even those seeking redress for violations of a uniform federal law—needing 50 separate named plaintiffs simply to gain the discovery needed to show whether nationwide certification is appropriate. No authority requires this. Nevertheless, GMRS's refusal to budge from this position has forced Plaintiffs to come before the Court seeking that it be overruled with an order further compelling GMRS to provide data and call statistics for each state (California and Pennsylvania excepted). The absence of such information threatens Plaintiffs' ability to demonstrate the approximate number of class members and the total number of calls that GMRS placed to them.

In sum, the Court should overrule GMRS's objection to providing information about surveys it conducted in other states.

### C. GMRS's Rule 26(a)(1) disclosures are overbroad and riddled with irrelevant information.

The third discovery issue requiring the Court's attention at this time concerns GMRS's deficient Rule 26(a)(1) disclosures. "A major purpose of [the initial disclosure requirements] is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." Fed. R. Civ. P. 26, Advisory Committee Notes to 1993 Amendments; *see also Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004); *Tamas v. Family Video Movie Club, Inc.*, 304 F.R.D. 543, 545 (N.D. Ill. 2015) ("'[D]isclosure requirements should, in short, be applied with common sense' to help focus the attention on the 'discovery that is needed,' and not used to 'indulge in gamesmanship with respect to the disclosure obligations.'") Indeed, initial disclosures are supposed to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." Fed. R. Civ. P. 26, Advisory Committee Notes to 1993 Amendments.

The problem here is that GMRS's initial disclosures do just the opposite: GMRS lists 8 current and former members of Congress and their staffers, plus several current and former FCC employees, each of whom it claims may testify as to the intent of the TCPA and its purported unconstitutionality/inapplicability to political survey calls. (*See* "GMRS Initial Disclosures," Ex. 4.) Of course, such disclosures are irrelevant and improper—courts discern the meaning of statutes from their plain language and only in limited circumstances, such as where the statute's language is ambiguous, do they turn to legislative history like congressional reports and similar materials. *See, e.g., CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001). Courts do not solicit testimony from members of the legislature—such a canon of

construction would lead to the absurdity of lawmakers testifying endlessly in cases where the meaning of any laws are challenged.[9]

During meet and confers between counsel, GMRS's lawyer Steven Schwartz refused to file supplemental disclosures removing the legislators' names. (Woodrow Decl. ¶ 10.) This is despite the fact that Mr. Schwartz could not explain which representatives GMRS intended to call as witnesses. (*Id*.) The initial disclosures also fail to provide the required contact information for any of the representatives. Indeed, it seems as if the only purpose behind GMRS's laundry list of Congressional representatives is to add to the expense of the case. Such gamesmanship shouldn't be countenanced. As such, the Court should either compel GMRS to provide supplemental disclosures removing immaterial witnesses or strike its initial disclosures entirely.

## IV. CONCLUSION

GMRS's objections are not well founded. While it may desire to keep its third party clients out of the litigation, the way to do that would be to disclose the relevant contracts and communications so that Plaintiffs could analyze whether GMRS's clients should be added to the case or whether they will merely serve as witnesses. GMRS cannot wholesale refuse to provide relevant information. Likewise, while GMRS may desire to limit this case to the states of New Hampshire and North Carolina, there is no basis for doing so in the Complaint, which alleges a national class (save for California and Pennsylvania). Rather, as GMRS called everyone with the same equipment after having obtained their numbers and supposed consent to call them in the exact same way, there is no basis for concluding that the named plaintiffs will not be able to

---

[9] This is in addition to any Constitutional issues that could potentially arise. *See* Art. I, s 6, cl. 1, of the Constitution ("The Senators and Representatives…shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; **and for any Speech or Debate in either House, they shall not be questioned in any other Place.**") (Emphasis added).

serve as adequate representatives for consumers in other states, or to require 46 named plaintiffs to ensure the class is protected. Finally, GMRS's initial disclosures are flatly improper.

WHEREFORE the named Plaintiffs, Robert Martin and Kristen Armstrong, respectfully request that this Court grant their Motion to Overrule Objections and to Compel Further Answers to Discovery and for such additional relief as the Court deems necessary, reasonable, and just.

Dated: September 3, 2015

**ROBERT MARTIN and KRISTEN ARMSTRONG**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow

Stefan L. Coleman, Esq., Florida Bar no. 0030188
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
law@stefancoleman.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

*Pro hac vice*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 3, 2015 I served the above and foregoing ***Plaintiffs' Second Motion to Overrule Objections and to Compel Further Answers to Discovery*** by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.

/s/ Steven L. Woodrow