# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG, individually and on behalf of all others similarly situated, | Case No. 6:14-cv-1290-ORL-31-KRS |
| Plaintiff, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, and JOHN DOES 1-100, | |
| Defendants. | |

## DECLARATION OF STEVEN L. WOODROW

I, Steven L. Woodrow, declare as follows:

1.      I am over the age of eighteen (18), and am one of the attorneys for the plaintiffs in this matter. I make this declaration in support of Plaintiffs' Second Motion to Compel.

2.      My co-counsel, Stefan Coleman, caused Plaintiff's first set of discovery to be sent by email to Steven Schwartz, counsel for GMRS, on or before December 21, 2014. Mr. Coleman then mailed the discovery to Mr. Schwartz on December 23, 2014. This discovery included interrogatories under Federal Rule 33 and requests for documents under Federal Rule 34 and was served on behalf of the original named Plaintiff, Melanie Walsh.

3.      GMRS responded to Plaintiff's Interrogatories on January 30, 2015, and to Plaintiff's requests to produce on February 2, 2015. Despite serving such responses past the deadline set by the Federal Rules, GMRS did not request any extension of time.

1

4.      Following Plaintiff's receipt of GMRS's responses, the parties engaged in meet and confers through multiple letters to GMRS's counsel, emails, and telephone calls. This included discovery dispute letters sent to GMRS's counsel on February 2, 2015 and February 4, 2015, as well as a telephonic meet and confer on February 12, 2015. During this telephonic meet and confer—in addition to discussing GMRS's deficient discovery responses and objections— counsel discussed the potential for settlement. Following that discussion and further talks, both parties agreed to hold any discovery disputes in abeyance so that the parties and their counsel could focus efforts on mediation.

5.      Thereafter, the parties engaged in a full-day mediation in Boca Raton on April 22, 2015, which was overseen by nationally respected mediator Rodney Max. Unfortunately, a settlement was not reached during the mediation. On May 22, 2015, when settlement talks ended, I asked Mr. Schwartz for a convenient date to resume the discovery meet and confer process.

6.      Mr. Schwartz responded on June 5, 2015 by writing, in pertinent part, "I discussed my discovery responses with Stefan well before the mediation so I do not see the need to do so again." Despite Mr. Schwartz's refusal to engage in further meet and confers, and because several discovery issues remained outstanding, on June 24, 2015, Plaintiffs' counsel wrote another letter to Mr. Schwartz outlining and confirming the outstanding discovery issues. The letter requested a response within seven days, which was July 1, 2015. Mr. Schwartz did not respond to the letter, and Plaintiff filed a Motion to Compel on July 13, 2015. (Dkt. 49.)

7.      On July 14, 2015, Magistrate Judge Spaulding struck Plaintiffs' Motion to Compel and ordered, in part, that, "counsel for the parties shall again confer, in person or by telephone, in a good faith effort to resolve discovery disputes before a renewed motion is filed." (Dkt. 51.)

8.      Following the denial of Plaintiffs' first Motion to Compel (dkt. 49) counsel for the Parties met and conferred regarding the discovery by telephone on July 23, 2015. During that discussion, counsel for the Parties agreed to apply the discovery that was served under the name of the prior named plaintiff, Melanie Walsh, to the new named Plaintiffs and that GMRS would provide supplemental responses as if the discovery had been issued by the new named Plaintiffs, Martin and Armstrong. GMRS's counsel indicated he would attempt to provide the supplemental responses within 14 days. After granting itself several extensions, GMRS provided its supplemental responses on August 18, 2015. (*See* "GMRS's Supplemental Responses to Plaintiffs' First Set of Interrogatories," a true and accurate copy of which is attached hereto as Exhibit 1, and "GMRS's Supplemental Responses to Plaintiff's First Set of Requests for the Production of Documents, a true and accurate copy of which, without its exhibits, is attached hereto as Exhibit 2.)[1]

9.      Counsel for the Parties then met and conferred on August 26, 2015 regarding the supplemental responses and other outstanding discovery issues. During that discussion, counsel for the Parties confirmed that they remained "at issue" regarding GMRS's objections both to identifying its third party clients (or to providing any information about or contracts/ communications with such clients) and to producing information in this case related to surveys conducted in states apart from New Hampshire, North Carolina (with the exception of California and Pennsylvania). As GMRS's counsel had stated in the past, he indicated during this call that GMRS could not identify its third party clients as to do so would cause the company financial harm. GMRS's counsel did not propose any confidentiality agreement on the call or at any other time. Attorney Schwartz also indicated that for GMRS to consider such out-of-state information

---

[1] Also on August 18, 2015, GMRS served an "Amended Privilege Log," a true and accurate copy of which is attached hereto as Exhibit 3.

relevant to this proceeding, new named Plaintiffs from each state would need to be added to the case (or that Plaintiffs would need a named representative that had received GMRS survey calls in such other states).

10.     Counsel for the Parties also confirmed that they are at issue with respect to GMRS's initial disclosures. (*See* "GMRS's Rule 26(a)(1) Initial Disclosures," an accurate copy of which, without attendant exhibits, are attached hereto as Exhibit 4.) GMRS's counsel indicated that GMRS would not withdraw the initial disclosures' references to members of Congress and other individuals. GMRS's counsel could not say which, if any, of the individuals listed might be called as witnesses by GMRS.

Further affiant sayeth not.

Signed this 1st day of September, 2015 in Denver, Colorado.


/s/ Steven L. Woodrow
Steven L. Woodrow

# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, )<br>)<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GLOBAL MARKETING RESEARCH )<br>SERVICES, INC., a Florida corporation, )<br>And JOHN DOES 1-100, )<br>)<br>Defendants. )<br>)<br>_____) | Case No. 6:14-cv-1290-GAP-KRS<br><br>CLASS ACTION |

## DEFENDANT'S NOTICE OF SERVING
## AMENDED ANSWERS TO INTERROGATORIES

Defendant, Global Marketing Research Solutions, Inc. ("GMRS"), by and through undersigned counsel and pursuant to Fed. R. Civ. P., Rule 33, hereby gives notice of serving its Amended Answers to Plaintiffs' Interrogatories propounded on or about December 19, 2014 in view of Plaintiffs' Amended Complaint.

Dated: August  19 , 2015.

GLOBAL MARKETING RESEARCH
SERVICES, INC., Defendant,


By: /s/ Steven G. Schwartz
      Steven G. Schwartz, Esquire
      Florida Bar No. 911471
      Schwartz Law Group
      6751 N. Federal Highway, #400
      Boca Raton, Florida  33487
      Ph:  (561) 395-4747
      Fx:  (561) 367-1550
      Email:  sgs@theschwartzlawgroup.com
      Email:  cml@theschwartzlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on August  19 , 2015, the foregoing document is being served to all counsel of record identified on the service list below in the manner specified, via email or via U.S. Mail.

By:  s/ Steven G. Schwartz
Steven G. Schwartz, Esq.

