## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, | Case No. 6:14-cv-1290-ORL-31-KRS |
| *Plaintiffs*, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, and JOHN DOES 1-100, | |
| *Defendants*. | |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiffs Robert Martin, Kristin Armstrong, Nicole Zilveti, and Alicia Thompson, by and through their undersigned counsel, in accordance with Federal Rule of Civil Procedure 23, respectfully move this Court for an order: (1) granting preliminary approval to a class action Settlement Agreement[1] reached in this matter (*see* "Settlement Agreement," a true and accurate copy of which is attached hereto as Ex. A), (2) conditionally certifying the settlement class, authorizing notice to be sent to the members of the class pursuant to the plan detailed herein, (3) appointing class counsel and the class representatives, (4) entering a schedule of dates for Settlement Class Members to object, request exclusion, and file claims, and (5) scheduling a final approval hearing.

The Settlement Agreement—which is the product of extensive negotiations overseen by a nationally respected mediator—provides substantial relief to Settlement Class Members and falls well within the range of final approval.

---

[1] Unless otherwise specified, capitalized terms have the same meanings as those set forth in the Definitions section of the Settlement Agreement. *See* Ex. A.

As such, and in support, the Plaintiffs submit the incorporated memorandum of law, stating as follows:

## RELIEF REQUESTED

Grant preliminary approval of the Parties' class action Settlement Agreement (*see* Ex. A), conditionally certify the Settlement Class, authorize notice to be sent to the members of the class pursuant to the plan detailed herein, appoint class counsel and the class representatives, enter a schedule of dates for Settlement Class Members to object, request exclusion, and file claims, and schedule a final approval hearing for the Court to consider the overall fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

## STATEMENT OF THE BASIS FOR RELIEF REQUESTED

1.      The Parties, with the help of nationally respected mediator Rodney Max, have reached a class action settlement agreement that, if finally approved, would resolve the claims at issue in this case on terms highly favorable to Settlement Class Members.

2.      This is a lawsuit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* Plaintiffs allege that Defendant Global Marketing Research Services, Inc. ("GMRS") made unlawful cellphone calls when GMRS conducted its political surveys.

3.      The Parties have reached a strong settlement that provides a fund of up to $10,000,000 USD for the payment of claims to over 688,500 Settlement Class Members (who may, through the submission of a simple claim form, receive a payment of up to $15). The Settlement also provides prospective relief—including allowing Settlement Class Members to check a box to ensure that GMRS never calls them again (even using a live operator)—and requires GMRS to pay the notice and administrative costs, class member incentive awards, and reasonable attorneys' fees to proposed Class Counsel (to be decided by the Court).

4.      As explained below, the case and the Settlement Agreement readily meet each of the considerations courts analyze when determining whether to grant approval to a class action settlement. Preliminary approval is warranted here because the Class, for settlement purposes only, satisfies the requirements of class certification, and the relief obtained through the Settlement Agreement falls within the range of what the Court may ultimately conclude is fair, reasonable, and adequate relief given the nature and complexity of the case and the ability of the Defendant to finance a resolution.

5.      As such, for all the reasons set forth herein, the Court should grant preliminary approval to the attached Settlement Agreement, conditionally certify the Settlement Class, authorize notice to be sent to the members of the class consistent with the plan detailed herein, appoint Class Counsel and the Class Representatives, enter a schedule of dates for Settlement Class Members to object, request exclusion, and file claims, and schedule a final approval hearing for the Court to consider the overall fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

## MEMORANDUM OF LAW

## I.      INTRODUCTION

This proposed class action settlement resolves claims challenging Defendant's alleged practice of making cellular telephone calls to consumers using an automatic telephone dialing system without prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). That is, named Plaintiffs Martin and Armstrong and the named Plaintiffs in two similar class actions against GMRS[2] filed alleged class actions asserting that

---

[2] The two similar actions are *Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW (N.D. Cal.) (California-only class), and *Thompson v. Global Marketing Research Services,*

Defendant's political survey calls were made without prior express consent (which violates the TCPA) and that, therefore, Plaintiffs and similarly-situated consumers are entitled to statutory damages.

During the course of this litigation, counsel for GMRS, a Florida corporation, initiated a dialogue with Class Counsel that ultimately led to three (3) formal in-person full day mediation sessions in Florida overseen by nationally-respected mediator Rodney Max, countless telephone conferences and emails, and an incredibly strong Settlement Agreement that provides meaningful relief to the Class. (*See* Exhibit A). Indeed, the Settlement Agreement provides the Settlement Class members—which consists of approximately 688,500 cellphone users—the ability to file claims for cash payments of $15 from a settlement fund not to exceed ten million dollars ($10,000,000 USD). (*See* Ex. A., § 1.2.). Additionally, GMRS has also agreed to commit to taking proactive steps to ensure its compliance with the TCPA going forward. The Settlement Agreement also allows Settlement Class Members to check a box ensuring that they will not receive GMRS's calls in the future—even live operated calls.

