**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, | Case No. 6:14-cv-1290-ORL-31-KRS |
| *Plaintiffs*, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, | |
| *Defendants*. | |

**CLASS REPRESENTATIVES' AND SETTLEMENT CLASS COUNSEL'S**
**MOTION FOR AN AWARD OF REASONABLE ATTORNEYS'**
**FEES AND FOR REIMBURSEMENT OF EXPENSES**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... iii

Relief Requested ........................................................................................... 1

Statement of the Basis for Relief Requested ............................................... 1

MEMORANDUM OF LAW ........................................................................ 3

I.      INTRODUCTION .............................................................................. 3

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......... 4

        Class Counsel's Extensive Pre-Suit Investigation and Filing of Initial Complaint ..... 4

        GMRS's Motions to Dismiss ........................................................... 5

        GMRS Requests Mediation and the Parties Engage in Their First Full Day
        Session ............................................................................................. 5

        The Parties Return to Litigation: Plaintiffs Amend the Complaint and Continue
        Their Pursuit of Discovery While Additional Lawsuits are Filed in California and
        Pennsylvania; GMRS Moves Unsuccessfully For Sanctions ........... 6

        The Court Grants Plaintiffs' Second Motion to Compel, GMRS Requests a Return
        to Mediation, and the Parties Engage in a Second Full Day Mediation Session in
        Florida ............................................................................................. 8

        The 11th Hour Bombshell: GMRS "Discovers" Two Potential Years Worth of
        Additional Insurance and Requests a Third All Day Mediation Session in Florida
        with Mr. Max .................................................................................... 9

        The Settlement Details: A $10 Million Settlement Fund Combined with Injunctive
        Relief Designed to Curb GMRS's Making of Unsolicited Autodialed Survey Calls to
        Cellphones ........................................................................................ 10

        Class Counsel Has Performed Substantial Work Since Achieving the Settlement ... 12

III.    ARGUMENT ..................................................................................... 13

        A.      The Court Should Award Reasonable Attorneys' Fees of 30% of the $10
                Million Common Fund ........................................................... 15

                1.      The time and labor required ......................................... 15

2.     The novelty and difficulty of the questions............................................18

3.     The skill requisite to perform the legal services properly...................19

4.     The preclusion of other employment by the attorney due to acceptance of the case ...................................................................................20

5.     The customary fee supports an award of 30% of the Settlement Fund ...................................................................................................................20

6.     Whether the fee is fixed or contingent ..................................................20

7.     Time limitations imposed by the client or the circumstances.............21

8.     The amount involved and the results obtained supports a 30% fee....21

9.     The experience, reputation, and ability of the attorneys.....................22

10.    The "undesirability" of the case ............................................................23

11.    The nature and length of the professional relationship with the client ...........................................................................................................23

12.    Awards in similar cases .........................................................................24

13.    Other considerations, including the non-monetary benefits and the economic realities of the case and Settlement, support an award of 30% as reasonable attorneys' fees.......................................................25

B.     Even if the Court Were to Consider Class Counsel's Lodestar, the Time Invested in the Case Supports the Requested Attorneys' Fees.......................26

C.     The Court Should Also Approve Class Counsel's Out of Pocket Expenses of $28,427.14.............................................................................................................29

IV.    CONCLUSION ........................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

*Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238 (W.D. Wash 2012) ...............................21

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) ...............................................................15

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................13

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)........................................29

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ......................................................................25

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, 2015 WL 4498741 (N.D. Ill. 2015)................24

*Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir.1991) ...............13, 14, 15

*Craftwood Lumber Co. v. Interline Brands, Inc,*, 2015 WL 1399367 (N.D. Ill. 2015)................25

*David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. 2010)..................................14, 15

*Frank v. Poertner,* 2016 WL 1079040 (U.S. 2016).......................................................14

*Hageman v. AT & T Mobility LLC*, 2015 WL 9855925 (D. Mont. 2015) ....................................24

*Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306 (M.D. Fla. 2011) ....................20, 28

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011)............14, 21, 25

*In re Greenwich Pharm. Sec. Litig.*, 1995 WL 251293 (E.D. Pa. 1995) ......................................25

*In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ..............................14

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001).........................................26, 27

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) .......................................15

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ....................................................21, 24

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 2016 WL 611441 (3d Cir. 2016) ..........24

*Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208 (E.D. Mo. 2015) ..................................24

*Lepinske v. Mercedes Homes, Inc.*, 2008 WL 2694111 (M.D. Fla. July 7, 2008)........................13

*Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799 (11th Cir. 2012) ..................................15

*Nelson v. Greater Gadsden Hous. Auth.*, 802 F.2d 405 (11th Cir. 1986)......................................15

*Nicholson v. Bates*, 544 F. Supp. 256 (E.D. Tex. 1982) ..........................................................20

*Oxford v. Beaumont Indep. Sch. Dist.*, 2002 WL 34188379 (E.D. Tex. 2002) ...........................20

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ........................25, 26

*Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015)...................................................13, 25

*Poertner v. Gillette Co.*, 2014 WL 4162771 (M.D. Fla. 2014) ..................................................14

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992)..................................................................28

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. 2014)..............................................21

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. 2011) ............................24

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2015 WL 9413143 (W.D. Ky. 2015) ...........24

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014).................................24

*Warren v. Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988).................................................................22

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ................................13, 25

*Wilson v. Everbank*, 2016 WL 457011 (S.D. Fla. 2016) ...............................................................21

*Wolff v. Cash 4 Titles*, 2012 WL 5290155 (S.D. Fla. 2012)........................................................24

**STATUTES, RULES AND REGULATIONS**

47 U.S.C. § 227 (2015) ........................................................................... *passim*

Fed. R. Civ. P. 23.......................................................................................................1

Class Representatives Robert Martin, Kristin Armstrong, Nicole Zilveti, and Alicia Thompson, in accordance with Federal Rule of Civil Procedure 23, together with Class Counsel, respectfully move this Court for an order approving Class Counsel's request for an award of reasonable attorneys' fees and for reimbursement of expenses in accordance with the class action Settlement Agreement[1] reached in this matter. (*See* "Settlement Agreement," a true and accurate copy of which is attached hereto as Ex. A § 8.1.)

On March 29, 2016, the Court granted preliminary approval to the Settlement Agreement, which is the product of extensive negotiations overseen by a nationally-respected mediator and provides substantial relief to Settlement Class Members. (Dkt. 98.) The Preliminary Approval Order set July 2, 2016 as Class Counsel's deadline for moving for reasonable attorneys' fees.

As such, and in support, the Class Representatives and Class Counsel submit the following memorandum of law, stating as follows:

## RELIEF REQUESTED

Grant the Class Representatives' and Class Counsel's request for an award of reasonable attorneys' fees and for reimbursement of their reasonable expenses in the combined amount of 30% of the Settlement Fund in this case, or $3,000,000 (.30 x $10,000,000).

## STATEMENT OF THE BASIS FOR RELIEF REQUESTED

1.      The Parties, with the help of nationally respected mediator Rodney Max, reached a class action settlement agreement that, if finally approved, resolves the claims at issue in this case on terms favorable to Settlement Class Members.

