# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, | Case No. 6:14-cv-1290-GAP-KRS |
| *Plaintiffs,* | CLASS ACTION |
| v. | |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, and JOHN DOES 1-100, | |
| *Defendants.* _____/ | |

**DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND EXPENSES**

I, John A. Yanchunis, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am an attorney duly admitted to practice law in the state of Florida and I have been permitted to appear in this Court. I was admitted to practice law in Texas in 1980 and Florida in 1981. I practice in the area of consumer class actions, and I have focused my practice in this area for the past 19 years. Previously, I specialized in complex business litigation, ranging from the representation of financial institutions to Fortune 500 companies. I also represented insurance companies in insurance coverage disputes, and was counsel for a very large insurance company handling coverage litigation for asbestos and environmental claims in the southeast United States. In one case in particular, I was lead counsel for 5 insurance companies in a multi-year trial, where my client faced exposure for asbestos coverage in excess of a billion dollars. The case lasted 18 years through appeals.

2. I maintain my practice in Morgan & Morgan's Complex Litigation Group and lead the National Consumer Class Action section. Morgan & Morgan is the largest exclusively plaintiffs law firm in the state of Florida and one of the largest in the United States, employing over 300 lawyers and 1,600 support staff in offices throughout Florida, Georgia, Mississippi, Tennessee, Kentucky, Alabama and New York.

3. Prior to joining Morgan & Morgan in 2011, I was a senior partner at James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A., where I managed the firm's nationwide consumer class action department.

4. Before entering private practice in 1982, I served for two years as a law clerk for the Honorable Carl O. Bue, Jr., a United States District Judge in the Southern District of Texas in Houston, Texas.

5. I have extensive involvement in class action litigation. I have served as co-lead counsel in the successful prosecution of the two largest class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, Case No. 03-61063-JEM (Fresco I), and *Fresco v. R.L. Polk*, Case No. 0:07-cv-60695-JEM (Fresco II) (Southern District of Florida). Additionally, I serve today and have served in the past as lead, co-lead, or class counsel in numerous class actions in a wide variety of areas affecting consumers, including but not limited to, anti-trust, defective products, life insurance, annuities, privacy, breach of contract, civil rights and unfair and deceptive acts and practices. I am have also successfully litigated class cases under the Telephone Consumer Protection Act (TCPA), including obtaining an order certifying a contested class before Judge Jed S. Rakoff, a United States District Judge in the Southern District of New York, and then upholding the order on appeal before the Second Circuit Court of Appeals . I presently serve as counsel for the class in several pending cases under the TCPA.

6. Presently, I serve also as co-lead counsel, liaison counsel, and a member of the executive committee on many MDLs class cases throughout the country.

7. Beginning in 2005, and while maintaining a private law practice, I served as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators in the state of Florida) in their investigations of the insurance industry over issues concerning possible antitrust activity, and other possible unlawful activity and activities regarding the payment of undisclosed compensation to insurance brokers. The litigation and these investigations resulted in millions of dollars in restitution being paid to Florida consumers, and also resulted in significant changes in the way commercial insurance is sold in the state of Florida and across the country.

8. I lecture frequently regarding class litigation, including on the issues of attorneys' fees in class litigation, and I have served as an expert to The Florida Bar on the topic of the ethical obligations of class counsel in class action litigation.

9. I have been honored with the prestigious "AV" rating by Martindale-Hubbell. A copy of my resume is attached as composite Exhibit "1."

10. I have previously testified and been regarded as an expert on attorneys' fees in other class action litigation and have been asked to review pertinent file materials in this case to provide my opinion as to the reasonableness of the petition of Class Counsel's fees and litigation costs presently pending before the Court. Moreover, I am up to date on the orders entered on attorneys' fee applications in TCPA class cases as, stated earlier, I am actively litigating class cases under the TCPA.

11. The requested amount of attorney's fees are reasonable under either the lodestar or the so-called "common fund" or "common benefit" approach. See *Dikeman v. Progressive*

*Exp. Ins. Co.,* 312 Fed. Appx. 168, 172 (11th Cir. 2008) ("Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve [Johnson] factors … to determine the appropriate statutory fee or the percentage to be utilized."). These factors include:

   a. The time and labor required;
   b. The novelty and difficulty of the question involved;
   c. The skill required to perform the legal service properly;
   d. The preclusion of other employment by the attorney as a consequence of his involvement in the case;
   e. The customary fees;
   f. Whether the fee is fixed or contingent;
   g. Time limitations imposed by the client or the circumstances;
   h. The amount involved and the results obtained;
   i. The experience, ability, and reputation of the attorney;
   j. The "undesirability" of the case;
   k. The time required to reach settlement;
   l. Fee awards in similar cases;
   m. The nature and length of the relationship with the client;
   n. Whether there are substantial objections by class members or other parties to the settlement terms or the fees requested;
   o. Any non-monetary benefits conferred on the class by the settlement;
   p. The economics of prosecuting a class action; and
   q. Additional unique factors.

12. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 718 (5th Cir. 1974). See also, *Camden Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). In my opinion, most of these factors that are applicable to this litigation favor the award of the requested fee.

13. These cases in this Circuit addressing these factors indicate that the single most significant factor in a common fund or common benefit case is the extent and degree of relief achieved and the benefit conferred upon the class. Although the Johnson factors are applicable and should be reviewed by both the Court and counsel for purposes of the fee application, the contingent nature of the representation, the difficulty of the some of the questions addressed and the professional skill required to address those questions, the economics involved in prosecuting

a class action, the preclusion of other employment, and the results achieved for the class are significantly more important than several of the other Johnson factors, specifically including the mere accumulation of professional hours.

14.     Considering the results obtained and the fees awarded in similar cases, it is my opinion that the fee request of $3,000,000.00 is reasonable. Counsel's request amounts to approximately 30% of the total monetary benefit that has been conferred to class members. Although there is no set rule governing what constitutes a reasonable fee, I am aware of cases in the Eleventh Circuit that have routinely awarded fees equal to or exceeding the percentage being requested in this case.  It is further my experience that Judges in this Circuit commonly approve fee awards of 33.33% in similarly complex matters.  See, e.g., *Columbus Drywall*, 2012 WL 12540344, at *6, n.6 (collecting cases and noting that "[a] review of common fund cases confirms that courts in the Eleventh Circuit and others have awarded percentages equal to and in some cases more than [33 -1/3 % of fund]"); c.f. *In re Friedman's, Inc. Sec. Litig.*, 1:03-CV-3475WSD, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009) ("While there is no set rule governing what constitutes a reasonable fee, common fund cases in district courts in the Eleventh Circuit have awarded fee percentages within a range close to the 30% requested here.")[1].

---

[1] See, e.g., see also *Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 628 (11th Cir. 2015), cert. denied sub nom. *Frank v. Poertner*, 136 S. Ct. 1453 (2016)) (applying *Camden I*) (specifying typical range of attorney fee in common fund cases); *Almanzar v. Select Portfolio Servicing, Inc.*, 1:14-CV-22586-FAM, 2016 WL 1169198, at *4 (S.D. Fla. Mar. 25, 2016) ("[F]ederal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases.") (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1210 (S.D.Fla.2006)); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33-1/3% attorneys' fee from common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-SEITZ 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) (awarding 33-1/3% of $72.5 million settlement fund in class action); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at **11-17 (D.N.J. Nov. 9, 2005) (awarding 33-1/3% of $75 million settlement fund in class action); *In re Busporine AntitrustLitig.*, No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003) (awarding 33-1/3% of $220 million settlement fund in class action); *In re Relafen*

15. The level of complexity of this case warrants approval of the Class Counsel's Application.

16. Class litigation is by its very nature highly complex case deserving of special consideration of the fee application. C.f. *In re Chicken Antitrust Litig.*, 560 F. Supp. 963, 969 (N.D. Ga. 1980) (noting that improper approach to fees "may reward inefficiency and penalize efficiency"). As the pleadings and motions practice occurring in this case bear out, the subject matter of this case is unusually complex, dynamic and was hard fought. Some of the issues which were litigated in this case typically do not arise in TCPA class cases. These issues required Class Counsel to extend time and considerable effort to meet those issues.

17. This case was brought on a contingency basis and class counsel and compensation for their representation was far from certain. In an ever changing landscape of class litigation, the challenges in successfully litigation a class case, particularly under the TCPA where businesses constantly challenge the FCC's interpretation of the law, and when opinions are issued adverse to their interest, appeal those interpretations to the Circuit Court for the District of Columbia.

18. Consumer Plaintiffs filed three around the country, and eventually the parties counsel decided to focus their efforts in the case before this Court. Class Counsel devoted

---

*Antitrust Litig.,* No. 01-12239-WGY (D. Mass. Apr. 9, 2004) (awarding 33-1/3% of $175 million settlement fund); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) (awarding approximately 33-1/3% of $365 million settlement fund in class action); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1131-41 (W.D. La. 1997) (awarding 36% of $127 million common fund in complex case); *In re Apollo Group Secs. Litig.*, 2012 U.S. Dist. LEXIS 55622, at **24-25 (D. Ariz. Apr. 20, 2012) (awarding 33-1/3% of $145 million settlement; upward departure warranted due to exceptional result in extremely risky and lengthy case); *In re Wellbutrin XL Antitrust Litig.,* No. 2:08-cv-2431, slip op. at 8 (ECF No. 485) (E.D. Pa. Nov. 7, 2012) (awarding one-third fee on settlement of $37.5 million); *In re Metoprolol Succinate Antitrust Litig.*, No. 06-52-MPT, slip op. at 9 (ECF No. 194) (D. Del. Feb. 21, 2012) (awarding one-third fee on settlement of $20 million); *Rochester Drug Coop, Inc. v. Braintree Labs., Inc.*, C.A. No. 07-142-SLR, slip op. at 9 (ECF No. 243) (D. Del. May 31, 2012) (awarding one-third fee on settlement of $17.5 million).