## SERVICE LIST

**Counsel for Plaintiffs**

Stefan L. Coleman, Esq.
Law Offices of Stefan Coleman, PLLC
201 S. Biscayne Blvd., Floor 28
Miami, Florida 33131-4309
Ph:  (877) 333-9427
Fx:  (888) 498-9846
Email:  law@stefancoleman.com

**Pro Hac Vice Counsel for Plaintiffs**

Steven L. Woodrow, Esq.
Patrick H. Peluso, Esq.
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Ph:  (720) 213-0675
Email:  swoodrow@woodrowpeluso.com
Email:  ppeluso@woodrowpeluso.com

l:\open files\200271\pleadings\gmrs amended answers to rogs jg.docx

2

## DEFENDANT'S AMENDED ANSWERS TO INTERROGATORIES

**GENERAL RESPONSE:  These answers are amended to respond to Plaintiffs' Amended Complaint changing the representative Plaintiffs and various allegations.  By agreement of counsel the original interrogatories served are deemed to refer to new representative Plaintiffs Martin and Armstrong in place of Ms. Walsh.  These amended responses are filed without waiver of Defendant's Motion to Vacate in part the Order granting Plaintiffs leave to amend their Complaint.**

1.   Identify and describe the manner through which You obtained the Plaintiff's (sic) phone number prior to making any call to Plaintiff (sic).

**ANSWER: It is believed that both Plaintiffs Robert Martin and Kristin Armstrong voluntarily provided their phone numbers to their respective state Boards of Elections or comparable Voter Registration departments as the preferred phone number to be called for political matters which subsequently published their phone numbers on a registered voters list in each state.  Defendant's clients requesting political surveys to be conducted are believed to have purchased or otherwise acquired voter registry data and these phone numbers as listed on those voter registry rolls and they in turn provided these phone number lists to Defendant.  Defendant compiled smaller lists of voter numbers to be called for the particular surveys where each of these Plaintiffs lived and this is how Martin and Armstrong's phone numbers were included among those to be called.**

2.   State the complete factual basis for Your claim, if any, that you had a specific reason or reasons for placing any of the call(s) You made to Plaintiff, including with regard to any such call or calls the Plaintiff's name, date and time of the call, and the specific reason or reasons why you caused the call to be placed.

**ANSWER:  Defendant conducted a political survey questionnaire of various registered voters at various times in both North Carolina where Mr. Martin lived and New Hampshire where Ms. Armstrong lived.  Both Plaintiffs were called solely for a political purpose to discuss their political opinions and not for any telemarketing purposes.**

**As to Mr. Martin, he was called on March 12, 2014 at the number he listed on voter registration records.  This call was brief, about 35 seconds.  After a GMRS employee explained the purpose of the call to conduct a political survey and to ask if he was interested to do this at that time, he advised he did not wish to participate in the survey at that time though Defendant did not understand that Mr. Martin directed not to be called again.  Defendant understood from this call that Mr. Martin did not object to some later participation in the survey and that he did not object to being called back at a later time.  Several attempts were made to talk to him again in April, 2014 for another survey but an answering device was activated each time, thus there was no caller interaction.  After April 29, 2014, he was not called again.  Allegations as to the manner or number of calls alleged by Mr. Martin in Plaintiffs' Amended Complaint are denied.  A report of all calls made to**

Mr. Martin is attached to Defendant's amended responses to plaintiff's requests for production as Exhibit A.

With regard to Ms. Armstrong, while multiple attempts were made to call her for her possible participation in several political surveys, at no time did Ms. Armstrong ever answer the call. She was called in August, 2014; once in September, 2014; several times in October, 2014; once in March, 2015; and several times in April, May, June and July, 2015. There never was any actual discussion with her either because her answering device was activated or on one instance on August 13, 2014, the phone range but no one picked up the phone. No one at GMRS spoke to Ms. Armstrong at any time nor does Defendant have any records showing she ever communicated with Defendant. Her allegations in Plaintiffs' Amended Complaint are denied. Further, and without waiver of evidentiary admissibility issues based on implementation of "remedial measures," any calls to her after September 1, 2014 were not initiated with the use of an autodialing device but rather by direct manual dialing of her number by a GMRS employee.

A report of all calls made to Ms. Armstrong is included with Defendant's amended responses to plaintiff's request for production as Exhibit B

3.    State the complete factual basis for Your claim, if any, that You obtained consent from the Plaintiff, prior to calling her telephone number, to be called at such number, including whether you possess any written record of Plaintiff's consent.

ANSWER: Defendant asserts that Plaintiffs consented to receive calls seeking political opinions on matters relevant to them as registered voters when they voluntarily provided their telephone numbers to be called as part of voter registration applications. Each Plaintiff voluntarily decided to list his/her cell number on their voter registration forms rather than some land-line number or at their option to not list any phone number at all. This assumes that Plaintiffs' allegations in the Amended Complaint are true that they were called by Defendant on their cell phones. Defendant does not have a copy of the voter registration forms submitted by Plaintiffs. It is believed these records can be produced or obtained by Plaintiffs themselves or by appropriate request to the Board of Elections or comparable governmental department in each state responsible for voter registry and maintenance of such public data. Defendant does not assert any other form of consent received by Plaintiffs before initiating the first call to them.

4.    Identify all campaigns through which You called any Persons where You obtained prior express consent from the called Persons in the same manner as You or any Person acting on Your behalf obtained prior express consent to call Plaintiff on her cellphone or using a prerecorded or artificial voice.

ANSWER: Objection: overly broad, without any time limitation, unrelated to these Plaintiffs' surveys, unduly burdensome and harassing. As each telephone survey is to some extent unique, Defendant cannot answer this interrogatory without extensive, costly

2

research as to hundreds of such surveys conducted over several years involving potentially millions of phone numbers.  Further, since there is no allegation as to any other people called for specific surveys at specific times or places other than North Carolina in March-April, 2014; or, New Hampshire in August, 2014, this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to this interrogatory as it seeks proprietary information regarding its client lists, and proprietary information as to how clients conduct non-telemarketing political surveys to collect political opinions and likely voter trends that have nothing to do with this lawsuit. Without waiver of these objections, Defendant does not have any documents that show "express consent" by anyone prior to initiating a call to them to ask if they want to participate in a political survey. To the best of Defendant's knowledge, the phone numbers of any persons called for any survey conducted were obtained from published voter registration records available at state Boards of Elections or like government agencies and the particular phone numbers listed were volunteered by the voters registering to vote.  Defendant asserts this operates as consent by the owner of the phone to which his/her published number is assigned to receive a call for political purposes at that phone number.  See response to No. 3 above.  Further, at no time did Defendant call these Plaintiffs using any artificial voice or pre-recorded device or message.  All discussions between Defendant and any person called to conduct these political surveys were by human operator-employees and not some pre-recorded messaging system.  Every call to these or any Plaintiffs for such political surveys were conducted by a GMRS employee (not a pre-recorded or artificial voice), and made to discuss political opinions at the willing, discretionary participation of each person called, not to sell any products or services of any kind, nor to solicit any donations to any political party or candidate.  If the person called, upon answering his/her phone, agrees to participate in the questionnaire, which generally takes about twenty (20) minutes, the survey is conducted.  If he/she elects not to participate and directs he or she not be called again, that person's phone number is put on an internal   "Do Not Call" list and not contacted again.  If the person is unclear as to whether he/she declines to participate in just that particular survey at that time or is requesting never to be called again, he/she is asked by the GMRS employee to clarify their wishes whether it is okay to be called again.  Additionally as of September 1, 2014  no call to a known cell number was initiated by any autodialer device.