As such, and as set forth more fully below, Plaintiffs move the Court to preliminarily approve the instant settlement, certify the settlement class, appoint Steven Woodrow and Patrick Peluso of Woodrow & Peluso, LLC and Stefan Coleman of the Law Offices of Stefan Coleman, LLC as Class Counsel, appoint named Plaintiffs Martin, Armstrong, Zilveti, and Thompson as Class Representatives, order notice as set forth in the Settlement Agreement (see Ex. A), and enter a schedule of events leading to a final approval hearing (the "Final Approval Hearing") as provided in Section VIII of this brief.

---

*Inc.*, previously case no. 2:15-cv-03576-AB. (E.D. Pa.) and re-assigned following transfer to the Middle District of Florida as case no. 6:16-cv-306-Orl-31DAB (the "*Thompson*" case) (Pennsylvania-only Class).

## II.     NATURE OF THE LITIGATION

### A.     GMRS's Political Survey Calls to the named Plaintiffs and Settlement Class Members.

This litigation challenges GMRS's political survey calls, which it makes using an automatic telephone dialing system. (Amd. Compl. ¶ 2 (Dkt. 48.)). The problem for GMRS is that in conducting its surveys it apparently neglected to appropriately filter out cellphone numbers from residential landline numbers. While similar calls to residential landline phone numbers are lawful and may be made without any type of consent, such calls to cellphones violate the TCPA unless the caller first obtained "prior express consent" from the called party to make the call using an autodialer. *See* 42 U.S.C. § 227, *et seq*. Plaintiffs allege that GMRS, which obtained the phone numbers it called from third-party clients, had no such consent. GMRS claims that Plaintiffs and other cellphone users consented to be called when they registered to vote. GMRS placed calls to over 688,500 cellphone users from 2010 through December 2014 (when it began, following the initiation of this lawsuit, segregating its list to avoid calling cellphone numbers).[3]

The original named Plaintiff, Melanie Walsh, received GMRS's survey calls on her cellphone and filed the initial complaint on August 11, 2014. (Dkt. 1.) She alleged that such calls violated the TCPA on behalf of a nationwide class.

---

[3] A judgment in the class's favor against GMRS would at a minimum equal $344,250,000, which represents an award of $500 in statutory damages for <u>one</u> call for each of the 688,500 class members. Where willfulness is found the TCPA calls for trebled damages, and GMRS made multiple calls to each person. As such, damages following a trial in this case could exceed one billion dollars. GMRS's inability to pay such an award—though arguably obvious—was confirmed through formal and informal discovery. (Woodrow Decl. ¶ 30.)

**B.      Early Litigation and the Parties' First Mediation.**

The Parties engaged in early motion practice and formal written discovery. (See Declaration of Attorney S. Woodrow in support of Preliminary Approval, ("Woodrow Decl."), a true and accurate copy of which is attached hereto as Ex. B, ¶ 4.) During a meet and confer on February 12, 2015 the Parties, in addition to discussing the discovery responses, also discussed the potential for settlement. (Woodrow Decl. ¶ 6.) The Parties thereafter agreed—in accordance with the Court's Order referring the case to mediation (dkt. 29)—to participate in a private mediation. (*Id*.) As such, the Parties attempted to reach a settlement via a full-day, in-person mediation session held April 22, 2015 in Boca Raton, Florida. (*Id*. ¶ 7.) Although the Parties were unable to reach an agreement on a settlement framework or the relief to be made available to the Class, the Parties learned important information regarding each side's evaluation of the litigation and the key questions pending in the litigation that needed to be resolved. (*Id*. ¶¶ 7-8.) On May 26, 2015, the mediator, Mr. Max, filed a notice declaring an impasse. (Dkt. 42.)

**C.      The Return to Litigation**

In the weeks following the declaration of an impasse at the mediation, the original named plaintiff (Ms. Walsh) confirmed that she could not commit the time necessary to represent the class—including traveling to Florida to be deposed. (Woodrow Decl. ¶ 9.) Plaintiffs' counsel filed a Motion for Leave to Amend on June 9, 2015 to remove Ms. Walsh and to substitute in Mr. Martin and Ms. Armstrong as class representatives. (Dkt. 45.) On June 25, 2015, the Court granted Plaintiffs' Motion for Leave to Amend, adding in named Plaintiffs Martin and Armstrong and removing Ms. Walsh. (Dkt. 47.) The Amended Complaint also refined the class definition to exclude cellphone users in California and Pennsylvania. (Dkt. 48.)