---

[1] Unless otherwise specified, capitalized terms have the same meanings as those set forth in the Definitions section of the Settlement Agreement. (*See* Ex. A.)

1

2.      This is a lawsuit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* Plaintiffs allege that Defendant Global Marketing Research Services, Inc. ("GMRS" or "Defendant") made unlawful cellphone calls when GMRS conducted its political surveys.

3.      The Parties have reached a Settlement that calls for the creation of a Settlement Fund of up to $10,000,000 USD for the payment of claims to over 688,500 Settlement Class Members (who may, through the submission of a simple claim form, receive a payment of up to $15). The Settlement also provides prospective relief, including allowing Settlement Class Members to check a box to ensure that GMRS never calls them again (even via a manually-dialed call), and requires GMRS to pay the notice and administrative costs, class member incentive awards, and reasonable attorneys' fees to proposed Class Counsel.

4.      The Parties were unable to reach an agreement regarding the amount of attorneys' fees to be awarded, however, and have agreed to leave the matter to be decided by the Court (via a binding decision).

5.      On March 29, 2016 the Court granted preliminary approval of the Settlement Agreement, and set dates for, among other things, filing the instant Motion for Attorneys' Fees, for moving for final approval over the Settlement, and for holding the Fairness Hearing, which is presently scheduled for August 16, 2016. (Dkt. 98.)

6.      As explained below, the Court should approve an award of reasonable attorneys' fees and expenses equal to 30% of the Settlement Fund, which is $3,000,000. Such an award is consistent with awards in comparable cases and reflects both the impressive results achieved on behalf of the Settlement Class—a $10,000,000 Settlement Fund from a company that simply could not afford a larger settlement—as well as the substantial amount of attorneys' time and work that Settlement Class Counsel was required to devote to the litigation.

7.      As such, and for all the reasons set forth herein, the Court should grant Settlement Class Counsel's request for $3,000,000 in reasonable attorneys' fees and as reimbursement for their out-of-pocket expenses (which presently equal $28,427.14 and are set to increase).

## MEMORANDUM OF LAW

## I.      INTRODUCTION

The Parties in this class action reached a settlement that, if finally approved, would resolve claims challenging Defendant's alleged practice of making cellular telephone calls to consumers using an automatic telephone dialing system without consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). That is, named Plaintiffs Martin and Armstrong, and the named Plaintiffs in two similar class actions against GMRS[2], filed separate actions asserting that Defendant conducted political surveys in which calls were made to cellphone users without prior express consent. While such calls to landline phones may be permissible, similar calls to cellphones violate the TCPA. Plaintiffs sought, on behalf of themselves and all similarly situated consumers, statutory damages as allowed under the Act.

The Parties engaged in a series of settlement talks. As explained below, the Parties ultimately participated in three (3) full-day mediation sessions in Florida overseen by nationally-respected mediator Rodney Max. The result is a strong Settlement that provides the Settlement Class—which consists of approximately 688,500 members—with the ability to file claims for cash payments of $15 from a settlement fund not to exceed ten million dollars ($10,000,000

---

[2] The two similar actions are *Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW (N.D. Cal.) (California-only class), and *Thompson v. Global Marketing Research Services, Inc.*, previously case no. 2:15-cv-03576-AB. (E.D. Pa.) and re-assigned following transfer to the Middle District of Florida as case no. 6:16-cv-306-Orl-31DAB (the "*Thompson*" case) (Pennsylvania-only Class).

USD). (*See* Ex. A, § 2.1.) Additionally, GMRS has also agreed to take proactive steps to ensure it complies with the TCPA going forward, and the Settlement Agreement allows Class Members to ensure that they will never receive calls from GMRS in the future.

The Parties also agreed that Class Counsel should receive an award of reasonable attorneys' fees. Despite their best efforts, however, the Parties were unable to agree on the amount of attorneys' fees that would be considered reasonable. Rather than abandon the Settlement, the Parties agreed that the amount to be awarded for reasonable attorneys' fees was best left for the Court to determine through a binding decision.

As such, and as set forth more fully below, the Class Representatives and Class Counsel respectfully move the Court for an award of reasonable attorneys' fees and for reimbursement of their out-of-pocket expenses (which presently equal $28,427.14 and are set to increase with final approval) in the total amount of 30% of the Settlement Fund, which amounts to $3,000,000.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

***Class Counsel's Extensive Pre-Suit Investigation and Filing of Initial Complaint***

The original named Plaintiff, Melanie Walsh, received GMRS's survey calls on her cellphone. (See Declaration of Steven Woodrow "Woodrow Decl.", attached as Ex. B-1 to Group Ex. B, ¶ 2.) Prior to simply filing a complaint, Class Counsel performed an exhaustive investigation into GMRS, including reviewing public information regarding its calling activities and analyzing this conduct against the relevant laws and regulations applicable under the TCPA, as well as speaking with dozens of other persons who had contacted Class Counsel to discuss or complain about GMRS. (*Id.*) Through these interviews, Class Counsel was able to determine the likely automated nature of the calls, the purpose and scope of the surveys, and the absence of any prior contact with GMRS. (*Id.*) In light of such information, Class Counsel filed the initial

4

complaint on August 11, 2014, (Dkt. 1) alleging, on behalf of Walsh and a nationwide class of all similarly situated consumers, that GMRS's called violating the TCPA. (*Id.* ¶ 3.)

### GMRS's Motions to Dismiss

On October 10, 2014, GMRS filed a Motion to Dismiss, which was thereafter fully briefed by the Parties and was ultimately denied on December 16, 2014 (Dkt. 16). (*Id.* ¶ 4.) On January 23, 2015, GMRS filed a "renewed" motion to strike (Dkt. 32) and Plaintiff began drafting response papers, but the Court denied that "renewed" motion just 3 days later. (Dkt. 33.)

Plaintiff propounded discovery, including document requests and written interrogatories, on GMRS, on December 23, 2014. (Woodrow Decl. ¶ 5.) GMRS responded to Plaintiff's interrogatories on January 30, 2015, and to Plaintiff's requests to produce on February 2, 2015. (*Id.*) Given GMRS's evasive answers, the Parties engaged in a series of meet and confers through multiple letters and emails exchanged with GMRS's counsel. (*Id.*) In addition to written correspondence, counsel for the Parties also communicated by telephone to discuss Plaintiff's issues with GMRS's responses. (*Id.*)

### GMRS Requests Mediation and the Parties Engage in Their First Full Day Session

During a meet and confer on February 12, 2015, the Parties, in addition to discussing the discovery responses, also discussed the potential for settlement, and even talked about what a potential settlement might look like. (*Id.* ¶ 6.) Thereafter, on February 18, 2015, Plaintiff's counsel drafted and sent to GMRS's attorneys a letter describing in full two potential alternative "frameworks" that could be used to resolve the case. (*Id.* ¶ 7.) Following this exchange, counsel for the parties then traded a handful of emails clarifying the two approaches. (*Id.*)

On March 10, 2015 counsel for the Parties engaged in telephone call to discuss the two models. (*Id.* ¶ 8.) During this call, GMRS's lawyer indicated that GMRS was interested in a

traditional class settlement, and counsel thereafter discussed in detail what a traditional class action settlement could feature. (*Id.*) Counsel also exchanged settlement emails. (*Id.*)

In furtherance of these talks, the Parties engaged in a full day, in-person mediation session held April 22, 2015 in Boca Raton, Florida with Mr. Max. (*Id.* ¶ 10.) Although the Parties were unable at that initial session to reach an agreement on a settlement framework or the relief to be made available to the Class, the Parties learned important information regarding each side's evaluation of the case, the exposure faced,[3] and the key questions pending in the litigation that needed to be resolved. (*Id.* ¶ 11.) On May 26, 2015, the mediator, Mr. Max, filed a notice with the Court declaring an impasse. (Dkt. 42.)