2,452.2 hours and significant resources to date to this case, with no certainty that their costs would be recovered. I reviewed class counsels' billing records and it is my opinion that the time expended by them is reasonable and reflects the time necessary to litigate this case. Their hourly rates are also reasonable in connection with what lawyers practicing in this are charge and are awarded for their efforts. My opinion is based upon my own practice in this area, my conversations with lawyers from other firms who practice in this area, and my review of opinions in other cases awarding attorneys' fees and surveys of billing rates of lawyers from around the country , which surveys are published annually by the National Law Journal

19. Public policy and class action jurisprudence widely favor awarding fees to attorneys who achieve a meaningful resolution of complex and costly litigation and courts have routinely recognized that attorneys who act as a private attorneys general to right a perceived wrong are vital to the enforcements mechanisms and objectives of the law.  Likewise, courts across the nation agree that appropriate awards of attorneys' fees encourage lawyers to take cases that seek redress for wrongs as a means to discourage others from the same alleged misconduct. Class Counsel agreed to prosecute this case on an entirely contingent basis and in so doing, assumed significant risk of investing their time, efforts and money with no promise of a recovery.

20. Class Counsel's request for litigation costs is reasonable. In the course of my practice, I am also familiar with the litigation costs associated with complex  class litigation such as this.  Given the complexity, activity, and number of lawyers involved in this litigation, the case expenses reported by Class Counsel in the approximate amount of $ 28,427.50 appear usual and customary in type, and are less than I would ordinarily expect in amount.  This suggests to me that Class Counsel have been efficient and cost-conscious in the prosecution of this matter.

Class Counsel's limiting request for reimbursement of $28,427.50 in litigation cost is very reasonable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of July, 2016 at Tampa, Florida.

_____
John A. Yanchunis, Esq.

# EXHIBIT 1

***John A. Yanchunis***   Mr. Yanchunis practices in Morgan & Morgan's Complex Litigation Group and leads the National Consumer Class Action section.  Morgan & Morgan is the largest plaintiffs' law firm in the country with approximately 300 lawyers practicing in 7 states.   Before entering private practice in 1982, Mr. Yanchunis served for two years as a law clerk for the Honorable Carl O. Bue, Jr., a United States District Judge in Houston, Texas.

Mr. Yanchunis is highly regarded nationally for his extensive involvement in class action litigation.  He has extensive experience in multi-district class action litigation,  and is presently co-lead counsel in *In re: Home Depot, Inc., Customer Data Security Litigation,* Case 1:14-md-02583-TWT (N.D. Ga.), liaison counsel in *In re: Ford Fusion and C-Max Fuel Economy Litigation,* 7:13-md-2450-KMK (S.D.N.Y.), and a member of the Five-member Executive Committee  in *In re: Target Corporation Customer Data Security Breach Litigation,* MDL No.: 2522 (PAM/JJK) (D. Minn.).

He was co-lead counsel in the successful prosecution of perhaps the two largest class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, Case No. 0:03-cv-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, Case 0:07-cv-60695-JEM (S.D. Fla.). These cases were filed against the world's largest data and information brokers, Experian, R.L. Polk, Acxiom, Reed Elsevier (which owns LexisNexis) and others to protect the important privacy rights of consumers.

Additionally, he has served as lead, co-lead, or class counsel in numerous class actions in a wide variety of areas affecting consumers, including but not limited to anti-trust, defective products, life insurance, annuities and deceptive and unfair acts and practices.

Mr. Yanchunis was assigned the role of lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators in the state of Florida) in their investigation of the insurance industry for possible antitrust activity and for other possible unlawful activity regarding the payment of undisclosed compensation and commissions to insurance brokers.  The litigation and investigations yielded millions of dollars in restitution for Florida consumers and changed the way commercial insurance is sold in the state of Florida and other parts of the country.

Before restricting his practice to class action litigation 19 years ago, Mr. Yanchunis had a diverse career as a trial lawyer ranging from the representation of contractors, engineers and architects in construction litigation, financial institutions in general and lender liability litigation, and representing creditors and  creditors' committees  in large complex bankruptcy cases. Additionally ,  he served as counsel for the largest general liability insurance companies in environmental and asbestos coverage litigation in the Southeastern United States , and was  lead counsel for 5 of the 42 insurance companies in one of the largest coverage cases which took several years to try to conclusion.