5.    Identify every telephone number from which you made any telephone call to Plaintiff or any other Person You called in connection with the same campaign through which You called Plaintiff.

**ANSWER:  These Plaintiffs and any other persons called by Defendant for these political surveys would see the Defendant's toll free number (800) 251-5850 on any caller ID system. Defendant's telephone equipment is designed to show this phone number.  It is not believed any other phone number was used, or would have been seen by the party called.**

3

6.   Identify and describe the Dialing equipment you used to place phone calls to members of the putative class as defined the Complaint, together with all related hardware, software, coding, and databases, including their language(s), fields, and schema.

**ANSWER: Objection: proprietary; irrelevant; and not reasonably calculated to lead to the discovery of admissible evidence. Defendant does not dispute that all phone calls to voters to conduct its political surveys prior to September 1, 2014 were initiated with equipment capable of automatic dialing of stored lists of phone numbers to initiate a call. Upon any form of pick-up, an employee would speak to the party answering the call unless an answering device would be activated. After September 1, 2014 autodialer equipment was not knowingly used to initiate a call to any cell phone number.**

7.   Identify and describe every method by which You obtained the phone numbers of consumers that You called during the relevant time period on Plaintiff's campaign or any other campaign or program operated or conducted by You during the relevant period of time including obtaining phone numbers through any investigations, voter lists, consumer reports, skip-tracing, recording of Caller ID on incoming calls, purchased phone lists, websites, phone books, or any other means by which you obtained the use of such numbers prior to dialing.

**ANSWER: Objection as to any surveys other than those conducted giving rise to calls to Mr. Martin or Ms. Armstrong, as to "consumers," and, as to any "relevant time period" extending to points in time before or after those surveys in which Martin or Armstrong were called. Further, some of the time frame being claimed by this interrogatory involves time after this lawsuit was commenced and seeks information protected by attorney-client litigation privilege or rules of evidence governing inadmissibility of remedial measures. Without waiver, see above responses that all phone numbers called were obtained from public voter registration records and by no other methods stated in this interrogatory.**

8.   Identify and describe your policies and procedures, reviews, testing, quality control, or Scrubbing, other steps you have taken to ensure that the telephone numbers you cause to be dialed are subscribed to by the intended recipient of your phone calls including without limitation having a person make the first call, using a reverse lookup to identify the current subscriber to for the number, asking any third party from who You claim You obtained consent to call the intended recipient to confirm that the intended recipient is still associated with the number, or getting an indemnity from any such third party in case a mistake has been made.

**ANSWER: Objection: vague, and overly broad as to any general process questions unrelated to the political surveys for which Plaintiffs Martin and Armstrong were called for reasons set forth above. Further, this interrogatory seeks proprietary, confidential information and/or trade secrets as to internal operations, procedures, and/or methodology, none of which relevant to the Plaintiffs' claims. Defendant denies using any of the methods listed in this interrogatory as a means of obtaining a person's phone**

4

number. Without waiver, Defendant uses the lists of phone numbers from voter registration public records to compile smaller lists of phone numbers of people to be called for a particular survey based on the needed amount of calls to potential participants to generate the needed sampling size or demographics to conduct the particular political opinions questionnaire of potential voters and to assure a statistically valid number of responses, often about 600 people providing responses to a survey. The names of people being called is irrelevant. At the start of a call, however, the GMRS employee asks the person's name to be able to have a cordial interaction for the survey. Defendant refers to above responses that explain its position on consent of those called to receive a call on their published phone number for political purposes.

There is no indemnity agreement between GMRS and its clients as to the phone numbers provided or as to the method of GMRS conducting these political surveys. Defendant has not made any claim to any third party for "mistakes" or any indemnity for Plaintiffs' claims.

In all surveys Defendant has conducted and continues to conduct, each person called is asked by a live employee, not a recording, whether they would like to participate in the survey. All wrong numbers and persons who revoke consent for future calls or otherwise request not to be called again are flagged and never knowingly called again.

Defendant ceased the use of autodialer devices at the end of August, 2014 as to initiating any calls to those numbers believed to be cell phones and all such survey calls to cell users since then have been initiated by a GMRS employee manually dialing the number.

9.  State the complete factual basis for Your claim, if any, that You obtained prior consent from any consumers, who You called in connection with Plaintiff's campaign or any other program or campaign operated or conducted by You during the relevant period of time, to use an auto-dialer or any similar Dialing Equipment to call them on their cellphones or on their landlines using an artificial or pre-recorded voice, including whether you possess any written record of such consent.

**ANSWER: Objection, this interrogatory is repetitive of other above requests as to the issue of consent and therefore harassing and burdensome. Plaintiffs are not "consumers." Calls to landline phones are not regulated by the TCPA and irrelevant and not calculated to lead to discovery of admissible evidence. Additionally, Defendant does not use artificial, pre-recorded voices. Without waiver, see responses to Nos. 1, 2, 3, 4, 7 and 8 above.**

10. Identify and describe any quality control measures, Scrubbing, or maintenance that You performed to ensure that any consent You claim You obtained to call consumers was still valid as of the time when the calls were placed, including without limitation having a person make the first call, using a reverse lookup to identify the current subscriber to for the number, asking any third party from who You claim You obtained consent to call the

intended recipient to confirm that the intended recipient is still associated with the number, or getting an indemnity from any such third party.

**ANSWER: Objection as to "consumers" and the repetitive nature of this interrogatory. See responses to Nos. 1-4; and 7-9 above. Defendant does not use reverse look-up systems to conduct its surveys. Defendant does not have any indemnity agreement with any of its clients as to Plaintiffs' claims. Prior to the filing of this lawsuit and based on the absence of any telemarketing or any sale of products or services ever engaged in by GMRS in its conduct of a political opinion type questionnaires as involved in here, GMRS did not utilize so-called phone number "scrubbing" software to identify possible cell users from land-line phone users. Without waiver of objection on grounds of remedial measures taken, GMRS has since implemented scrubbing software programs offered by vendors recommended by the FCC. Defendant has been advised by these software providers, however, that even these FCC-recommended scrubber software applications do <u>not</u> assure complete ability to isolate cell phones from any general listing of phone numbers. Thus it is believed impossible to assure full compliance with the TCPA as to unintended cell phone calls, this another reason why Defendant believes this law is unconstitutional as applied to otherwise lawful questionnaires conducted by telephone.**

11.   To the extent You receive calls or other communications from consumers requesting to not receive future calls from You on their cellular telephones (or on their landlines using an artificial or pre-recorded voice) or to be placed on a Do Not Call list with regard to such calls, Identify and Describe your policies and procedures for allowing such consumers to stop future calls to their cellular telephone numbers, and Identify any disposition codes that you used to indicate in your systems that such consumers should not be called on their cellular telephones.

**ANSWER: GMRS does not call "consumers" as it does not engage in any telemarketing and does not sell or promote any products or services. Any person who asks not to be called again is flagged as "Never Call" and placed on an internal "Do Not Call" list. There is no intentional call placed to any such "Do Not Call" number or person thereafter.**

12.   Identify the number of telephone calls you placed to consumers in connection with the campaign through which You made any call to Plaintiff.