On June 4, 2015, a different cellphone user, Nicole Zilveti, filed a case against GMRS in the Northern District of California styled *Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW.[4] (Woodrow Decl. ¶ 11.) The *Zilveti* case seeks to represent a Class of California cellphone users called by GMRS. (*Id.*) Likewise, on June 25, 2015, another consumer, Alicia Thompson, filed a case in the Eastern District of Pennsylvania against GMRS styled *Thompson v. Global Marketing Research Services, Inc.*, 2:15-cv-03576-AB, seeking certification of a Pennsylvania-only Class. (*Id.* ¶ 12.) GMRS filed a motion to dismiss or transfer in the *Thompson* case on July 31, 2015, which was granted on January 20, 2016 and re-assigned as case no. 6:16-cv-306-Orl-31DAB following transfer to the Middle District of Florida. (*Id.*)

Each of the named Plaintiffs alleged essentially the same thing: that GMRS's political calls to their cellphones were made without prior express consent in violation of the TCPA. (*Id.* ¶ 13.) As demonstrated by the dockets in all three cases, the litigation to date has been rather extensive. (*Id.*) Since the Florida Action was filed, GMRS and the named Plaintiffs have engaged in written discovery (including exchanging answers to interrogatories, requests to produce, requests for admission, and initial disclosures) and have also exchanged information through informal discovery as well. (*Id.*)

The Parties have also engaged in significant motion practice. (*Id.* ¶ 14.) Indeed, in the Florida Action alone the Parties have litigated, among other filings, a motion to dismiss (dkt. 16), two motions to compel further answers to discovery (dkts. 49, 64), GMRS's motion for a protective order (dkt. 66), GMRS's Motion to Reconsider the Court's granting of Plaintiff's

---

[4] On July 22, 2015, GMRS moved to dismiss or transfer the *Zilveti* case to this Court, which was denied on February 16, 2016. (*Zilveti* Action, Dkt. 45.) The Parties intend to request a stay from the *Zilveti* court while this Court considers whether to approve the instant Settlement Agreement.

Motion for Leave to File an Amended Complaint and for Sanctions (dkt. 66), a motion for

Sanctions against GMRS (dkt. 61), a Motion for Oral Argument (dkt. 67) and Reconsideration of

the Court's Order denying oral argument, (dkt. 81) and a motion to reconsider the Court's denial

of the Parties' joint motion for an enlargement of time (dkt. 90). (*Id*. ¶ 14.) In the *Zilveti* and

*Thompson* actions, the Parties fully briefed GMRS's motions to dismiss or transfer. (*Id*. ¶ 15.)

Such discovery and briefing is of course in addition to the hundreds of emails exchanged and

teleconferences between counsel for the Parties and the Department of Justice (related to its

intervention in the case). In short, in addition to the Parties' settlement negotiations (discussed

below) the Parties have vigorously litigated the case. (*Id*. ¶¶ 14-16.)

> **D.   The Court Grants Plaintiffs' Second Motion to Compel and the Parties
>        Return to Mediation.**

Ultimately, Plaintiff filed a Second Motion to Compel further answers to discovery and,

in October 2015, the Court entered Orders Denying GMRS's request for a protective order and

granting in large part Plaintiffs' Second Motion to Compel. (*Id*. ¶ 17.) On October 13, 2015,

GMRS's counsel reached out regarding the possibility of resuming the mediation process, and

Plaintiffs' counsel flew to Orlando a week later to engage in a second full-day mediation session

with Rodney Max on October 20, 2015. (*Id*. ¶ 19.) Although the Parties didn't settle that day

either, significant progress was finally made such that it made sense to seriously continue

pursuing the negotiations. (*Id*.)

Over the course of the several months that followed the second mediation session,

counsel for the Parties continued to negotiate (with the persistent help and oversight of the

mediator) the terms of the relief to be made available to the Settlement Class Members and the

Settlement Agreement's other essential terms. (*Id*. ¶ 20.)

**E.      GMRS Discovers Additional Potential Insurance Coverage and the Parties Return for a Third Full-Day Mediation Session.**

Throughout the negotiations, it was understood based on representations made by GMRS that GMRS had insurance coverage for claims arising from cell calls made in the years 2012 through 2014 as provided by Old Dominion Insurance Company ("Old Dominion"), but that GMRS lacked such insurance for calls made in the years 2010-2011. (*Id*. ¶ 22.) In early January 2016, however, GMRS's counsel alerted Plaintiffs' Counsel to the fact that GMRS potentially had additional insurance coverage for those two years (2010 and 2011) under policies that had been issued by Mapfre Insurance Company of Florida ("Mapfre"). (*Id*. ¶ 23.) The Parties jointly requested additional time from the Florida Court to continue their negotiations to seek to include Mapfre in the discussions. (*Id*.) This Court entered an Order granting this request on January 11, 2016 (dkt. 94), and the Parties reconvened on February 3, 2016 for a third full-day mediation session in Boca Raton, Florida. (*Id*.) At this <u>third</u> session, Mapfre indicated that it was declining coverage for the 2010 and 2011 years, and Plaintiff and GMRS decided to continue to pursue their negotiations. (*Id*. ¶ 26.)

In the end, counsel for the Parties were able to reach an agreement with respect to the framework of the proposed settlement and the relief to be made available to the Settlement Class. (*Id*. ¶ 28.) Once an agreement in principle was reached with respect to the relief to be afforded to the Settlement Class, the Parties negotiated Incentive Awards for the Class Representatives and attempted to negotiate the issue of reasonable attorneys' fees for Class Counsel, which the Parties were unable to resolve but have agreed to leave the amount of reasonable attorneys' fees to be decided by a binding Order from the Court. (*Id*. ¶ 29.)