### The Parties Return to Litigation: Plaintiffs Amend the Complaint and Continue Their Pursuit of Discovery While Additional Lawsuits are Filed in California and Pennsylvania; GMRS Moves Unsuccessfully For Sanctions

The original named plaintiff, Ms. Walsh, confirmed that she could not commit the time needed to represent the class, and following the mediation Plaintiffs' counsel filed a Motion for Leave to Amend on June 9, 2015 to remove Walsh and to substitute in Martin and Armstrong as class representatives. (*Id.* 45.) On June 25, 2015, the Court granted Plaintiffs' Motion for Leave to Amend. (*Id.* 47.) The Amended Complaint also modified the class definitions to exclude consumers in California and Pennsylvania. (*Id.* 48.)

On June 4, 2015, a different cellphone user, Nicole Zilveti, filed a case against GMRS in the Northern District of California styled *Zilveti v. Global Marketing Research Services, Inc.*,

---

[3] A judgment in the class's favor against GMRS would have potentially exceeded $344,250,000, representing $500 in statutory damages assuming one call for each of the 688,500 class members. Where willfulness is found the TCPA calls for trebled damages, and GMRS made multiple calls to each person. As such, damages could exceed one billion dollars. GMRS's inability to pay any such award was confirmed at the mediation. (Woodrow Decl. ¶ 11.)

3:15-cv-02494-KAW.[4] (Woodrow Decl. ¶ 16.) The *Zilveti* case seeks to represent a Class of California cellphone users called by GMRS. (*Id.*) On June 25, 2015, another consumer, Alicia Thompson, filed a case in the Eastern District of Pennsylvania against GMRS styled *Thompson v. Global Marketing Research Services, Inc.*, 2:15-cv-03576-AB, seeking certification of a Pennsylvania-only Class. (*Id.* ¶ 17.) GMRS filed a motion to dismiss or transfer in the *Thompson* case on July 31, 2015, which was granted on January 20, 2016 and re-assigned as case no. 6:16-cv-306-Orl-31DAB following transfer to the Middle District of Florida. (*Id.*)

Although they brought three separate cases, the named Plaintiffs in each matter alleged essentially the same thing: that GMRS's political calls to their cellphones were made without prior express consent in violation of the TCPA. (*Id.* ¶ 18.) As demonstrated by the dockets in all three cases, the litigation to date has been extensive. (*Id.* ¶ 19.) Since the instant case was filed, GMRS and the named Plaintiffs have engaged in written discovery (including exchanging answers to interrogatories, requests to produce, requests for admission, and initial disclosures) and have also exchanged information through informal discovery. (*Id.*) In addition to moving to have the *Thompson* and *Zilveti* matters transferred to this Court, GMRS also filed a Motion to Reconsider and for Sanctions in the instant case against Plaintiffs and Class Counsel relating to the Amended Complaint. (*Id.*) Those motions were fully briefed, as were several additional motions and pleadings. In the instant action alone the Parties have litigated, among other filings, a motion to dismiss (Dkt. 16), two motions to compel further answers to discovery (Dkts. 49, 64), GMRS's motion for a protective order (Dkt. 66), GMRS's Motion to Reconsider the Court's granting of Plaintiff's Motion for Leave to File an Amended Complaint and for Sanctions (Dkt.

---

[4] On July 22, 2015, GMRS moved to dismiss or transfer the *Zilveti* case to this Court, which was denied on February 16, 2016. (*Zilveti* Action, Dkt. 45.) The Parties intend to request a stay from the *Zilveti* court while this Court considers whether to approve the instant Settlement Agreement.

66), a motion for sanctions against GMRS (Dkt. 61), a motion for oral argument (Dkt. 67) and

Reconsideration of the Court's Order denying oral argument (Dkt. 81), and a motion to

reconsider the Court's denial of the Parties' joint motion for an enlargement of time (Dkt. 90).

(*Id*. ¶ 20.) And in the *Zilveti* and *Thompson* actions, the Parties fully briefed GMRS's motions to

dismiss or transfer. (*Id.* ¶ 21.) Such discovery and briefing is in addition to the hundreds of

emails exchanged and teleconferences between counsel for the Parties and between counsel and

the Department of Justice (related to its intervention in the *Zilveti* and *Thompson* matters).

Hence, in addition to the Parties' settlement negotiations (discussed below) the Parties

vigorously litigated the case both prior to and following the first mediation session. (*Id*.)

***The Court Grants Plaintiffs' Second Motion to Compel, GMRS Requests a Return to Mediation, and the Parties Engage in a Second Full Day Mediation Session in Florida***

Ultimately, Plaintiff filed a Second Motion to Compel further answers to discovery in this

case and, on October 15, 2015, the Court entered Orders Denying GMRS's request for a

protective order and granting in large part Plaintiffs' Second Motion to Compel. (Dkt. 84.) (*Id*. ¶

23.) On October 13, 2015, GMRS's counsel reached out regarding the possibility of resuming

the mediation process, and Plaintiffs' counsel flew to Orlando a week later to engage in a second

full-day mediation session on October 20, 2015. (*Id*. ¶ 23-24.) Substantial progress was made

during this second mediation session regarding a class settlement. (*Id.* ¶ 24.) Although the Parties

didn't reach an agreement regarding the relief to be made available to the class, significant

progress was finally made such that it made sense to seriously continue pursuing the negotiations

as opposed to returning to a litigation posture. (*Id*.)