Mr. Yanchunis has represented The Florida Bar in many capacities. He has served as an expert for The Florida Bar in the area of class actions and ethics, and also served as special counsel in the prosecution of individuals for The Unauthorized Practice of Law, often leading to criminal contempt proceedings.

Mr. Yanchunis is actively involved in his profession. Because of his work in the area of consumer protection, he was appointed to the position as Chair of The Florida Bar's Consumer Protection Law Committee. He was appointed by the Florida Supreme Court to serve as a member of The Florida Board of Bar Examiners (FBBE), in which he served from 1997 to 2002, and he has annually been re-appointed by the Court to serve as an Emeritus Member where he participates on character and fitness panels of bar applicants and serves as an arbiter at final hearings.

Mr. Yanchunis frequently lectures around the United States on topics related to class actions.

Mr. Yanchunis also served as a member of the Board of Directors for The Florida Bar Foundation, and is a Fellow of The Florida Bar Foundation. He served as Chairman of the Special Commission on Multi-Jurisdictional Practice, and was a member of the Special Committee on the Enhancement of the Practice of Law. Mr. Yanchunis was an elected to the Board of Governors (BOG) of The Florida Bar, and was involved with many subcommittees of the BOG, including the Budget Committee, Multi-Disciplinary Practice Committee, and Board Review Committee on Professional Ethics. He has served on The Florida Bar's Ethics Committee, Standing Committee on Simplified Forms where he was a member and Vice Chairperson, and the Task Force on the Unlicensed Practice of Law. He has served as Chairperson, Vice Chairperson, and a member of the Standing Committee on the Unlicensed Practice of Law. Mr. Yanchunis is a former member of the Standing Committee on Professionalism, the Continuing Legal Education Committee, the Public Relations Committee, and the Board of Governors of Young Lawyers Division of The Florida Bar, Sixth Circuit Representative. He was a member and the Chairperson of the 6A Circuit Committee for the Unlicensed Practice of Law and the Chairperson of the 6B Circuit Committee and a member of the Supreme Court of Florida's Judicial Management Council.

In the community, Mr. Yanchunis served as a member of the Elder Law Board, College of Law and the Center for Excellence in Elder Law – Stetson University College of Law, served as Vice President of the St. Vincent de Paul Society, St. Petersburg Downtown Conference, was a National Council Member and Council Representative for the Boy Scouts of America, served in the West Central Family Council of the Boy Scouts of America as Council President, and was the Skyway District Chairman. Mr. Yanchunis presently serves as a member of the Executive Committee of the West Central Florida Council of the Boy Scouts of America. For his services as a Boy Scout Leader, Mr. Yanchunis received the Silver Beaver award and the District Award of Merit .

Mr. Yanchunis served as both a member and an officer of the Board of Directors of the FBI Tampa Bay Citizens' Academy Alumni Association, and completed Leadership St. Pete, sponsored by the St. Petersburg Chamber of Commerce.

Mr. Yanchunis is a member of The Florida Bar. Additionally, he is admitted to the United States Supreme Court; the United States Courts of Appeal for the Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits; the United States District Courts for the Southern, Northern and

Western Districts of Texas; the United States District Courts for the Eastern and Western Districts of Wisconsin; the United States District Court for the Middle and Southern District of Florida; the United States District Court for the Eastern District of Michigan; the United States District Court for the Western District of Kentucky; the United States District Court for the Northern District of Illinois; the United States District Court for the District of Connecticut, and the United States District Court for District of Colorado.

In 2005, the Elder Law Section of The Florida Bar awarded him its Chair's Honor Award for Mr. Yanchunis' handling with Jill Bowman of a class action against the state of Florida for violations of federal law in failing to deliver a benefit under Medicaid to approximately 41,000 poor elderly residents of nursing homes in Florida. The case resulted in the state of Florida's funding the delivery of dental and ocular care for the elderly in nursing homes , as well as enabling the elderly to purchase Medicare gap coverage to pay for physicians who would not take Medicaid patients because of the low reimbursement rates . He is also the recipient of The Florida Bar Foundation President's Award for Excellence for his outstanding leadership in promoting the Foundation's mission to help provide legal assistance for the poor.

Mr. Yanchunis has been honored with the prestigious "AV" rating by Martindale-Hubbell.  He has been continuously recognized as a Florida Super Lawyer.

Mr. Yanchunis received his Bachelor's degree from the University of Florida . While at the University of Florida he was a member of Florida Blue Key and Omicron Delta Kappa.  He received his Juris Doctor degree from  South Texas College of Law where he attended school at night while working full time during the day. He graduated *magna cum laude*. During law school, Mr. Yanchunis was a member of the Order of the Lytae and was Associate Editor-in-Chief of the *South Texas College of Law Journal*.