**ANSWER: Objection to use of the term "consumer" for reasons set forth above. Defendant further objects to this Interrogatory as overly broad, harassing, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence since calls to land-line phones are not part of the TCPA's scope and numerous other types of calls are not actionable under the TCPA. As to a large portion of any calls to cell phone users, or landline users for that matter, they willingly agreed to participate in the survey without any objection to having been called on their cell phone, either at the time of the first call or some later time per their request to be called back at the same number at a more convenient time. Without waiver of these objections, the lists of phone numbers used**

for each survey that involved Martin and Armstrong and statistical reports as to the total number of people called will be produced in a manner mutually agreeable as part of Defendant's amended response to Plaintiffs' Request for Production.

13.   Of the number of calls identified in response to Interrogatory No. 12, state the number of calls that were placed to consumers after the consumer requested not to be called on their cellular telephone by GMRS or to be placed on a Do Not Call list.

ANSWER: Defendant objects to the term "consumer." With this caveat, none. Defendant has not knowingly called anyone, whether called on their cell phone or a land-line phone after a specific request never to be called again.

14.   Identify the number of telephone calls you placed to Persons from whom you obtained prior express consent to call them on their cellphones or on their landline phones using an artificial or pre-recorded voice in the same manner as you used to obtain prior express consent from Plaintiff to call her on her cellphone or on her landline phone using an artificial or prerecorded voice, identifying for each such Person their name, telephone number called, dates called, and the number of calls to each such Person.

ANSWER: See above Objections and responses. This interrogatory is repetitive of multiple questions and therefore harassing and abusive. It is also vague and difficult to follow what is being requested if something other than prior requests. Without waiver, no calls were made to anyone using an artificial or pre-recorded voice message. Defendant relies on the voluntary publication by the person called of his/her phone number as part of a voter registration process to be called at that number for political purposes as a form of prior consent.

15.   *Omitted by Plaintiff.*

16.   Identify each Person, by name, telephone, and date and time called, that You called in connection with the same campaign or program through which You called Plaintiff.

ANSWER: Objection: vague, unduly burdensome and would require enormous time and resources to try to compile such a list of the names of everyone called to the extent such records exist or could be re-created. Without waiver, Defendant does not maintain records of the name of every person whose phone number is called as part of such a survey. Plaintiffs' counsel provided the phone numbers for their named Plaintiffs to assist Defendant in a data search to determine the calls made to Plaintiffs at such phone numbers. Defendant's records may have included at one time the name and call data for each person called but these records are routinely purged shortly after completion of the particular survey. Defendant will make available for inspection as mutually agreed by counsel, lists of phone numbers of registered voters in New Hampshire and North Carolina,

however, a much smaller number of people were called for any particular survey conducted in each state as was involved in the surveys for which Martin or Armstrong were called.

17.    Identify each Person by name, telephone, and date and time called, that You called where you obtained prior express consent to call the Person in the same manner by which You obtained prior express consent to call Plaintiff.

**ANSWER: Objection: harassing, abusive and repetitive of nearly all prior interrogatories as to consent. Without waiver, see prior responses.**

18.    Identify all other lawsuits pending in federal or state court, including all individual claims, counterclaims, cross-claims, third-party claims, and affirmative defenses, whether alleged on an individual or class basis, alleging the same or similar claims to those set forth in the Complaint.

**ANSWER: The Florida Walsh Complaint was the first lawsuit against Defendant. More recently, the same lead attorneys representing Walsh, Martin and Armstrong in this action, have sued Defendant in California (Zilveti) and Pennsylvania (Thompson) alleging identical claims. Defendant has filed motions to dismiss both of these new cases and has moved to vacate that part of the Court's Order in this case allowing Plaintiffs to amend their class definition as the pretext to file their California and Pennsylvania actions. There are no other lawsuits pending in any other federal or state court.**

19.    Identify all of Your calling campaigns or programs during the relevant time period, including without limitation the campaign or program through which You made any call to Plaintiff, describing for each such campaign or program: the start and end dates, the number of persons You called for each and their Identities (names, telephone numbers, and dates called), the identity of any third parties on whose behalf You made the calls or ran the campaign or program, Your methods for obtaining prior express consent to call Persons in connection with the campaign or program, and the campaign or program's geographic scope.

**ANSWER: Objection: as to what constitutes the "relevant time period," and as to any surveys other than pertaining to Martin or Armstrong or as to surveys conducted after September 1, 2014 for reasons set forth in above answers. Defendant also objects to disclosure regarding its list of clients as proprietary trade secrets. This request is also repetitive of nearly all of the above requests as to "consent." Without waiver, each of the particular surveys involving Martin and Armstrong were made on behalf of political organizations to ask opinions of consenting North Carolina or New Hampshire voters and were conducted for several days close in time to the dates either of them were called. See survey scripts and call history reports produced as part of Defendant's amended responses to Requests for Production.**

20.     Identify all of Your calling campaigns or programs during the relevant time period through which You called Persons where you obtained prior express consent to call them in the same manner as You claim You obtained prior express consent to call Plaintiff, including without limitation the campaign or program through which You made any call to Plaintiff, describing for each such campaign or program: the start and end dates, the number of persons You called for each and their Identities (names, telephone numbers, and dates called), the identity of any third parties on whose behalf You made the calls or ran the campaign or program, Your methods for obtaining prior express consent to call Persons in connection with the campaign or program, and the campaign or program's geographic scope.

**ANSWER: Objection. This Interrogatory is repetitive of multiple prior requests for the same information. See above responses. Further, Defendant asserts such request is overly broad, unduly burdensome and otherwise improper in scope and time. Defendant relies on the voluntary publication of a voter's phone number as consent to be called at that number for political purposes, if not calls generally.**

21.     Identify all third parties on whose behalf You made any calls, identifying any campaigns or programs You operated for such third parties and the terms of any agreements between You and any such third parties.

**ANSWER: Objection: This information involves proprietary, confidential trade secrets which are irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence in this case. Defendant has explained in response to Interrogatory number 8 that there was no indemnity agreement in place between GMRS and its clients such that the client had no obligation to defend or hold harmless GMRS for any claims being alleged in this lawsuit. In any event Defendant is believed obligated to maintain the confidentiality and anonymity of its clients, some of whom the media, candidates seeking election to local, state or national offices, political parties or action committees and in some instances, other pollsters needing additional staff to conduct their surveys for candidates, parties PAC's or general media. Defendant will not violate such confidentiality for fear of impairment of its credibility and usefulness with its clients. The disclosure of Defendant's clients will cause devastating financial ruin to its company in this highly competitive political pollster small industry. This interrogatory and Plaintiffs' amended complaint seeking to sue Defendant's clients for Defendant's actions is being done solely to harass Defendant and force some kind of extorted settlement of these groundless claims.**

9

GLOBAL MARKETING RESEARCH
SERVICES, INC.

By: _____
ANTHONY DIANA, President

## NOTARY CERTIFICATE

STATE OF FLORIDA

COUNTY OF BREVARD

    I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgements, personally appeared **ANTHONY DIANA**, as President of GLOBAL MARKETING RESEARCH SERVICES, INC., to me known to be the person described in and who executed the foregoing instrument and he/she acknowledged before me that he/she executed the same.