**F.      GMRS's Position**

At all times, GMRS has denied and continues to deny any wrongdoing whatsoever or that

it committed any of the wrongful acts or violations of law that are alleged in the pleadings in this case or the *Zilveti* or *Thompson* actions and contends that it has acted properly at all times. (*Id.* ¶ 31.) GMRS also denies that either the named Plaintiffs or the proposed settlement class are entitled to any form of damages as a result of the conduct alleged in the pleadings. (*Id.*) GMRS further made clear that it was prepared to vigorously oppose all claims and class certification and that it believes it has meritorious defenses to such claims. (*Id.*)

A summary of the key terms and conditions of the Settlement Agreement follows.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

**A.    *Class Definition.*** The settlement class is defined as follows:

All Persons in the United States or its territories who received a call successfully placed by or on behalf of GMRS to that Person's cellular telephone, through the use by GMRS of an ATDS, at any time from August 11, 2010 through December 31, 2014, consisting of approximately 688,650 Persons where the Person upon answering such call either: (a) participated in a GMRS survey, (b) declined to participate at the time of the first such call without objection to be called back at a later time, or, (c) upon answering such call directed never to be called by GMRS again.

(Settlement Agreement § 1.9). The Settlement Class includes, but is not limited to, those Persons whose telephone numbers and other identifying information appears on the Class List. (*Id.*) The Class List refers to a list of cellular telephone numbers and Persons identified by GMRS as part of the Settlement Class. GMRS will use reasonable efforts to compile the Class List by searching its records for identifying information to match up against other records it has regarding the phone numbers it called. (Settlement Agreement § 1.9).

**B.    *Individual Class Member Benefits.***

**1.    Cash Payments.** Class Members will have until the Claims Deadline— which will follow the Final Approval Hearing so as to maximize the time Settlement Class

10

Members have to submit claims—to sign and return a simple Claim Form entitling the

Settlement Class Member to a cash benefit. The amount of each claim, if approved, is fifteen

dollars ($15.00 USD) to each Class Member. (Settlement Agreement § 2.1.) Though highly

unlikely, the amount of the claims may be reduced due to the following possible *pro rata*

reduction: if the total amount required to pay fifteen dollars ($15.00 USD) for each Approved

Claim would exceed the net amount remaining available for such payments from the Settlement

Fund (which totals $10,000,000) after payment of: (1) Defendant's portion of the Settlement

Administration Expenses, (2) the Incentive Awards to the Class Representatives, (3) and the Fee

Award, then each Settlement Class Member with an Approved Claim shall receive a *pro rata*

reduced amount for such Person's Approved Claim as determined by the remaining net balance

of the Settlement Fund after payment of such amounts for Expenses, Incentive Awards, and the

Fee Award. Given that the total amount of the fund is $10,000,000, it is almost certain that even

with an exceptional claims rate, sufficient funds will be available to play every claimant $15.[5]

   **2.**  **Prospective Business Assurances.** In addition to securing cash relief for

the Class, the Settlement Agreement also requires GMRS to take affirmative steps to ensure that

it will comply with the TCPA going forward. (Settlement Agreement § 2.2.) That is, GMRS has

agreed to institute certain best practices on or before the Effective Date and to maintain such

practices for a period of eighteen months (18) months from the Effective Date. These steps

include commitments by GMRS: (1) to refrain from making calls to cellular phones using an

---

[5] The Court is well-versed in claims rates in consumer class actions. Even assuming a 5% claims rate, that would equate to 34,425 claims, which at $15 per claim equals $516,375. As the Settlement Fund is up to $10,000,000, there is more than sufficient funds to cover the claims, the costs of Notice and administration (which may exceed $400,000), the Class Representative Incentive Awards ($5,000 each), and proposed Class Counsel's award of reasonable attorneys' fees, which under the Settlement Agreement is to be determined by the Court.

ATDS unless the call recipients have given prior express consent to receive such calls, and (2) to use its best efforts to identify cellular telephone numbers from residential landline telephone numbers prior to calling such cellular telephone numbers by means other than an ATDS. (*Id.*)

**3.     Class Member List Removal Requests.** As an additional benefit, the Claim Form will provide each Settlement Class Member with an opportunity to expressly remove his or her cell phone number from any list or database of numbers that GMRS may have in its possession to which phone calls could be made. This will ensure that the Settlement Class Member is able to stop GMRS's calls now and in the future. (Settlement Agreement § 2.3.)