Over the course of the several weeks following the second mediation session, counsel for

the Parties continued—with the help of the mediator—to negotiate the terms of the relief to be

made available to the Settlement Class Members and the Settlement Agreement's other essential

terms. (*Id.* ¶ 25.) This included back-and-forth regarding multiple terms of the agreement, including the relief to the class, the definition of the class, the scope of the notice and who should bear its costs, and a host of other issues. (*Id.*) The Parties were closing in on an agreement when GMRS revealed that potential additional insurance existed. (*Id.*)

***The 11th Hour Bombshell: GMRS "Discovers" Two Potential Years Worth of Additional Insurance and Requests a Third All Day Mediation Session in Florida with Mr. Max.***

Throughout the negotiations, GMRS represented that it had insurance coverage for claims arising from cell calls made in the years 2012 through 2014 provided by Old Dominion Insurance Company ("Old Dominion") but that it lacked such insurance for calls made in the years 2010-2011. (*Id.* ¶ 26.) In early January 2016, however, GMRS's counsel—for the first time—alerted Class Counsel to the fact that GMRS potentially had additional insurance coverage for those two years (2010 and 2011) under policies that had been issued by Mapfre Insurance Company of Florida ("Mapfre"). (*Id.* ¶ 27.) The Parties thereafter jointly requested additional time from this Court to continue their negotiations to seek to include Mapfre. (*Id.* ¶ 28.) This Court entered an Order granting this request on January 11, 2016 (Dkt. 94)[5], and the Parties reconvened on February 3, 2016 for a third full-day mediation session in Boca Raton, Florida. (Woodrow Decl. ¶ 29.) At this third session, Mapfre indicated that it was declining coverage for the 2010 and 2011 years. (*Id.*) Following continued discussions and a thorough analysis of Mapfre's position, Plaintiff and GMRS decided to continue to pursue their negotiations separately. (*Id.*)

---

[5] The granting of this extension was generous of the Court. Just weeks before, on December 17, 2015 the Court entered an Order denying Plaintiff's Unopposed Motion for an Extension of Time to Amend indicating on the docket that, "This case has dragged on long enough." (Dkt. 88.) Plaintiffs had indicated their intent to amend the complaint to name the John Doe Defendants, but GMRS had refused to identify them, opting instead to settle the case once the Court ordered their identities to be disclosed. In any case, Plaintiff agrees that the case dragged on, primarily as a result of GMRS's approach to its defenses.

In the end, counsel for the Parties were able to reach an agreement with respect to the framework of the settlement and the relief to be made available to the Settlement Class. (*Id.* ¶ 30.) Once an agreement in principle was reached, the Parties negotiated Incentive Awards for the Class Representatives and attempted to negotiate the issue of reasonable attorneys' fees for Class Counsel. (*Id.*) The attorneys' fees discussions were unsuccessful. (*Id.* ¶ 31.) That is, while the Parties agreed that Class Counsel should receive an award of <u>some</u> amount of reasonable attorneys' fees, they were unable to agree on an amount that would be considered reasonable. (*Id.*) As such, the Parties agreed to leave the amount of reasonable attorneys' fees to be decided by the Court (through a binding decision). (*Id.*)

***The Settlement Details: A $10 Million Settlement Fund Combined with Injunctive Relief Designed to Curb GMRS's Making of Unsolicited Autodialed Survey Calls to Cellphones***

Without repeating all of the key terms, in summary, the Settlement Class is defined as:

All Persons in the United States or its territories who received a call successfully placed by or on behalf of GMRS to that Person's cellular telephone, through the use by GMRS of an ATDS, at any time from August 11, 2010 through December 31, 2014, consisting of approximately 688,650 Persons where the Person upon answering such call either: (a) participated in a GMRS survey, (b) declined to participate at the time of the first such call without objection to be called back at a later time, or, (c) upon answering such call directed never to be called by GMRS again.

(*See* Ex. A § 1.9.) With respect to relief, Class Members can file claims for fifteen dollars ($15.00 USD). (*Id.* § 2.1.) Given that the total amount of the fund is $10,000,000, sufficient funds will be available to pay every claimant fifteen dollars ($15.00).[6] In addition, GMRS must also take affirmative steps to ensure that it will comply with the TCPA going forward. (*Id.* § 2.2.)

---

[6] The Court is well versed in claims rates in consumer class actions. As the Settlement Fund is up to $10,000,000, there will be sufficient funds to cover the claims actually filed, the costs of Notice and administration (which may exceed $400,000), the Class Representative Incentive Awards ($5,000 each), and proposed Class Counsel's award of reasonable attorneys' fees. (Woodrow Decl. ¶ 60.)

10

That is, GMRS has agreed: (1) to refrain from making calls to cellular phones using an ATDS unless the call recipients have given prior express consent to receive such calls, and (2) to use its best efforts to identify cellular telephone numbers from residential landline telephone numbers prior to calling such cellular telephone numbers by means other than an ATDS. (*Id*.) As an additional benefit—and one that Settlement Class Members who have filed claims have taken advantage of—the Claim Form allows each Settlement Class Member the opportunity to expressly remove his or her cell phone number from any list or database of numbers that GMRS may have in its possession to which phone calls could be made. (*Id.* § 2.3.) This will ensure that the Settlement Class Member is able to stop *all* GMRS's calls—including manually dialed calls. (*Id.*)

GMRS and/or its Insurer will also pay for the cost of sending the Settlement Class notice (projected to cost over $400,000) and any other notice as required by the Court as well as all costs of administration of the Settlement Agreement out of the Settlement Fund. (*Id.* § 4.6.) Such Notice includes direct mail notice with supplemental internet publication notice. (*Id.* § 4.2(b) – (c).) The notice also features a Settlement Website that includes the traditional "long form" notice in addition to key documents and a feature that allows Claim Forms to be downloaded or submitted online. (*Id.* § 4.2(d).)

In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, the Class Representatives shall, subject to the Court's approval, each receive an award of $5,000 ($20,000 total split four ways) as compensation for their time and effort serving as the Class Representatives in the litigation against the Defendant. (*Id.* § 8.3.) And again, Defendant has agreed to pay Class Counsel an amount for reasonable attorneys' fees and expenses to be decided by the Court. (*Id.* § 8.1.)

11

In sum, the litigation and the mediation process have produced strong settlement terms that provide meaningful relief to the Settlement Class Members. As such, and as explained in further detail below, the Court should approve attorneys' fees and reimbursement of expenses to Settlement Class Counsel in an amount equal to thirty percent (30%) of the $10,000,000 Settlement Fund and approve the Class Representative Incentive Awards of $5,000 each ($20,000 total).

### *Class Counsel Has Performed Substantial Work Since Achieving the Settlement.*

Before analyzing the factors relevant to the Court's fee analysis, it is important to note that since the Settlement was reached, Class Counsel has been required to invest substantial time finalizing the Settlement Agreement and shepherding the agreement through the approval process. (Woodrow Decl. ¶ 33.) Several thousand Settlement Class Members have filed claims, and Class Counsel has spoken with hundreds of Settlement Class Members regarding the Settlement, their rights under the agreement, and about the TCPA more generally—educating consumers about the Act and the way in which it protects them from unauthorized cellphone and other calls. (*Id.*) Class Counsel has also assisted Settlement Class Members with the filing of claims. (*Id.*) Notice was mailed directly to over four hundred thousand people, and the strain on Class Counsel's resources has been manifest—Class Counsel has hired additional part-time help in order to ensure that all Settlement Class Members who call Class Counsel (whose phone number appears on the notices) are responded to promptly and will continue to field and respond to such inquiries. (*Id.* ¶ 34.)

Furthermore, GMRS has served discovery—notwithstanding its agreement to a stay of the litigation (*See* Ex. A § 10.17)—seeking Class Counsel's time records and other billing information. (*Id.* ¶ 35.) Litigating such requests may require further attorneys' time. (*Id.*) In

short, the work in this case has not stopped with the Settlement and will continue well-beyond the final approval hearing given that the claims deadline expires over a month following the final approval order.