    WITNESS my hand and official seal in the County and State last aforesaid this 19th day of August, 2015.

_____
Notary Public, State of Florida

My Commission Expires: 12-12-15



Notary Public State of Florida
Patricia Cerve
My Commission EE152597
Expires 12/12/2015

Personally Known  X  or Produced Identification ____

Type of Identification Produced: _____

l:\open files\200271\pleadings\draft-gmrs amd ans to rogs-jg.docx

10

# EXHIBIT 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 6:14-cv-1290-GAP-KRS |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, And JOHN DOES 1-100, | ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) ) | |

**DEFENDANT'S AMENDED RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

Defendant, GLOBAL MARKETING RESEARCH SERVICES, INC. ("GMRS") by and

through undersigned counsel, hereby serves its amended responses to Plaintiff's First Request for

Production dated December 19, 2014, based on Plaintiffs' filing of their Amended Complaint.

**GENERAL RESPONSE:** **These amended responses are filed without waiver of Defendant's motion to vacate that portion of the order granting leave to amend the Complaint as to a change in scope of class definition purporting to carve out California and Pennsylvania. These amended responses, per agreement with Plaintiffs' counsel are filed on the premise that the original or first set of requests for production should be construed as applicable to new Plaintiffs Martin and Armstrong.**

    1.     All Documents that you referred to, reviewed, or relied up in drafting your answers to Plaintiff's First Set of Interrogatories.

    **RESPONSE: Objection: over broad and calls for attorney-client and work-product privileged information. Without waiver, see the attached:**

        **A -    Martin Call Data Report**
        **B -    Armstrong Call Data Report**
        **C -    Call Statistics for March 2014 North Carolina Surveys where Martin was called**

     **D -**    **Call Statistics for April 2014 North Carolina Surveys where Martin was called**

     **E -**    **Call Statistics for August 2014 New Hampshire Surveys where Armstrong was called**

     **F -**    **Survey Script, Study x 4041 (North Carolina)**

     **G -**    **Survey Script, Study x 4109 (North Carolina)**

     **H -**    **Survey Script, Study x 4286 (New Hampshire)**

     **I -**    **Survey Script, Study x 4345 (New Hampshire)**

     **J -**    **Survey Script, Study x 4465 (New Hampshire)**

     **K -**    **Survey Script, Study x 4609 (New Hampshire)**

     **L -**    **Survey Script, Study x 4675 (New Hampshire)**

     **M -**    **Survey Script, Study x 4685 (New Hampshire)**

**See also, Telephone Consumer Protection Act and FCC Regulations implementing the TCPA; Marketing Research Association ("MRA") website as to FCC regulations and TCPA interpretation affecting political polling surveys; Plaintiffs' Amended Complaint, related pleadings in this case and those filed in the new California Zilveti lawsuit and the new Pennsylvania Thompson lawsuit. See also Defendant's amended privilege log.**

2.    All Documents sufficient to identify the manner by which GMRS obtained the Plaintiff's phone number prior to making any call to Plaintiff.

**RESPONSE: The public lists of North Carolina and New Hampshire registered voters' phone numbers provided to Defendant from which numbers were extracted to make the survey calls will be made available for inspection at counsel's office at a mutually agreeable date and time.**

3.    All Documents sufficient to identify the manner through which GMRS obtained prior express consent to call Plaintiff's phone number prior to making any call to Plaintiff, together with any written record of such consent.

**RESPONSE: None other than published phone numbers in voter registration records at state Boards of Elections. These phone lists will be available for inspection at a mutually agreeable time and place.**

4.    All Documents sufficient to identify any request from Plaintiff not to receive future calls from GMRS.

**RESPONSE: None other than as noted on call data reports for each Plaintiff.**

5.      All audio recordings of telephone calls between GMRS and Plaintiff.

**RESPONSE:  None.**

6.      Insofar as GMRS contacted Plaintiff on behalf of any third party, all documents sufficient to identify any such third party.

**RESPONSE: Objection: proprietary, confidential business trade secret as to the identity of GMRS clients.  See amended privilege log.**

7.      Insofar as a different Person made the call(s) to Plaintiff or the putative Class(es) set forth in the Complaint, produce all documents sufficient to identify any such third party.

**RESPONSE:  None; not applicable.  All calls were made by GMRS employees.**

8.      All communications or correspondence between You and Plaintiff not covered by another Request to Produce.

**RESPONSE:  None.**

9.      Insofar as GMRS contacted Plaintiff in connection with any campaign(s) or program(s), all Documents sufficient to identify the campaign(s) or program(s), including all Documents Identifying any such campaign or program's geographic scope, start and end dates, and number of Persons called.

**RESPONSE:  See call data reports and scripts for each survey attached.**

10.     All Documents sufficient to identify any reason or reasons why you caused telephone calls to be placed to Plaintiff, including policies and procedures that explain when or why such calls were made to Plaintiff or the other Persons called in connection with the campaign or program under which you called Plaintiff.

**RESPONSE:  See survey scripts attached.  The calls to any registered voter in regard to each survey were random as selected from the list of registered voters' phone numbers in the state where the survey was being conducted.**

11.     All policies, procedures, instructions, or training materials, or related Documents, that GMRS has with respect to obtaining prior express consent to call consumers,

obtaining consumer phone numbers, honoring requests not to be called, and for Scrubbing phone numbers it receives.

**RESPONSE:  Objection: proprietary, confidential, and/or trade secret as to all internal operations, procedures, business technology and/or methodology.  Without waiver, see GMRS Policies and Training Manual previously produced.**

12.     All Documents sufficient to identify any quality control, testing, auditing, investigating, or any other step GMRS has taken to measure its compliance with the policies, procedures, instructions, or training materials identified and requested in Request to Produce Number 11 above.

**RESPONSE:  None other than Policies and Training Manual previously produced.**

13.     All Documents sufficient to identify your dialing equipment, including all associated hardware, software, database language(s), fields, and schema that You used to place any phone call to Plaintiff or any other members of the putative class.

**RESPONSE:  Objection: proprietary, trade secrets as to all phone equipment, hardware or software and GMRS technology.  This request is not reasonably calculated to lead to discovery of admissible evidence. There are no issues in this case as to any infringement or misappropriation of someone else's software code or any other issues to support the production of this proprietary information. Further, effective September 1, 2014, Defendant no longer used autodialer devices to initiate calls to cell phones.**

14.     All recordings of a pre-recorded voice used during any call You made to Plaintiff or any other Person who You called in connection with the campaign or program under which you called Plaintiff.

**RESPONSE:  None.**

15.     All Documents sufficient to Identify each method by which GMRS obtained the telephone numbers of consumers (including without limitation through any voter registration information, from any third parties, through the use of investigations, consumer reports, skip-tracing, recording of Caller ID on incoming calls, websites, phone books, or any other means by which you have obtained such numbers) prior to calling the telephone of such consumers.

**RESPONSE:  Objection as to "consumers" or as to disclosure of Defendant's client lists.  Without waiver, none.**

4

16.     All Documents sufficient to identify each method by which You obtained consent from the Persons who You called in connection with the same campaign or program under which you called Plaintiff prior to calling the telephones of such consumers, Your receipt and maintenance, if any, of any record of such consent, and any quality control You performed to ensure that purported consent was effective and valid.