**C.     Payment of Notice and Administrative Fees.** GMRS and/or its Insurer will pay (in accordance with any agreement between them regarding the sharing of such costs) for the cost of sending the Settlement Class notice and any other notice as required by the Court as well as all costs of administration of the Settlement Agreement out of the Settlement Fund. (Settlement Agreement § 4.6.) Such Notice includes direct mail notice to approximately 688,500 individuals, with supplemental internet publication notice for the years 2010 and 2011. (Settlement Agreement § 4.2(b) and (c).) The notice also features a Settlement Website that will include the traditional "long form" notice in addition to key documents and a feature that allows Claim Forms to be downloaded or submitted online. (Settlement Agreement § 4.2(d).)

**D.     Compensation for the Class Representatives:** In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, the Class Representatives in this matter shall, subject to the Court's approval, each receive an award of $5,000 ($20,000 total split four ways) as appropriate compensation for their time and effort serving as the Class Representatives in the litigation against the Defendant. (Settlement Agreement §8.3.)

E.      **Payment of Reasonable Attorneys' Fees and Expenses.** In addition to all other relief, Defendant has additionally agreed to pay Class Counsel an amount for reasonable attorneys' fees and expenses. Despite extensive negotiations, the Parties were unable to agree on an amount for such attorneys' fees and costs, but have agreed to submit the issue of the amount of reasonable attorneys' fees to the Court for a binding decision. (Settlement Agreement § 8.1.) If the Settlement Agreement receives preliminary approval, proposed Class Counsel will move the Court for an award of reasonable attorneys' fees and for reimbursement of litigation expenses, and the Defendant and other Settlement Class Members will have the opportunity to review the fee petition (which will be posted on the Settlement Website) and submit any objections they may have to the amount or methodology to the Court (and Plaintiff will have the opportunity to reply prior to the Final Approval Hearing). (Settlement Agreement § 8.1.)

F.      **Release.** Upon the effective date of the settlement, the Class Representatives, on behalf of themselves and the Settlement Class, will provide a release of all "Released Claims" to the "Released Parties" as further discussed at the Stipulation of Settlement's Section 3. (*See* Ex. A). The release is limited to all claims that were or could have been alleged in the litigation challenging GMRS's use of an automatic telephone dialing system to make any calls or any other violation of the TCPA (or similar State statute or law).

As explained below, such terms fall within the range of what would be accepted on final approval such that the Court should grant preliminary approval and Order that Notice be disseminated to the Class.

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a settlement, the Court must first determine that the proposed settlement class is a proper class for settlement purposes. *See* MANUAL FOR

COMPLEX LITIGATION (FOURTH) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal quotations omitted). The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet these prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1-4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). In determining whether to certify a class, the Court generally does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). In this case, each of the prerequisites are met.

### A.      The Requirement of Numerosity Is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To satisfy this requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Fabricant*, 202 F.R.D. at 313 (*citing Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Generally, the numerosity requirement is not met with numbers less than 21, but is satisfied when the class comprises 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). In this case, the proposed class encompasses wireless telephone users across the United States, and GMRS had estimated that

there are approximately 688,500 Settlement Class Members. (Woodrow Decl. ¶ 19.)

Accordingly, the proposed class easily satisfies the requirement that membership be so numerous that joinder of their claims be impracticable.

### B.      The Requirement of Commonality is Satisfied.

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr,* P.A., 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members").

As alleged in this case, all class members share the common issue of whether they received calls from GMRS on their cellphones after they had included their cellphone numbers on their voter registration forms. This common issue of fact among class members results in common legal questions such as: (1) whether GMRS obtained prior express consent as required by the TCPA to call anyone by virtue of their voter registration forms, and (2) whether GMRS used an automatic telephone dialing system to make the calls at issue in this case. The answer to these outcome-determinative questions is the exact same for every Settlement Class Member.

### C.      The Proposed Class Representatives' Claims Are Typical of The Claims of the Settlement Class.

Rule 23 next requires that class representatives have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). The proposed Class Representatives' claims are typical of the claims of the class because they "arise

from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co*., 390 F.3d 695, 714 (11th Cir. 2004) (finding that "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). In fact, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Cooper*, 390 F.3d at 714 (finding that named representative need only share the same "essential characteristics" of the larger class). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

In this case, the named Plaintiffs and the proposed class members were similarly called on their cellphones after having supposedly consented in the exact same way (*i.e.*, through voter registrations). As such, Plaintiffs are each class members and resolution of their claims will necessarily result in the resolution of the claims of all Settlement Class Members. That is, if it violated the TCPA to call the named Plaintiffs, then such calls violated the TCPA with respect to the Settlement Class Members, as everyone supposedly consented in an identical manner (*i.e.*, by registering to vote and including their cellphone numbers on the registration form).

Typicality is therefore met here.

### D. The Requirement of Adequate Representation is Satisfied.

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates both that: (1) the class representative possesses no interests antagonistic to

the settlement class, and (2) class counsel is competent. *Fabricant*, 202 F.R.D. at 314-315

(citing *Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 726-28 (11th Cir. 1987)).

In this case, the named Plaintiffs/proposed Class Representatives have the same interests

as the proposed class members—all have been called on their cellphones after they supposedly

consented by including their cellphone numbers on their voter registration forms. The proposed

Class Representatives simply lack any interests that are antagonistic to the interests of the

proposed Settlement Class.