As set forth below, on these facts, given the scope of the litigation, the results obtained, and the work performed to achieve them, Class Counsel respectfully requests an award of thirty percent (30%) of the Settlement Fund, or $3,000,000.

## III.   ARGUMENT

"Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991); *Lepinske v. Mercedes Homes, Inc*., No. 607-CV-915-ORL-31DAB, 2008 WL 2694111, at *2 (M.D. Fla. July 7, 2008). The common fund exception "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The exception can apply even where the parties agree that any unclaimed portion of the common fund will revert to the party that established it. *Camden I,* 946 F.2d at 771 n. 2.

The Eleventh Circuit has expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement. *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33–1/3% of total amount made available to class, and explaining that attorney's fees may be determined based on total fund, not just actual payout to class) (*citing Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (*quoting Camden I,* 946 F.2d 768, 774 (11th

Cir.1991) ("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class")); *David v. Am. Suzuki Motor Corp.,* No. 08–cv–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded).

While other courts further analyze counsel's lodestar, in the Eleventh Circuit, "the lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d, 1330, 1362-63 (S.D. Fla. 2011) (citing, *inter alia,* Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n. 41 ("The Eleventh ... Circuit [ ] repudiated the use of the lodestar method in common-fund cases")). Indeed, courts in this Circuit have criticized lodestar approach and the incentives it "creates…to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997); *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1363 ("Under *Camden I,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all.") As such, the Court should calculate a percentage of the $10,000,000 Settlement Fund established in this case that is fair under the circumstances.[7]

With respect to the percent typically awarded, the reasonableness of the fee must be based upon the facts of each case. *Poertner v. Gillette Co*., No. 6:12-CV-803-ORL-31DA, 2014

---

[7] "[I]n determining a reasonable fee… the Court is not limited by the actual amount of claims to be paid. Rather, the Court should consider both the monetary and non-monetary benefits to the class and the economics involved in prosecuting the case." *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd,* 618 F. App'x 624 (11th Cir. 2015*), cert. denied sub nom. Frank v. Poertner,* 136 S. Ct. 1453, 194 L. Ed. 2d 575 (2016) (approving 10% of $50 million fund where "as expected, the claims rate...(was only 55,346 claims/7.2 million people), with a total pay-out of $344,850.").

WL 4162771, at *4-5 (M.D. Fla. Aug. 21, 2014); *Camden I*, 946 F.2d at 774 ("The majority of common fund fee awards fall between 20% to 30% of the fund.") (citing Newberg, § 2.08 at 51); *see also Camden I*, 946 F.2d at 775 ("We agree with the Tenth Circuit that the [*Johnson* factors] continue to be appropriately used … Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."); *see also David,* 2010 WL 1628362, n.15 (20% to 50% of common fund is "the customary fee in class actions that result in substantial benefits"); *Nelson v. Greater Gadsden Hous. Auth.,* 802 F.2d 405, 409 (11th Cir.1986).

Applying such principles to the instant demonstrates that an award of 30% of the Settlement Fund in this case results in an attorneys' fee that is fair, reasonable, and adequate.

**A.     The Court Should Award Reasonable Attorneys' Fees of 30% of the $10 Million Common Fund.**

When determining the appropriate percentage to award, courts in this Circuit review the twelve *Johnson* factors, which, for convenience, include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012). As explained below, each of these factors supports an award of 30% of the Settlement Fund in this case.

### 1.    The time and labor required.

As set forth above and in the Woodrow Declaration, this case has spanned almost two years and in that time substantial work has been performed—at times at a feverish pace—to accomplish the results embodied in the Settlement Agreement. Class Counsel conducted a substantial pre-suit investigation that included researching GMRS, the scope of its calls, public information shedding light on its dialing equipment and practices, and speaking with dozens of persons who claimed that GMRS had called them. (Woodrow Decl. ¶ 2.) Following this investigation, Class Counsel drafted the pleadings and defended them against GMRS's motion to dismiss and motion to strike. (*Id*. ¶ 3-4.) Thereafter Class Counsel propounded written discovery and vigorously pursued complete answers and responses through a series of letters and telephonic meet and confers. (*Id*. ¶ 5.)

When GMRS requested to mediate the first time, Class Counsel promptly agreed and flew to Florida for a full-day mediation session with Rodney Max. (*Id*. ¶ 10.) Class Counsel tried in good faith to craft a settlement framework but was unsuccessful. (*Id*.) Upon returning to litigation Class Counsel resumed its vigorous pursuit of discovery, including the identities of GMRS's clients and data for surveys regarding out of state calls. (*Id*. ¶ 13.) In light of this second issue, Class Counsel assisted in the drafting and filing of two additional lawsuits covering consumers in California and Pennsylvania, and was further required to work to find alternative named Plaintiffs when the first plaintiff, Melanie Walsh, indicated she could no longer dedicate the time necessary for the successful prosecution of the case. (*Id.* ¶ 14-17.) Thereafter Class Counsel and the Class Representatives responded to discovery propounded by GMRS and continued to pursue discovery from GMRS through two motions to compel. (*Id*. ¶ 19.)

When it became apparent that the Court was going to grant Plaintiffs' Second Motion to Compel and would deny GMRS's motion for protective order, GMRS requested a return to

mediation. (*Id.* ¶ 23.) Class Counsel promptly agreed and traveled to Florida on October 20, 2015 for a second full-day mediation. (*Id.* ¶ 24.) Class Counsel worked during and after the second mediation to reach a resolution, including negotiating the scope of the class, the amount of the claims, the cap on the Settlement Fund, the type of notice and who should bear the costs, and a host of related issues. (*Id*. ¶ 24-25.)

On the eve of reaching an agreement, however, GMRS thought it had discovered substantial additional insurance. (*Id*. ¶ 26.) This turned out to be incorrect—coverage was denied—but not before Class Counsel was required to travel to Florida for a third full-day mediation. (*Id*. ¶ 29.) Following that third session, when it was clear no additional insurance proceeds would be made available to fund the settlement apart from $6 million from Old Dominion, the Parties reached an agreement in principle with respect to the relief to be made available to the Class. (*Id*. ¶ 30.) After reaching that agreement, the Parties attempted with the help of the mediator to negotiate the remaining terms. (*Id*. ¶ 30-31.) While the Parties agreed as to the four incentive awards, they were unable to agree on the fees. (*Id*.) As such, and rather than scuttle the Settlement, the Parties agreed to leave the matter of determining the amount of reasonable attorneys' fees to the Court for a binding decision. (*Id*. ¶ 31.)

Since that time, Class Counsel has finalized the settlement papers, attained preliminary approval, assisted in the launch of the settlement website, responded to hundreds of Settlement Class Members and helped them file claims, and will continue to work to represent the best interests of the Settlement Class, including all steps needed to see the Settlement through to final approval.