**RESPONSE:   None other than voter registration lists showing whatever phone number voluntarily published by the voter-applicant which Defendant contends should operate as consent by that person to be called at that phone number for political purposes, if not for general contact.**

17.     All Documents sufficient to identify Your policies and procedures for receiving and honoring any request by any consumer to not be called at any phone number, including Your policies and procedures for maintaining any internal Do Not Call list or similar list or complying with any National or State Do Not Call List and any related training materials or instructions to third parties.

**RESPONSE:  See Training Manual previously provided.**

18.     All policies and procedures maintained by you relating to ensuring your compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

**RESPONSE: Objection.   Defendant asserts that the TCPA does not apply to its conduct of a political survey.   Without waiver, see Training Manual previously provided.**

19.     All Documents sufficient to identify any third parties, services, or entities from whom you obtained the phone number of Plaintiff or any Person you called in connection with the same campaign or program under which you called You Plaintiff, including any contracts or agreements between You and any such third party.

**RESPONSE:  Objection.  Defendant's list of clients and agreements with them are proprietary and confidential.**

20.     All Documents sufficient to identify any third parties from whom you obtained consent to call the phone number of Plaintiff or any Person you called in connection with the same campaign or program under which you called You Plaintiff, including any contracts or agreements between You and any such third party.

**RESPONSE:**   **None other than voter registration records in each state equally available to Plaintiffs.**

21.     A spreadsheet or comparable report, or all other Documents sufficient to Identify all Persons who You called in connection with the same campaign or program as the campaign under which You called Plaintiff.

**RESPONSE: Objection: unduly burdensome and would require hundreds of hours and extensive research to compile.  Defendant called thousands of people to obtain statistically valid responses for each survey conducted.  Defendant would have to search each individual phone number to determine whether or not it was called and then try to determine if possible by some means presently unknown, the name of any persons whose numbers were called.  Defendant submits that this list of the names of each person who may have been called would be extremely difficult and time-consuming to create.  Further, it is believed that Defendant's records as to these surveys that may have contained this information, to the extent names of people called existed, have been purged per usual procedure once a survey has been conducted.  Accordingly, Defendant does not have such records.**

22.     A spreadsheet or comparable report, or all other Documents sufficient to Identify all Persons from whom You obtained prior express consent to call on their cellphones or using a pre-recorded or artificial voice (and to whom You made any call to their cellphones or using a pre-recorded or artificial voice) using the same method and manner as You used to obtain prior express consent from Plaintiff and to make any call to Plaintiff's cellphone.

**RESPONSE:**   **This is repetitive of Nos. 2, 3, 11 and 16, above.  Without waiver of this objection, none.**

23.     All Documents sufficient to identify any instances where you had a live person make the first call and then switched to auto-dialed calls, used a reverse lookup to identify the current subscriber to for the number, asked any third party from who You claim You obtained consent to call the intended recipient that the intended recipient is still associated with the number, or obtained any indemnity from any such third party.

**RESPONSE:**   **Objection.   Vague, unduly burdensome and confusing.   Without waiver, none.**

24.     All Documents sufficient to identify the number of requests you have received from consumers to not be called or to be placed on any Do Not Call list with regard to their cellular telephone numbers, together with documents sufficient to

6

identify all of your disposition coding or method of recording the consumers' request to not receive future calls.

**RESPONSE:   Objection as to "consumers." Without waiver, this information is noted on the statistical reports and call data reports produced.  Other than this, no such records are kept in the ordinary course of Defendant's operations.**

25.     All audio recordings of telephone calls during which the consumer requested to be placed on a Do Not Call List or asked that GMRS refrain from making future calls to his or her cellular telephone number.

**RESPONSE:  None.**

26.     All expressions of dissatisfaction or records of complaints that you received from consumers stating that they had not provided consent to be called and/or requesting not to receive future calls from GMRS or to be placed on the Do Not Call List.

**RESPONSE:   Objection, vague and overly broad.   Without waiver, in some instances a person called has submitted a grievance with an administrative agency in their state and in turn Defendant has addressed the grievance.   Discovery is continuing as to copies of any such records.   Defendant does not maintain such records in the ordinary course of its operations.**

27.     A spreadsheet or comparable report, or all other Documents sufficient to Identify all Persons (and their telephone numbers called) who You called after the Person had requested to no longer be called by You.

**RESPONSE:  None.**

28.     All Documents that You contend factually supports Your assertion, if any, that class certification is inappropriate, improper, or otherwise unavailable to Plaintiff in this litigation.

**RESPONSE:  Objection.  Calls for counsel's mental impressions and attorney-client privileged materials.  Discovery has not yet commenced on this and other issues in the case.   Defendant will produce at the appropriate time such non-privileged documents when available.**

29.     All Documents sufficient to identify all other lawsuits pending in federal or state court, including all individual claims, counterclaims, cross-claims, third-party

7

claims, and affirmative defenses, whether alleged on an individual or class basis, alleging the same or similar claims to those set forth in the Complaint.

**RESPONSE:   None other than this action and the two new lawsuits filed by Plaintiffs' counsel in California and Pennsylvania.**

30.    The statements, sworn and unsworn, of any witnesses that you intend to offer into evidence in this case.

**RESPONSE:  Objection.  This calls for attorney-client and work product litigation privileged records.   Without waiver, counsel has not made any such determination but if any such statements are obtained and intended for use at trial, they will be produced.**

31.    A copy of any subpoena, notice, or claim you cause to be filed or served in connection with this litigation together with the complete response of the subpoenaed party.

**RESPONSE: None at this time.**

32.    A copy of any insurance policies held by the Defendant that could apply or cover to the claims at issue in the Complaint.

**RESPONSE: See Old Dominion Insurance Company policies previously produced. These policies have exclusions which may negate any coverage for these claims. Defendant's last Old Dominion policy expired/non-renewed on January 31, 2015. Defendant's Scottsdale  policy issued effective January 31, 2015 has an exclusion precluding any coverage for claimed violations of the TCPA or like claims.**

33.    A copy of all Documents filed in connection with any proceeding(s) seeking insurance coverage under any policy of insurance related to the claims alleged in this lawsuit.

**RESPONSE:  None.  There is no known insurance coverage proceeding.**

34.    All communications and correspondence between You and each Person You Identify in Your Rule 2(a)(1) disclosures served in this case as having or potentially having relevant evidence or information regarding the TCPA or this lawsuit.

**RESPONSE**:  **Objection: attorney-client and/or work-product privilege.  Without waiver, none.**

35.      All contracts, communications and correspondence between You and each Person You hired or retained to handle any of Your customer service, Scrubbing, or Do Not Call requests.

**RESPONSE**:  **Objection: proprietary, confidential, and/or trade secret as to all internal operations, procedures, technology and/or methodology.  Without waiver, no such documents exist as to any third party hired to handle Defendant's customer service or Do Not Call requests.  Further, to the extent Defendant acquired "scrubbing" software after the filing of this lawsuit this request calls for records showing inadmissible remedial measures.  Without waiver, such scrubbing software applications and invoicing for their purchase will be made available for inspection subject to appropriate confidentiality stipulation.**

36.      All Documents sufficient to Identify all campaigns or programs not Identified in response to Request No. 9 above, that You operated or conducted during the relevant period of time where You obtained prior express consent to call any of the Persons called through any such campaign or program in the same manner as You claim You obtained prior express consent to call the Plaintiff.