Further, Class Counsel are well respected members of the legal community, have

regularly engaged in major complex litigation, and have had extensive experience in consumer

class action lawsuits involving calls made in violation of the TCPA that are similar in size, scope

and complexity to the present case. (*See* Firm Resumes for Woodrow & Peluso, LLC and the

Law Office of Stefan Coleman, LLC, true and accurate copies of which are attached as Exs. 1 &

2 respectively to the Woodrow Declaration, Ex. B.) Accordingly, both the proposed Class

Representatives and their counsel will adequately represent the class.

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2) and 23(b)(3).

#### 1. The Class May be Certified Under Rule 23(b)(2)

Once the subsection (a) prerequisites are satisfied, the Federal Rules of Civil Procedure

further require that that one of the three requirements of Rule 23(b) be satisfied. Rule 23(b)(2)

provides that the party opposing certification must have acted or failed to act on grounds

generally applicable to the proposed class, "so that final injunctive relief or corresponding

declaratory relief is appropriate". Fed. R. Civ. P. 23(b)(2); *See also Heffner,* 443 F.3d at 1344.

In cases in which the defendants have acted in a manner generally applicable to the class,

and the relief sought is predominantly injunctive in nature rather than essentially a claim for

damages, the proposed class may be certified under Rule 23(b)(2). *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 684 (S.D. Fla. 2009). Additionally, the requirement that the defendant act on grounds generally applicable to the 23(b)(2) class is encompassed in the commonality requirement of Rule 23(a), and where a court finds that the commonality requirement is met, the court should also find that the Plaintiffs have satisfactorily alleged that the defendants acted on grounds generally applicable to the class. *Diaz v. Hillsborough Cnty. Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996).

There should be no question that GMRS acted on grounds generally applicable to the Settlement Class as a whole. GMRS made virtually identical phone calls to Martin, Armstrong, Zilveti and Thompson and each of the other members of the Settlement Class without first obtaining their prior express consent. Defendants used the same automatic telephone dialing system to make the calls and obtained the Class Representatives' and the Class Members' phone numbers in the same unauthorized manner (*i.e.*, via voter registration information). Ultimately, GMRS's conduct did not vary significantly from Settlement Class member to Settlement Class member and therefore, final injunctive relief is appropriate.

## 2. The Settlement Class Can Also Be Certified Under Rule 23(b)(3).

The Settlement Class is also certifiable under Rule 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700.

In this case and in the context of the proposed settlement, common issues of fact and law clearly predominate. GMRS's practice of making calls in violation of the TCPA is common to each class member's claims and damages. The only real distinction among class members is the number of calls they received.

In addition, the instant class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims. "The inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" Agan, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc*., 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 700 (S.D. Fla. 2004) (internal citations omitted); *Amchem*, 521 U.S. at 615 (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights").

In this case, absent a class action, most class members would find the cost of litigating their claims—which entitle each of them to between $500 - $1,500 per call for a handful of calls—to be prohibitive and such multiple individual actions would be judicially inefficient. Also, because the action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").

Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## V.     THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

For the next step, under Rule 23 "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider proposed Class Counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting TCPA class actions and other complex litigation of a similar nature, scope, and complexity. (*See* Exhibits 1 & 2 to the Woodrow Declaration). Proposed class counsel have intimate knowledge of the law in this field and have diligently investigated, prosecuted, and dedicated substantial resources to the investigation of the claims at issue in the action, and have successfully litigated the action and negotiated the settlement of this matter to the benefit of the Class. As will be explained in Class Counsel's Motion for Award of Reasonable Attorney's Fees and for Reimbursement of Expenses, proposed Class Counsel have devoted thousands of hours to the effective prosecution of this case, confronting a contentious and vigorous defense presented by seasoned defense lawyers. Their dedication to the case and commitment of substantial resources cannot seriously be questioned.

Accordingly, the Court should appoint Plaintiffs' counsel to serve as Class Counsel for the proposed class in accordance with Rule 23(g).

## VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Court must next determine whether the terms of the proposed Settlement Agreement

are worthy of final approval. Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 Newberg on Class Actions, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, Annotated Manual for Complex Litigation, § 21.632 (4th ed. 2004). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25, at 38-39 (quoting Manual for Complex Litigation, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc*., 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. Newberg, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 (stating that "[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement." (internal quotations omitted).)

Hence, the preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. Newberg, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th

Cir. 1998); *Access Now, Inc v. Claires Stores, Inc.*, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993). While the Court has discretion regarding the approval of a proposed settlement, it should give proper deference to the private consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable and not the product of collusion. *Bennett v. Behring*, 737 F. Supp. 982, 986 (11th Cir. 1984); *Access Now*, 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001). In determining whether the instant proposed settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F. Supp. at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering a preliminary approval motion, a court need not "reach any ultimate conclusions on the issues of fact and law underlying the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). As explained below, each consideration favors approval of the Settlement Agreement.