Additionally, and as explained both below and in the Woodrow Declaration, Class Counsel has been required to address arguments and positions by GMRS that had little basis in

law or fact but which necessitated substantial hours to discredit and otherwise explain away. And, of course, substantial work remains to be done to address all Class Member inquiries and to otherwise see the Settlement through to completion.

Accordingly, Class Counsel has been required to perform significant work over the past two years investigating, litigating, and settling the claims in this case. An award of 30% of the total Settlement Fund of $10,000,000, or $3,000,000 in reasonable attorneys' fees and costs, fairly and adequately compensates Class Counsel for such work.

### 2.    The novelty and difficulty of the questions.

While TCPA class actions are no longer "new", defense counsel in this case raised a litany of arguments, objections and defenses (see Woodrow Decl ¶ 37-54) that were simply unprecedented. Such arguments required substantial time to refute and included:

- That the TCPA's requirement of "prior express consent" can be satisfied through implied means, including by virtue of the fact that the people GMRS was calling had registered to vote;

- That the TCPA's requirement of "prior express consent" can be satisfied *after* the call is made so long as the called party indicates acceptance of the call;

- That GMRS did not use an autodialer because its automated system eventually connected to a live person;

- That the TCPA is unconstitutional because the calls were political surveys;

- That it wasn't required, despite the case being styled as a nationwide class action, to provide any discovery relating to any calls made to consumers outside of the States of the named plaintiffs—necessitating the filing of two separate lawsuits and two motions to compel discovery (the second of which was ultimately granted in primary part);

- That it had no duty to disclose the clients from whom it obtained prior express consent to call consumers, even though GMRS repeatedly admitted that it relied on these clients to secure such consent and, absent such clients, had no proof of consent;

- That consumers give prior express consent to be called by GMRS when they register to vote, even though nothing is said at that time concerning GMRS or calls from any other company;

- That Plaintiff Armstrong's father's full medical file was relevant to the case;

18

- That Members of Congress and chairpersons of the FCC may be called to testify regarding the meaning and intent of the TCPA;

- That other TCPA class action settlements feature provisions allowing defendants to terminate the agreement if a certain claims threshold is surpassed (Defendant insurer's counsel instructed Class Counsel to review a specific settlement as an example, which Class Counsel did and, as Class Counsel explained would be the case, did not actually contain any such provision);

- Through several failed motions to reconsider, that the Court neglected to consider or "overlooked" GMRS's prior arguments (dkts. 54, 81);

- That there was only $4 million in insurance from Old Dominion, when in reality there was $6 million (on top of potentially an additional $4 million from Mapfre, the claim for which has been denied);

- That it should be entitled to formal discovery related to this request for attorneys' fees; and

- Other novel arguments for which GMRS failed to provide any support, but which required extra effort on the part of Class Counsel to discredit and disprove.

(*Id*. ¶ 37-54.) Put simply, GMRS adopted a defense approach that included the making of several arguments for which GMRS was unable to provide citation to legal authority for support. In addition to being devoid of merit, such arguments demanded time from Class Counsel during meet and confers, through other communications between counsel, and through motion practice to refute. Hence, while in general a TCPA class action does not present novel and difficult issues, each case is different, and here Defendant's chosen strategy simply created new and difficult puzzles that Class Counsel had to work to unpack and solve as the case progressed.

### 3. The skill requisite to perform the legal service properly.

Class actions are complex, are rarely taught in law school, and require special skills to pursue. Here, Plaintiffs' counsel are experienced class action practitioners who brought their particular skill set to bear on this case for the benefit of the absent class members. (*Id*. ¶ 59.) Class Counsel prepared the pleadings, propounded the discovery, pursued the evidence over GMRS's objections, and brought GMRS and its insurer to the negotiating table to achieve the instant Settlement. Accomplishing this against defense counsel that raised numerous novel

arguments, is no easy task; rather, it takes unique skills. (*Id.*) As such, this factor also supports the requested amount of attorney's fees.

### 4. The preclusion of other employment by the attorney due to acceptance of the case.

Plaintiffs' counsel combined expended over 2,400 hours litigating this matter. (*See* Section B, *infra.*) That is time that necessarily was not, and could not have been, spent performing work for other paying clients or on contingency work that carried a better likelihood of return. (*Id.* ¶ 58.) As this was not the only matter the three Plaintiff's law firms could have worked on during this time, the lawyers were precluded from taking on additional work. (*Id.*)

### 5. The customary fee supports an award of 30% of the Settlement Fund.

This factor overlaps with the lodestar analysis (*See* Section B, *infra*) under which Class Counsel's rates are consistent with the market for reasonably comparable practitioners in the Middle District of Florida geographic area. Indeed, as the range of rates spans from $310 to $430,[8] Plaintiffs' counsel's rates fall within the values typically awarded. (Woodrow Decl. ¶ 62; *see also* Report of Attorney John Yanchunis, attached as Ex. C, ¶ 18.) This factor also touches upon factor 12 below, which analyzes awards in similar cases. As such, it favors a 30% award here.

### 6. Whether the fee is fixed or contingent.

Courts reviewing this factor have long held the fact that a fee is contingent "in no way undermines the propriety of an award of attorney's fees." *Oxford v. Beaumont Indep. Sch. Dist.*, No. CIV A 196-CV-706, 2002 WL 34188379, at *5 (E.D. Tex. Dec. 19, 2002); *Nicholson v.*

---

[8] *See Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1310 n.3 (M.D. Fla. 2011) (finding five years ago that "an hourly rate that aligns with the average partner billing rate at a leading firm in the Middle District of Florida ($310 to $435) will more than adequately compensate class counsel") (citing *Campbell v. Green,* 112 F.2d 143, 144 (5th Cir. 1940)).

*Bates,* 544 F. Supp. 256, 259 (E.D. Tex. 1982). Applied here, the fact that Plaintiffs had a contingency agreement with Class Counsel and were not going to be liable for their counsel's attorneys' fees does not in any way undermine the propriety of a fee award of 30%. This factor is therefore generally inapplicable, though it does show risks faced by Class Counsel.

### 7.    Time limitations imposed by the client or the circumstances.

This factor also supports a 30% fee. Given the multitude of objections to discovery and assertion of several defenses, Class Counsel was required to prioritize legal research and drafting and preparation of the motions to compel in this case to ensure that Plaintiff met the case management schedule. As such, to the extent this consideration is applicable it weighs in favor of granting the fees as requested.

### 8.    The amount involved and the results obtained supports a 30% fee.

The next factor, the amount involved and the results obtained, also supports the request or a fee award equal to 30% of the $10,000,000 Settlement Fund. Admittedly, TCPA awards near $20 represent the lower-end of the range of "per claim" recoveries in TCPA settlements, and the claim amount here is $5 short of that mark. *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014), *reconsideration denied sub nom. Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2015 WL 1969094 (N.D. Cal. May 1, 2015); *Arthur v. Sallie Mae, Inc.*, No. 10-CV-00198-JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) ($20 to $40); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015), *appeal dismissed* (Jan. 27, 2016), *appeal dismissed* (Feb. 1, 2016), *appeal dismissed* (Feb. 3, 2016) (Approving attorneys fee award of 36% of Settlement Fund in TCPA class action where Walgreen's, a company with over $75 billion in annual sales, paid TCPA claims of approximately $30 each). *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1346

21

(recovery of between 9% and 45% was "exemplary result"); *see also Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *12 (S.D. Fla. Feb. 3, 2016).