**RESPONSE: Objection: irrelevant, over broad, and unduly burdensome.  Without waiver, in all instances of any call to anyone for the purpose of participating in political opinion surveys, the only form of consent was the voter's publication of his/her phone number to be called for such political purposes on voter registration records.  There are no other consent records.**

Dated: August  18 , 2015.

                              GLOBAL MARKETING RESEARCH
                              SERVICES, INC., Defendant,

                              By:    s/ Steven G. Schwartz
                                    Steven G. Schwartz, Esquire
                                    Florida Bar No. 911471
                                    Schwartz Law Group
                                    6751 N. Federal Highway, #400
                                    Boca Raton, Florida  33487
                                    Ph: (561) 395-4747
                                    Fx: (561) 367-1550
                                    Email:  sgs@theschwartzlawgroup.com
                                    Email:  cml@theschwartzlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on August  18 , 2015, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF and/or via U.S. Mail.

By:    s/ Steven G. Schwartz_____
               Steven G. Schwartz, Esq.

## SERVICE LIST

**_Counsel for Plaintiffs_**

Stefan L. Coleman, Esq.
Law Offices of Stefan Coleman, PLLC
201 S. Biscayne Blvd., Floor 28
Miami, Florida 33131-4309
Ph:  (877) 333-9427
Fx:  (888) 498-9846
Email:  law@stefancoleman.com

**_Pro Hac Vice Counsel for Plaintiffs_**

Steven L. Woodrow, Esq.
Patrick H. Peluso, Esq.
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Ph:  (720) 213-0675
Email:  swoodrow@woodrowpeluso.com
Email:  ppeluso@woodrowpeluso.com

l:\open files\200271\pleadings\gmrs amended resp to plts 1st rfp-jg.docx

# EXHIBIT 3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 6:14-cv-1290-GAP-KRS |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, And JOHN DOES 1-100, | ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) ) | |

## DEFENDANT'S AMENDED PRIVILEGE LOG

Defendant, Global Marketing Research Services, Inc., by and through undersigned counsel, hereby serves the attached Amended Privilege Log for those documents asserted as objectionable in response to Plaintiff's First Request for Production, per Plaintiffs' Amended Complaint filed herein on or about June 25, 2015, changing the named Plaintiffs and other changes in purported scope of this action.

Dated: August  18 , 2015.

GLOBAL MARKETING RESEARCH
SERVICES, INC., Defendant,

By: ___ s/ Steven G. Schwartz_____
  Steven G. Schwartz, Esquire
  Florida Bar No. 911471
  Schwartz Law Group
  6751 N. Federal Highway, #400
  Boca Raton, Florida  33487
  Ph: (561) 395-4747
  Fx: (561) 367-1550

1

Email:  sgs@theschwartzlawgroup.com
Email:  cml@theschwartzlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on August __18__, 2015, I electronically filed the foregoing with the

Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this

day to all counsel of record identified on the attached service list in the manner specified, either

via transmission of Notices of Electronic filing generated by CM/ECF and/or via U.S. Mail.

By: ___s/ Steven G. Schwartz_____
        Steven G. Schwartz, Esq.

## SERVICE LIST

*Counsel for Plaintiffs*

Stefan L. Coleman, Esq.
Law Offices of Stefan Coleman, PLLC
201 S. Biscayne Blvd., Floor 28
Miami, Florida 33131-4309
Ph:  (877) 333-9427
Fx:  (888) 498-9846
Email:  law@stefancoleman.com

*Pro Hac Vice Counsel for Plaintiffs*

Steven L. Woodrow, Esq.
Patrick H. Peluso, Esq.
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Ph:  (720) 213-0675
Email:  swoodrow@woodrowpeluso.com
Email:  ppeluso@woodrowpeluso.com

l:\open files\200271\pleadings\gmrs' amended privilege log - snt.docx

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GLOBAL MARKETING RESEARCH SERVICES, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 6:14-cv-1290-ORL-31KRS<br>)<br>)  CLASS ACTION<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S PRIVILEGE LOG TO AMENDED RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION**

| Provider(s) of the Information or Author(s) of the Document | Date Information was Learned or Document was Prepared | Recipient of the Information or Document | Date Information or Document was Sent | Title and/or Description of Information or Document | Subject Matter | Purpose | Basis of Privilege |
|---|---|---|---|---|---|---|---|
| GMRS President or employees or counsel | August 11, 2014 - Present | GMRS or counsel | August 11, 2014 - Present | Emails / other communication memos and records/reports exchanged between GMRS and its counsel James Fallace, | Litigation defense | Litigation strategies | Attorney-client |

4

| Provider(s) of the Information or Author(s) of the Document | Date Information was Learned or Document was Prepared | Recipient of the Information or Document | Date Information or Document was Sent | Title and/or Description of Information or Document | Subject Matter | Purpose | Basis of Privilege |
|---|---|---|---|---|---|---|---|
| | | | | Esq., (Fallace Larkin law firm) and/or Steven G. Schwartz, Esq., (Schwartz Law Group) | | | |
| GMRS President and employees | August 2014 - Present | Counsel | Numerous dates | Call statistics and data for various surveys conducted from 2011 to present | Statistics of surveys conducted | Litigation strategies | Proprietary; Attorney-client |
| GMRS and its clients | January 2011 - Present | GMRS and its clients | Various dates | Contracts or agreements, invoicing, and emails between GMRS and its clients | Client Contracts, requests for political polling | Services related to conducting political surveys | Proprietary; trade secrets; client confidentiality |
| GMRS employees, officers | Fall 2014 after suit was filed | Counsel and internal | Fall 2014 after suit was filed | Backup file (preserved by third-party vendor) | Electronic data | Back-up file for possible use in litigation | Attorney-client communica-tion; work-product; proprietary |
| GMRS clients' names redacted from the survey scripts and call data reports | See each survey script produced | GMRS | 2014 – 2015 various dates | Survey "Scripts" | Survey questions to use in polling calls | Used to make political survey calls | Proprietary; trade secrets clients' names redacted |

| Provider(s) of the Information or Author(s) of the Document | Date Information was Learned or Document was Prepared | Recipient of the Information or Document | Date Information or Document was Sent | Title and/or Description of Information or Document | Subject Matter | Purpose | Basis of Privilege |
|---|---|---|---|---|---|---|---|
| Lists of phone numbers of registered voters from Boards of Elections (various states and U.S. territories) provided by GMRS clients | January 2011 - present | GMRS | January 2011 - Present | Phone lists of voters | Phone lists | Used to compile lists of people to call for political surveys | Overly broad; burdensome harassing; millions of numbers listed; proprietary. The lists of numbers used to call the named Plaintiffs will be produced |

L:\OPEN FILES\200271\Pleadings\GMRS' Amended Privilege Log - snt.docx

6

# EXHIBIT 4

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| MELANIE WALSH, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:14-cv-1290-GAP-KRS |
| v. | ) ) | CLASS ACTION |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, and ANTHONY DIANA, individually, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT'S RULE 26(a)(1) INITIAL DISCLOSURES

Defendant Global Marketing Research Services, Inc. ("Global Marketing"), by and through undersigned counsel, and for its Rule 26(a)(1) initial disclosures, states as follows:

(i)    The name and, if known, address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:

    a.    Anthony Diana, President
            Global Marketing Research Services, Inc.
            c/o Defense Counsel

            Mr. Diana is expected to testify that Global Marketing did not violate any statutes governing telephone calls; that individuals called had provided believed prior consent and those who revoked consent were not called thereafter; that the laws on which Plaintiff's action is based are unconstitutional as applied to Defendant because potential class members' telephone numbers were not identifiable as cell phone numbers due to such phone numbers having originally been assigned to landline phones and thereafter ported to a cell phone; that all calls by Global Marketing were not conducted to sell any products but rather to gather information of a political nature or general opinions as part of a questionnaire.