    **A.**      **The Likelihood of Success at Trial.**

This factor favors granting preliminary approval. The Plaintiffs are confident that they would have prevailed at trial. Nevertheless, there are always risks with litigating, and even multi-million dollar judgments have been reversed on appeal following trial. The uncertainty here was manifest given GMRS's numerous defenses, including its insistence that it had obtained prior consent to call class members, its claim that its system introduced sufficient human intervention so as not to qualify as an automatic telephone dialing system, and other defenses. As such, while the Plaintiffs are nearly certain that they could have prevailed on both certification and on the substantive merits of the case, they must allow room for reasonable doubt as to the recovery.

**B.     The Range of Possible Recovery.**

Given the sheer number of Settlement Class Members (688,500 cellphone users), a judgment against GMRS would be gargantuan given the TCPA's minimum statutory damages of $500 *per call.* Indeed, the damages in this case readily eclipse nine figures and may well traverse into billions of dollars. However, GMRS does not have the financial wherewithal to pay anywhere close to such amounts. Rather, as was made clear during the course of settlement discussions, any judgment adverse to GMRS would likely cause the company to go into bankruptcy, putting the future of its operations and employees into doubt. (Woodrow Decl. ¶ 24.)

GMRS's central assets, as pertinent to this lawsuit, are its three insurance policies (covering the years 2012, 2013, and 2014) from Old Dominion Insurance Company. (*Id*.) These policies allow for maximum benefits of $2,000,000 per year, and through the negotiations proposed Class Counsel fought to ensure that Old Dominion committed the full $6,000,000 to fund the Settlement Agreement. (*Id*.) No additional insurance was available.[6] (*Id*.)

---

[6] To the extent Mapfre elects to join the funding of this Settlement Agreement, its contribution would be capped at $4,000,000 ($2,000,000 for both 2010 and 2011). (*See* Settlement Agreement § 1.27)

As such, the $10,000,000 fund represents all of the money that could have been recovered as additional amounts threaten the solvency of GMRS—which would result in Settlement Class Members receiving next to nothing.

**C.      The Point on or Below the Range of Possible Recovery at Which Settlement is Fair, Adequate and Reasonable.**

As explained above, the Settlement Fund represents all of the money that GMRS is able to pay. Accordingly, it represents the "high end" of what is fair reasonable and adequate. This is true even though TCPA claims allow for $500 in statutory damages and the Settlement Agreement calls for payments of $15. This was necessary given the large number of Settlement Class Members—if each person filed a valid claim, the fund would be exhausted entirely even without considering the costs of Notice and Settlement Administration, the Class Representative Incentive Awards, and any award of Reasonable Attorneys' Fees.

Furthermore, and as will be demonstrated more completely in proposed Class Counsel's papers filed in support of Final Approval, $15 is consistent with other awards in TCPA class actions, even those against far larger companies with resources that dwarf GMRS's insurance policies. *See Kolinek v. Walgreen Co*., Case No. 1:13-cv-04806 (N.D. Ill.) (final approval given in a TCPA class action settlement involving a $11 million fund for 9.2 million class members that resulted in payments of $30 per class member). As such, the amount recovered falls within the range of what would be considered fair, adequate, and reasonable on final approval.

**D.      The complexity, expense and duration of the litigation favors settlement**.

The case, while straightforward for a class action, was undoubtedly complex and expensive. Proposed Class Counsel has expended thousands of hours (and tens of thousands of dollars on out-of-pocket expenses) to litigate and negotiate a resolution of the case. Furthermore, the Parties have exchanged thousands of pages of documents and other written discovery and

litigated a flurry of substantive motions. The first mediation was unsuccessful specifically because the Parties agreed that certain issues pertaining to discovery needed to be resolved by the Court. As such, following the declaration of impasse (dkt. 45) the Parties proceeded to finalize their meet and confer obligations and to brief—through two motions to compel by the Plaintiffs and a motion for protective order by GMRS—the contested discovery issues.

Ultimately the Court granted the Plaintiffs' Second Motion to Compel and GMRS wanted to return to the mediation process as a result, which eventually led to two additional full-day mediation sessions. (*Id*. ¶ 17.) Accordingly, the discovery and motion practice, when coupled with the information disclosed regarding the contours of the Class and GMRS's financial position, allowed proposed Class Counsel to make a fair evaluation of the Settlement terms. (*Id*. ¶ 35.)

As such, the complexity, expense, and duration of the litigation favors approving the settlement.

> **E.      As Will Be Shown in Proposed Class Counsel's Papers Filed in Support of Final Approval, the Substance and Amount of Opposition to the Settlement Favors Approval of the Settlement Agreement.**

This factor is best left to the final approval briefs after Notice is issued and Settlement Class Members have had the opportunity to file claims, opt out, and lodge objections. The Class Representatives anticipate that given the strength of the Settlement and the benefits conferred, the response from the Settlement Class Members is very likely to be positive. There certainly has been no indication that any issues exist with respect to the Settlement Agreement's terms.