This claim amount should not be used to reduce the requested attorneys' fees here. The TCPA cases where $20 or so have been approved as a claims amount involved defendants such as Bank of America, Sallie Mae, and Capital One—each of which are multi-billion dollar annual operations. (Woodrow Decl. ¶ 60.) GMRS, on the other hand, is a relatively small political survey company whose main asset is an insurance policy. (*Id.*) And it was precisely the insurer who refused to agree to a higher claims amount. (*Id.*) This is because with 688,500 Settlement Class Members, $5 per person would have resulted in additional exposure for the claims in the amount of $3,442,500—a substantial sum considering the policy is only for $6,000,000.

The simple truth is that GMRS faced hundreds of millions of dollars in liability that it could never satisfy. As such, even if Plaintiffs were successful—a fair question given uncertainties in the law and other unknowns—the result would have been bankruptcy, not a recovery for the Settlement Class. (*Id.* ¶ 11.) Yet Class Counsel was able to secure a Settlement that calls for GMRS to pay up to $4,000,000 over the maximum limits of its insurance policy. As such, the Court should find that the results obtained fall within an acceptable range for TCPA Class Action settlements and justifies a fee award of 30%.

### 9.     The experience, reputation, and ability of the attorneys.

When determining whether to approve a class action settlement, a court is to give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa,* 693 F.Supp. 1051, 1060 (M.D. Fla. 1988). This requires that the Court determine that the attorneys involved possess the requisite experience, reputation and skill. Class Counsel are vigorous advocates who routinely litigate class actions

under the TCPA. (Woodrow Decl. ¶ 59.) Indeed, and although this factor is generally subsumed by consideration of Class Counsel's lodestar, without belaboring the point, Class Counsel are experienced class action attorneys and consumer advocates who prepared all of the pleadings and other filings in this case, and achieved the instant settlement, using a high level of competence and skill. (*Id.*) As such, this factor supports awarding the fees as requested.

**10.     The "undesirability" of the case.**

This factor generally applies in civil rights case, though the undesirability of the case also supports awarding fees of 30% here. GMRS was committed to fighting the case vigorously and, at the time the case was filed, several questions remained regarding the ability of companies like GMRS to make autodialed calls to cellphone users. (*Id.* ¶ 58.) Furthermore, at the time the case was filed there was no guarantee of payment by any means—it was totally unknown whether GMRS would have insurance to cover the claims at issue and GMRS itself appeared unable to commit serious funds to any type of resolution. (*Id.*) As such, this factor also supports granting 30% of the Settlement Fund as attorneys' fees.

**11.     The nature and length of the professional relationship with the client.**

This factor supports granting the requested attorney's fees. Plaintiffs' counsel has not previously represented Martin, Armstrong, Thompson or Zilveti such that a special, prolonged professional relationship exists to suggest that compensation in this case may be reduced because future fees from the plaintiffs are all but guaranteed. (*Id.* ¶ 65.) That is, it is likely that after this litigation, the named plaintiffs will not be repeat clients (unless they fall victim to some other consumer claim that warrants a class action). (*Id.*) Given the temporary nature of the professional relationship, this is not the type of case where the Plaintiffs' lawyers would have litigated the matter *pro bono* or at a significant discount given their close ties to the client. Rather, Plaintiffs'

counsel took the case on contingency in the hopes that some amount of attorneys' fees would be recovered but it was not guaranteed. (*Id.* ¶ 66.)

As such, this factor weighs in support of awarding the requested fees as well.

### 12. Awards in similar cases

The next factor, which reviews awards in similar cases, supports awarding 30% of the Settlement Fund as attorneys' fees here. Indeed, TCPA class action settlements are approved routinely where the attorneys' fees are one-third (33%), which is higher than the 30% requested. *See Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 15-2485, 2016 WL 611441, at *3 (3d Cir. Feb. 16, 2016) (unpublished decision) (affirming award of one-third of reversionary settlement fund in TCPA class action settlement where requested fees were twice the amount of class counsel's lodestar); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in TCPA class action settlement against AT&T); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding 33% of common fund in multimillion dollar TCPA class action); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount."); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (Approving fees in TCPA settlement representing "34% of the actual fund available to Class Members."); *Kolinek*, 311 F.R.D. at 501 (awarding 36% of common fund in TCPA class action

settlement); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 9413143, at *1 (W.D. Ky. Dec. 22, 2015) (approving one-third of fund as attorney's fees).

Indeed, a fee award of 30% of the Settlement Fund is consistent with awards approved in consumer class actions more generally, including those outside the TCPA sphere. *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (explaining that an attorney's fee of 33% is "entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I.*") (collecting cases); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (approving award to Class Counsel 30% of the fund in Seaman's Wage Act class action settlement); *Waters*, 190 F.3d at 1295 (affirming award of "33 1/3%, or $13,333,333 of $40 million fund" in commodities fraud class action settlement); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1359 (approving an award of 30% of the Settlement Fund); ); *In re Greenwich Pharm. Sec. Litig.*, CIV. A. 92-3071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) at *6–7 (awarding fee of 33.3%); *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 341 (E.D. Pa. 2007) (approving a 35% award for a $39,750,000 common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2015 WL 1399367, at *4 (N.D. Ill. Mar. 23, 2015) (awarding plaintiffs' counsel thirty percent of the first ten million dollars of the settlement).

Accordingly, this factor also supports an award of 30%.

> **13.    Other considerations, including the non-monetary benefits and the economic realities of the case and settlement, support an award of 30% as reasonable attorneys' fees.**

The Eleventh Circuit recently reaffirmed in *Poertner v. Gillette Co.* that class counsel's fee award should also be based on consideration of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." 618 Fed. App'x at 629 (citation omitted). Considered here, the non-economic impacts of the litigation and settlement plainly support a fee award of 30%.

This lawsuit has completely transformed GMRS's business practices with respect to calling cellphones. Whereas prior to the case GMRS autodialed cellphones and landlines alike, GMRS now employs technology designed to identify cellphone numbers and segregate them out so that GMRS can manually dial them. (*See* Ex. A § 2.2.) Moreover, the Settlement Agreement specifically empowers claimants to check a box ensuring that they will never be called by GMRS again—even via manually dialed calls. (*Id.* § 2.3.) As such, the lawsuit has brought GMRS's policies and procedures into compliance with the law and the Settlement Agreement goes beyond that by allowing claimants to ensure they will not be called in the future.

The economic realities also support a fee award of 30%. The Settlement Fund is backed largely by $6 million in insurance from Old Dominion Insurance Company—coverage that Class Counsel did not know would be available before the suit was filed. A 30% award ensures that competent plaintiff's lawyers are sufficiently incentivized to bring these types of cases.

As such, going beyond the common fund of $10,000,000 shows that a fee award of 30% is firmly supported by the non-monetary benefits and economic realities of the case.