Mr. Diana will also provide information about the technology and methodology used by Global Marketing for its services.

b.     Melanie Walsh
c/o Plaintiff's Counsel

Ms. Walsh is expected to testify as to her publishing her cell phone number to the voter registry and as to her interaction with Defendant.

c.     Other members of Plaintiff's class to be identified in discovery testimony expected as to any interaction with Defendant and other issues material to any allegations in Plaintiff's Complaint.

d.     Person(s) with knowledge of the project at issue
Civitas Institute
100 S Harrington St
Raleigh, NC 27603
(919) 834-2099

Such witnesses likely have information about telephone numbers provided to Defendant for this contact with Plaintiff; prior consent provided for such phone numbers to be called; and how the subject calls were not intended to sell products but rather to gather information of a political nature.

e.     Representatives from cell phone providers

Said representatives are likely to have knowledge and records as to cell phone and landline customers as well as the time, frequency, and duration of any calls received.

f.     Hon. Larry Lee Pressler, Former U.S. Senator

Mr. Pressler sponsored the Senate version of the legislation at issue. He likely has information regarding the history and intent of the telephone protection law at issue.

2

g.      Hon. Kent Conrad, Former U.S. Senator

Mr. Conrad co-sponsored the Senate version of the legislation at issue. He likely has information regarding the history and intent of the telephone protection law at issue.


h.      Hon. Robert C. Smith, Former U.S. Senator

Mr. Smith co-sponsored the Senate version of the legislation at issue.  He likely has information regarding the history and intent of the telephone protection law at issue.


i.      Hon. Edward John Markey, U.S. House of Representatives

Congressman Mackey sponsored the House version of the legislation at issue. He likely has information regarding the history and intent of the telephone protection law at issue.


j.      Hon. James H. S. Cooper, U.S. House of Representatives

Congressman Cooper co-sponsored the House version of the legislation at issue.  He likely has information regarding the history and intent of the telephone protection law at issue.


k.      Hon. Thomas Dale DeLay, Former U.S. Representative

Mr. DeLay co-sponsored the House version of the legislation at issue.  He likely has information regarding the history and intent of the telephone protection law at issue.


l.      Hon. Charles Ellis Schumer, U.S. House of Representatives

Congressman Schumer co-sponsored the House version of the legislation at issue.  He likely has information regarding the history and intent of the telephone protection law at issue.

m.      Hon. Benjamin Louis Cardin, U.S. House of Representatives

Congressman Cardin co-sponsored the House version of the legislation at issue.  He likely has information regarding the history and intent of the telephone protection law at issue.

3

n.      Staffers of government officials who co-sponsored the legislation at issue.

Current and/or former staffers of government officials who sponsored or co-sponsored the legislation at issue are likely to have information regarding the history and intent of the telephone protection law at issue.

o.      Alfred C. Sikes, Former Chairman, Federal Communications Commission

Mr. Sikes led the Federal Communications Commission (FCC) from 1989-1993 during which time the legislation at issue became law. He is likely to have information regarding the history and intent of the telephone protection law at issue.

p.      Tom Wheeler, Current Chairman, Federal Communications Commission

Mr. Wheeler likely has information regarding the history and intent of the telephone protection law at issue.

q.      Other current or former Board Members or Chairpersons of the FCC

Current and/or former FCC officials who were in any way involved with the legislation at issue are likely to have information regarding the history and intent of the telephone protection law at issue.

r.      Kim Westbrook Strach, Executive Director
        North Carolina State Board of Elections
        PO Box 27255, Raleigh, NC 27611-7255

Ms. Strach likely has information regarding the North Carolina State Board of Elections voter registration forms, processes, and information as well as Ms. Walsh's cell phone number having been provided for public contact thereby consenting to her being called by Defendant.

s.      Persons with most knowledge of scrubbing software/services
        Interactive Marketing Solutions
        777 Summer Street, Suite 502
        Stamford, CT 06901

Such persons likely have information regarding computer software applications intended to provide scrubbing services and the effectiveness of such services for detecting cell phone numbers from a list of numbers.

4

      t.      Persons with most knowledge of TCPA Compliance software/services
Neustar, Inc.
21575 Ridgetop Circle
Sterling, VA 20166

Such persons likely have information regarding computer software applications intended to provide scrubbing services and the effectiveness of such services for detecting cell phone numbers from a list of numbers.

Defendant reserves the right to supplement this response as discovery is ongoing.

(ii)     A copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment:

- Data provided by client to conduct this survey;
- Data concerning calls made by Global Marketing relevant to this lawsuit;
- Legislative history of statutes in question - scrubbing software records.

Defendant reserves the right to supplement this response as discovery is ongoing.

(iii)    A computation or each category of damages claimed by this disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered:

Defendant is not the moving party seeking damages in this action. To the extent it can be shown that Plaintiff and its counsel have made knowingly unsupportable or false claims in violation of Rule 11, F.R.C.P., Defendant may have claims for attorneys' fees and costs incurred in defense of such claims and any other sanctions the Court may impose.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:

A copy of Old Dominion Insurance Company Policy Number BPG7130E is attached hereto as **Exhibit A**.   There are no other known policies that would be responsive to these claims.

Dated: December _12_ , 2014.

GLOBAL MARKETING RESEARCH
SERVICES, INC., Defendant

By: _____
Steven G. Schwartz, Esquire
Florida Bar No. 911471
Schwartz Law Group
6751 N. Federal Highway, #400
Boca Raton, Florida 33487
Ph: (561) 395-4747
Fx: (561) 367-1550
Email: sgs@theschwartzlawgroup.com
Email: cml@theschwartzlawgroup.com

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to the party listed below by ____ U.S. Mail; _X_ Email; ____ Overnight Mail; ____ Facsimile; ____ Hand delivery; on this _12_ day of December, 2014.

_____
Steven G. Schwartz, Esquire

## SERVICE LIST

**Counsel for Plaintiff, Melanie Walsh**
Stefan L. Coleman, Esq.
Law Offices of Stefan Coleman, PLLC
201 S. Biscayne Blvd., Floor 28
Miami, Florida 33131-4309
Ph: (877) 333-9427
Fx: (888) 498-9846
Email: law@stefancoleman.com