> **F.      The Stage of Proceedings Favors Approval as Well.**

As also explained above, the Settlement Agreement was reached only following almost a year's worth of arm's-length negotiations that included three full-day mediation sessions.

(Woodrow Decl. ¶¶ 35-36.) Prior to the initial mediation and in between the first and second sessions, the Parties actively litigated the case, exchanged meaningful discovery, and otherwise presented their arguments and discovery disagreements to the Court. (*Id*. ¶¶ 7-16.) Through the discovery, briefing, and mediation process, proposed Class Counsel were able to obtain critical information regarding the size and scope of the proposed Settlement Class, the nature of GMRS's liability, and GMRS's inability to satisfy a judgment in any material respect. (*Id*. ¶ 24.) Accordingly, the stage of the proceedings is such that proposed Class Counsel came to the negotiations armed with the ability to fairly judge the fairness and reasonableness of the proposed recovery.

> **G.** **The Settlement was Achieved with the Help of a Respected Mediator who Ensured the Negotiations Were Free of Any Collusion.**

As a final consideration here, and while not dispositive, it bears restating that the Settlement Agreement was negotiated by a well-respected national mediator with substantial experience in resolving large consumer class actions. (*Id*. ¶ 36.) The mediator assured that at all times the negotiations, which were often contentious, stayed professional and arm's-length. (*Id*.)

While some courts have observed that certain class actions settlements contain *indicia* of collusion where large fees are promised in exchange for insufficient relief to the settlement class, that is the opposite of the case here: in the instant matter, proposed Class Counsel secured an agreement from GMRS and its insurer to pay claims and other settlement amounts up to $10,000,000. And rather than agree to proposed Class Counsel's fee together with a "free sailing" provision, the instant Settlement Agreement leaves the issue of awarding attorneys' fees to the binding decision of this Court following briefing by proposed Class Counsel, GMRS, and any objectors. (*Id*. ¶ 36.)

Accordingly, that the Settlement is free of collusion further militates in favor of granting

preliminary approval.

## VII.   THE PROPOSED NOTICE AND FORM OF NOTICE SHOULD BE APPROVED

Pursuant to the Settlement Agreement, GMRS has agreed to follow a plan devised by the national claims administrator Kurtzman Carson Consultants in order to notify the class of this settlement in several ways. (Settlement Agreement § 1.44.) First, GMRS will cause a "short form" notice to be mailed directly to Settlement Class Members informing them of the Settlement. Subject to the quality of available data, this direct mailing is expected to reach over 65% of the Settlement Class. To expand such reach, the Notice Plan also includes supplemental internet banner advertising that will be used to promote the existence of the Settlement Agreement and to direct consumers to the Settlement Website (which will feature key documents, deadlines, and the ability to download claims and to file them electronically).

The Notices also provide the settlement class members with a detailed explanation of their options to allow each of them to make an informed decision. As such, the parties request the Court to approve the form and methods of notice proposed.

## VIII.   PROPOSED PRELIMINARY SCHEDULE

The parties propose the following schedule leading to the Fairness Hearing for final approval of the settlement:

| Action | Deadline |
|---|---|
| 1. Website Notice Posted by Settlement Administrator | within seven (7) after entry of Preliminary Approval Order ("PAO"). |
| 2. Deadline for mailing out direct mail notice | Thirty (30) days following entry of the PAO |
| 3.  Deadline for Class Counsel to File Motion for Attorneys' Fees and to Post Brief on Settlement Website | Thirty-five (35) days prior to the Final Approval Hearing |

| 4. Deadline for GMRS to file Objections to the Motion for Attorneys' Fees | Fourteen (14) days prior to Final Approval Hearing |
|---|---|
| 5. Deadline for filing papers in support of final approval | Thirty-five (35) days prior to the Final Approval Hearing |
| 6. Deadline for Opt-outs/Objections | Forty-five (45) days following the PAO |
| 7. Deadline to file Reply in Support of Final Approval and for Attorneys' Fees and any responses to objections by GMRS (to fees) or to any other objectors | Seven (7) days prior to the Final Approval Hearing |
| 8. Final Approval Hearing | To be set by the Court (approximately 90 days following the PAO) |
| 9. Deadline to for submitting claims | Forty-five (45) days following Final Approval Hearing |

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that (1) the Court certify the requested settlement class, (2) appoint Robert Martin, Kristen Armstrong, Nicole Zilveti, and Alicia Thompson as Class Representatives, (3) appoint Class Counsel as set forth above, (4) preliminarily approve the proposed settlement, (5) approve the form and methods of proposed Notice, and (6) that the Court order the issuance of the Notice and all other actions detailed in the schedule proposed above.

Dated: March 18, 2016

**ROBERT MARTIN and KRISTEN ARMSTRONG**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC

3900 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

*Pro hac vice*

Stefan L. Coleman, Esq., Florida Bar no. 0030188
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
law@stefancoleman.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 18, 2016, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.


/s/ Steven L. Woodrow