**B.    Even if the Court Were to Consider Class Counsel's Lodestar, the Time Invested in the Case Supports the Requested Attorneys' Fees.**

Though it is well settled that the lodestar method is not to be used in the Eleventh Circuit, it has been observed that, "some courts [in other circuits] use the lodestar method as a cross-check of the percentage of the fund approach." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323,

1336 (S.D. Fla. 2001) (*citing Ressler,* 149 F.R.D. at 653 n. 4. (collecting cases)); *Pinto*, 513 F.

Supp. 2d at 1343 ("Some courts use the lodestar method as a cross-check of the percentage of the

fund approach."). Even when reviewing the lodestar, however, the Court must remain "mindful

of the fact that this cross-check is not to be used as a backdoor avenue of using the lodestar

method instead of the percentage of the fund method." *In re Sunbeam Sec. Litig.*, 176 F. Supp.

2d at 1336.

Applied here, only a 2.71 multiplier is necessary to justify the requested attorneys' fees.

Class Counsel expended over 2,600 hours investigating the claims, litigating the case and

negotiating the Settlement Agreement for a current lodestar of $1,046,153 (in addition to

$28,427.14 in current out of pocket expenses). Broken down by each lawyer who worked on the

case, the hours spent per attorney and the law clerks are as follows:

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow/ Woodrow & Peluso | Partner | $430 | 1,026.2 | $441,266.00 |
| Patrick Peluso/ Woodrow & Peluso | Partner | $330 | 884.4 | $291,852.00 |
| Stefan Coleman/ Law Office of Stefan Coleman | Partner | $450 | 692.7 | $311,715.00 |
| Law Clerk Rate/WP | Paralegal | $100 | 13.2 | $1,320.00 |
| **CURRENT LODESTAR** | | | 2,616.50 | $1,046,153.00 |

(Woodrow Decl. ¶ 57; Coleman Decl., attached as Ex. B-2 to Group Ex. B, ¶ 12.) The time spent

is reasonable given the work that was needed to investigate the claims (which involved

interviewing dozens of individuals to get a sense of GMRS's violations), draft all pleadings,

discovery and motions, research myriad legal issues—many of which were necessitated by

GMRS's novel arguments (*See* III.A.2, supra; *see also* Woodrow Decl. ¶ 37 – 54)—and engage

in the mediation process. The time spent additionally includes work and research performed related to this Motion for Attorneys' Fees.[9]

    At this point, the firms comprising Class Counsel estimate that between $50,000 and $75,000 of additional attorneys' time will be required to finalize the Settlement, including preparing all documents for the fairness hearing and shepherding Settlement Class Members through the claims process. (*Id.* ¶ 64.) As such, Class Counsel projects that the final lodestar will likely range between $1,096,153 and $1,121,153.00. (*Id.*) This is in addition to Class Counsel's current expenses of $28,427.14. Taking the lower end of the range ($1,096,153) and dividing it by the 30% of the Settlement Fund ($3,000,000) in requested fees and expenses, the resulting multiplier is 2.71 (2.71 = ($3,000,000- $28,427.14)/$1,096,153), which is fairly typical. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 n.4 (M.D. Fla. 1992) ("[C]ourts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken.") (collecting cases). And only the current lodestar is considered, the multiplier needed is only 2.71—a value well within the generally approved range.

    Furthermore, Class Counsel's rates are reasonable and commensurate with rates charged in the Middle District of Florida. And as Judge Merryday has explained, "[t]he court ... is itself

---

[9] After the Parties agreed that Class Counsel would submit the issue of attorneys' fees to the Court for a binding decision, Defense Counsel indicated that he wanted to propound fees-related discovery. (Woodrow Decl. ¶ 53.) Class Counsel objected to this late request and indicated that such discovery would be premature in any case. (*Id.*) On June 8, 2016—and despite the fact that under the Settlement Agreement the case is to be stayed pending the Court's decision on whether to grant final approval to the Settlement—GMRS served discovery seeking Class Counsel's billing records and other burdensome discovery. (*Id.* ¶ 54.) Plaintiffs object to such discovery as premature and unnecessary. (*Id.* ¶ 53.) To the extent the Court desires Class Counsel's time records, they will be provided to the Court and GMRS for *in camera* review. (*Id.* ¶ 56.)

an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." *Holman*, 778 F. Supp. 2d at 1310 n.3 (explaining five years ago that "an hourly rate that aligns with the average partner billing rate at a leading firm in the Middle District of Florida ($310 to $435) will more than adequately compensate class counsel") (citing *Campbell v. Green,* 112 F.2d 143, 144 (5th Cir. 1940).[10] Class Counsel's rates generally fall within this range, and Mr. Coleman's rate is merely $15 per hour higher than that approved 5 years ago for partners.

The reasonableness of the rates and time spent is further supported by the Declaration of Attorney John Yanchunis. Mr. Yanchunis is a well-respected member of the bar in the Middle District of Florida and is very familiar with the rates commanded by class action practitioners in this jurisdiction. (Yanchunis Report, Ex. C.) As detailed in report, he has reviewed the docket in this case, key filings and orders, and Class Counsel's time records. (*Id*. ¶ 18.) In his opinion, the hourly rates charged by Class Counsel are within the range of those charged in the market for the Middle District of Florida and Class Counsel spent a reasonable amount of time litigating the case. (*Id*.) As such, the Court need not rely on its knowledge exclusively—the Yanchunis Report further supports an award of 30% of the $10,000,000 Settlement Fund.

## C.   The Court Should Approve Class Counsel's Out-of-Pocket Expenses of $28,427.14.

The firms serving as Class Counsel in this Settlement have expended a total of $28,427.14 on filing fees, travel expenses, and mediation fees (including thousands of dollars for each of the three mediation sessions). (Woodrow Decl. Ex. 2; Coleman Decl. Ex. 1B.) Class

---

[10] *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (adopting each opinion of the former Fifth Circuit Court of Appeals decided on or before September 30, 1981).

Counsel expended these monies without a guarantee of repayment. As such amounts are reasonable and were necessary to litigate the case and consummate the Settlement, the Court should have little trouble approving them.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court should grant Class Representatives' and Class Counsel's request for reasonable attorneys' fees. The request equals 30% of the Settlement Fund and requires only a 2.71 multiplier under a lodestar crosscheck. As such, the Court should reject GMRS's objections to the amount sought, deny its request for attorneys' fees related discovery—which will simply result in the expenditure of additional time (and thereby increasing the lodestar)—and grant Class Counsels' request for 30%.

WHEREFORE, Class Representatives and Class Counsel respectfully request that this Honorable Court grant their request for 30% of the $10,000,000 Settlement Fund as an award of reasonable attorneys' fees and award such additional relief as the Court deems necessary, reasonable, and just.

Dated: July 1, 2016

**ROBERT MARTIN and KRISTEN ARMSTRONG**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

*Pro hac vice*

Stefan L. Coleman, Esq., Florida Bar no. 0030188

30

LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
law@stefancoleman.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 1, 2016, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.


/s/ Steven L. Woodrow

31