## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, | Case No. 6:14-cv-1290-ORL-31-KRS |
| *Plaintiffs*, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, | |
| *Defendant*. | |

## <u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iv

RELIEF REQUESTED ......................................................................1

STATEMENT OF THE BASIS FOR RELIEF REQUESTED ............................1

MEMORANDUM OF LAW ..................................................................2

I.     INTRODUCTION..........................................................................2

II.    NATURE OF THE LITIGATION ....................................................4

     A.    GMRS's Political Survey Calls to the named Plaintiffs
           and Settlement Class Members............................................4

     B.    Early Litigation and the Parties' First Mediation ...................5

     C.    The Return to Litigation .................................................5

     D.    The Court Grants Plaintiffs' Second Motion to Compel and the
           Parties Return to Mediation ............................................7

     E.    GMRS Discovers Additional Potential Insurance Coverage and the
           Parties Return for a Third Full-Day Mediation Session ...................8

     F.    GMRS's Position .........................................................9

III.   SUMMARY OF THE PROPOSED SETTLEMENT ..............................10

     A.    Class Definition .........................................................10

     B.    Individual Class Member Benefits ....................................10

          1.    Cash Payments ..................................................10

          2.    Prospective Business Assurances............................11

          3.    Class Member List Removal Requests.......................11

     C.    Payment of Notice and Administrative Fees ........................12

     D.    Compensation for the Class Representatives ........................12

     E.    Payment of Reasonable Attorneys' Fees and Expenses...................12

F.     Release ................................................................................................13

IV.     **THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL** ...........................13

A.     **The Likelihood of Success at Trial** ......................................................15

B.     **The Range of Possible Recovery** .........................................................16

C.     **The Point on or Below the Range of Possible Recovery at Which Settlement is Fair, Adequate and Reasonable** ......................................................16

D.     **The complexity, expense and duration of the litigation favors settlement** ..........................................................18

E.     **The Substance and Amount of "Opposition" to the Settlement Favors Approval of the Settlement Agreement** .................................................20

F.     **The Stage of Proceedings Favors Approval as Well** .........................21

G.     **The Settlement was Achieved with the Help of a Respected Mediator who Ensured the Negotiations Were Free of Any Collusion** ....................................21

V.     **THE NOTICE PLAN SATISFIED DUE PROCESS** .................................................22

**CONCLUSION** ...........................................................................................................23

# TABLE OF AUTHORITIES

*Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-00248 (S.D. Cal. 2012)..........................18

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ...........................................15

*Ault v. Walt Disney World Co.*, 692 F.3d 1212 (11th Cir. 2012)..................................................13

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993).....................................................................20

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ......................................................13, 14

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)..........................................................................14

*Estrada v. iYogi, Inc.*, 2015 WL 5895942 (E.D. Cal. 2015)..........................................................17

*Gehrich v. Chase Bank USA, N.A.*, 2016 WL 806549 (N.D. Ill. 2016)........................................17

*Green v. Serv. Master*, 2009 WL 1810769 (N.D. Ill. 2009) .........................................................15

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)......................................................20

*In re Sunbeam Securities Litig.*, 176 F.Supp.2d 1323 (S.D. Fla. 2001)........................................14

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ...........................................................14

*Kolinek v. Walgreen Co.*, 1:13-cv-04806 (N.D. Ill.).....................................................................17

*Rinky Dink v. Elec. Merchant Sys., et al.*, 13-cv-01347 (W.D. Wash. 2016) ...............................17

*Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312 (N.D. Ill. 2008).....................15

*Steinfeld v. Discover Fin. Servs.*, 12-cv-1118 (N.D. Cal. 2014)...................................................18

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo. 2011) ...........................15

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011) ........................15

## STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES

Fed. R. Civ. P. 23...........................................................................................................................1

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*............................................ *passim*

Alba & Conte, 4 Newberg on Class Actions, §11.25 (4th Ed. 2002) ...........................................14

David F. Herr, Annotated Manual for Complex Litigation, § 21.632 (4th ed. 2004)....................14

Plaintiffs Robert Martin, Kristin Armstrong, Nicole Zilveti, and Alicia Thompson, by and through their undersigned counsel, in accordance with Federal Rule of Civil Procedure 23, respectfully move this Court for an order granting final approval to the class action Settlement Agreement[1] reached in this matter (*see* "Settlement Agreement," a true and accurate copy of which is attached hereto as Ex. A).

The Settlement Agreement, which was reached only following extensive negotiations overseen by a nationally-respected mediator, provides substantial relief—both monetary and non-monetary—to Class Members. As the Settlement represents the best result for the Settlement Class, the Court should grant final approval and approve the Settlement in its entirety.

In support, Plaintiffs submit the incorporated memorandum of law, stating as follows:

### RELIEF REQUESTED

Grant final approval of the Parties' class action Settlement Agreement.

### STATEMENT OF THE BASIS FOR RELIEF REQUESTED

1.      The Parties, with the help of nationally-respected mediator Rodney Max, reached a class action settlement agreement that would resolve the claims at issue in this case on terms highly favorable to Settlement Class Members.

2.      This is a proposed class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. Plaintiffs claim that Defendant Global Marketing Research Services, Inc. ("GMRS") made unlawful cellphone calls when GMRS conducted its political surveys.

---

[1] Unless otherwise specified, capitalized terms have the same meanings as those set forth in the Definitions section of the Settlement Agreement. (*See* Ex. A.)

1

3.      The Parties have reached a strong settlement that provides a fund of up to $10,000,000 USD for the payment of claims to over 688,500 Settlement Class Members (who, through the submission of a simple claim form, will receive a payment of $15). The Settlement also provides impressive prospective relief—including a term allowing Class Members to check a box to ensure that GMRS never calls them again (even using a live operator)—and requiring GMRS to pay the notice and administrative costs, class member incentive awards, and reasonable attorneys' fees to proposed Class Counsel (to be decided by the Court).

4.      As explained below, the case and the Settlement Agreement readily meet each of the considerations courts analyze when determining whether to grant final approval, which is warranted here because the Class, for settlement purposes only, satisfies the requirements of class certification, and the relief obtained through the Settlement Agreement is fair, reasonable, and adequate relief given the nature and complexity of the case and the ability of the Defendant to finance a resolution.

5.      As such, for all of the reasons set forth herein, the Court should grant final approval to the attached Settlement Agreement.

## MEMORANDUM OF LAW

## I.      INTRODUCTION

The instant class action settlement seeks to resolve claims challenging Defendant's practice of making telephone calls to consumers' cellphones using an automatic telephone dialing system ("ATDS") without prior express consent. That is, named Plaintiffs Martin and Armstrong and the named Plaintiffs in two similar class actions against GMRS,[2] filed class

---

[2] The two similar actions are *Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW (N.D. Cal.) (California-only class), and *Thompson v. Global Marketing Research Services, Inc.*, previously case no. 2:15-cv-03576-AB. (E.D. Pa.) and re-assigned following transfer to the

actions asserting that Defendant's political survey calls to cellphones were made without prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and that, therefore, Plaintiffs and similarly-situated consumers are entitled to statutory damages.

During the course of this litigation, counsel for GMRS, a Florida corporation, began discussing settlement with Class Counsel. These talks ultimately led to three (3) formal in-person full-day mediation sessions in Florida overseen by nationally-respected mediator Rodney Max, countless telephone conferences and emails, and an incredibly strong Settlement Agreement that provides meaningful relief. (*See* Exhibit A). Indeed, the Settlement Agreement provides the Settlement Class members—which consists of approximately 688,500 cellphone users—the ability to file claims for cash payments of $15 from a settlement fund not to exceed ten million dollars ($10,000,000 USD) in addition to strong prospective measures (*see* Ex. A., § 1.2), under which GMRS has committed to taking proactive steps to ensure its compliance with the TCPA on a going forward basis. The Settlement Agreement also allows Settlement Class Members to check a box ensuring that they will not receive GMRS's calls in the future—even live operated calls (which are allowed under the TCPA) that GMRS has indicated it intends to continue making.

The Court granted preliminary approval to the Settlement on March 29, 2016, and notice was sent via direct mail to over 420,000 Settlement Class Members. The response from the Settlement Class has been overwhelmingly positive. Indeed, over 10,500 Settlement Class Members have filed timely claims and the deadline does not run until September 30, 2016.

---

Middle District of Florida as case no. 6:16-cv-306-Orl-31DAB (the "*Thompson*" case) (Pennsylvania-only Class).

Furthermore, there has only been one objector—a professional objector-lawyer who, together with his wife, has been admonished repeatedly for filing cut-and-paste objections similar to the frivolous objection raised here.

As such, and as set forth more fully below, Plaintiffs move the Court to grant final approval to the instant settlement in all material respects, find that the notice plan comported with due process, certify the settlement class, and order that the remainder of the Settlement be implemented in accordance with its terms.

## II.    NATURE OF THE LITIGATION

A brief review of the factual and procedural background of the case follows.

### A.    GMRS's Political Survey Calls to the named Plaintiffs and Settlement Class Members

GMRS makes political survey calls using an automatic telephone dialing system. (Amd. Compl., Dkt. 48, ¶ 2.) The problem for GMRS is that in doing so it apparently neglected to filter out cellphone numbers from residential landline numbers. While similar calls to residential landline phone numbers are lawful and may be made without any type of consent, such calls to cellphones violate the TCPA unless the caller first obtained "prior express consent" from the called party to make the call using an autodialer. *See* 42 U.S.C. § 227, *et seq*. Plaintiffs allege that GMRS, which obtained the phone numbers it called from third-party clients, had no such consent. GMRS claims, *inter alia*, that Plaintiffs and other cellphone users consented to be called when they registered to vote. GMRS placed calls to over 688,500 cellphone users from 2010 through December 2014. After that date, and following the initiation of this lawsuit, GMRS began segregating its list to avoid calling cellphone numbers.[3]

---

[3] A judgment in the class's favor against GMRS would at a minimum equal $344,250,000. This is calculated based on an award of $500 in statutory damages for <u>one</u> call for each of the 688,500

The original named Plaintiff, Melanie Walsh, received GMRS's survey calls on her cellphone and filed the initial complaint on August 11, 2014. (Dkt. 1.) She alleged that such calls violated the TCPA on behalf of a nationwide class.

**B.      Early Litigation and the Parties' First Mediation**

The Parties engaged in early motion practice and formal written discovery. (*See* Declaration of Attorney S. Woodrow in support of Preliminary Approval, ("Woodrow Decl."), a true and accurate copy of which is attached as Exhibit B to Plaintiffs' Motion for an Award of Attorneys' Fees (dkt. 105), ¶¶ 4, 5.) During a meet and confer on February 12, 2015 the Parties, in addition to discussing the discovery responses, also discussed the potential for settlement. (Woodrow Decl. ¶ 6.) The Parties thereafter agreed—in accordance with the Court's Order referring the case to mediation (dkt. 29)—to participate in a private mediation. (*Id*.) As such, the Parties attempted to reach a settlement via a full-day, in-person mediation session held April 22, 2015 in Boca Raton, Florida. (*Id*. ¶ 10.) Although the Parties were unable to reach an agreement regarding the relief to be made available to the Class, the Parties learned important information regarding each side's evaluation of the litigation and the key questions pending in the litigation that needed to be resolved. (*Id*. ¶ 11.) On May 26, 2015, the mediator, Rodney Max, filed a notice declaring an impasse. (Dkt. 42.)

**C.      The Return to Litigation**

In the weeks following the declaration of an impasse, the original named plaintiff (Ms. Walsh) confirmed that she could not continue to represent the class. (Woodrow Decl. ¶ 14.)

---

class members. Where willfulness is found the TCPA calls for trebled damages, and GMRS made multiple calls to each person. As such, damages following a trial in this case could exceed one billion dollars. GMRS's inability to pay such an award—though obvious—was confirmed through formal and informal discovery.

Plaintiffs' counsel filed a Motion for Leave to Amend on June 9, 2015 to remove Ms. Walsh and to substitute in Mr. Martin and Ms. Armstrong as class representatives. (Dkt. 45.) On June 25, 2015, the Court granted Plaintiffs' Motion for Leave to Amend, adding in named Plaintiffs Martin and Armstrong and removing Ms. Walsh. (Dkt. 47.) The Amended Complaint also refined the class definition to exclude cellphone users in California and Pennsylvania. (Dkt. 48.)

On June 4, 2015, a different cellphone user, Nicole Zilveti, filed a case against GMRS in the Northern District of California styled *Zilveti v. Global Marketing Research Services, Inc.*, 3:15-cv-02494-KAW.[4] (Woodrow Decl. ¶ 16.) The *Zilveti* case seeks to represent a Class of California cellphone users called by GMRS. (*Id.*) Likewise, on June 25, 2015, another consumer, Alicia Thompson, filed a case in the Eastern District of Pennsylvania against GMRS styled *Thompson v. Global Marketing Research Services, Inc.*, 2:15-cv-03576-AB, seeking certification of a Pennsylvania-only Class. (*Id.* ¶ 17.) GMRS filed a motion to dismiss or transfer in the *Thompson* case on July 31, 2015, which was granted on January 20, 2016 and re-assigned as case no. 6:16-cv-306-Orl-31DAB following transfer to the Middle District of Florida. (*Id.*)

Each of the named Plaintiffs alleged that GMRS's political calls to their cellphones were made without prior express consent and thus violated the TCPA. (*Id.* ¶ 18.) As demonstrated by the dockets in all three cases, the litigation to date has been rather extensive. Since the Florida Action was filed, GMRS and the named Plaintiffs have engaged in written discovery (including exchanging answers to interrogatories, requests to produce, requests for admission, and initial disclosures) and have also exchanged information through informal discovery as well. (*Id.* ¶ 19.)

---

[4] On July 22, 2015, GMRS moved to dismiss or transfer the *Zilveti* case to this Court, which was denied on February 16, 2016. (*Zilveti* Action, Dkt. 45.)

The Parties have also engaged in significant motion practice. (Woodrow Decl. ¶ 21.) Indeed, in the Florida Action alone the Parties have litigated, among other filings, a motion to dismiss (dkt. 16), two motions to compel answers to discovery (dkts. 49, 64), GMRS's motion for a protective order (dkt. 66), GMRS's Motion to Reconsider the Court's granting of Plaintiff's Motion for Leave to File an Amended Complaint and for Sanctions (dkt. 66), a motion for Sanctions against GMRS (dkt. 61), a motion for Oral Argument (dkt. 67) and Reconsideration of the Court's Order denying oral argument, (dkt. 81) and a motion to reconsider the Court's denial of the Parties' joint motion for an enlargement of time (dkt. 90). (*Id*. ¶ 20.)

Moreover, with respect to the Settlement pending in this Court, attorneys' fees are left to be decided by the Court. Plaintiffs filed their Motion for Attorneys' Fees on July 1, 2016. (Dkt. 105.) On July 5, 2016, GMRS filed a Motion for Extension of time (dkt. 106), which Magistrate Judge Spaulding denied on July 8, 2016 (dkt. 108). GMRS then filed a "Motion to Strike," which essentially seeks reconsideration of the Court's denial of GMRS's Motion for an Extension of Time. (Dkt. 111.) Plaintiffs' responded in opposition on July 12, 2016. (Dkt. 112.)

In the *Zilveti* and *Thompson* actions, the Parties fully briefed GMRS's motions to dismiss or transfer. (Woodrow Decl. ¶ 20.) Such discovery and briefing is in addition to the hundreds of emails exchanged and teleconferences between counsel for the Parties and the Department of Justice (related to its intervention in the case). In short, in addition to the Parties' settlement negotiations (discussed below) the Parties have vigorously litigated the case. (*Id*. ¶ 21.)

### D.    The Court Grants Plaintiffs' Second Motion to Compel and the Parties Return to Mediation

Ultimately, following GMRS's refusal to provide information that was essential to the case, Plaintiff filed a Second Motion to Compel further answers to discovery. (Dkt. 60.) In October 2015, the Court entered Orders Denying GMRS's request for a protective order and

granting in large part Plaintiffs' Second Motion to Compel. On October 13, 2015, GMRS's counsel reached out regarding the possibility of resuming the mediation process, and Plaintiffs' counsel flew to Orlando a week later to engage in a second full-day mediation session with Rodney Max on October 20, 2015. (Woodrow Decl. ¶¶ 23, 24.) Although the Parties didn't settle that day either, significant progress was finally made such that it made sense to seriously continue pursuing the negotiations. (*Id*. ¶ 24.)

Over the course of the several months that followed the second mediation session, counsel for the Parties continued to discuss (with the persistent help and oversight of the mediator) the terms of the relief to be made available to the Settlement Class Members and the Settlement Agreement's other essential terms. (*Id*. ¶ 25.)

### E. GMRS Discovers Additional Potential Insurance Coverage and the Parties Return for a Third Full-Day Mediation Session

Throughout the negotiations, it was understood based on representations made by GMRS that GMRS had insurance coverage for claims arising from cell calls made in the years 2012 through 2014 as provided by Old Dominion Insurance Company ("Old Dominion"), but that GMRS lacked such insurance for calls made in the years 2010-2011. (*Id*. ¶ 26.)[5] In early January 2016, however, GMRS's counsel alerted Plaintiffs' Counsel to the fact that GMRS potentially had additional insurance coverage for those two years (2010 and 2011) under policies that had been issued by Mapfre Insurance Company of Florida ("Mapfre"). (*Id*. ¶ 27.) The Parties thereafter jointly requested additional time from this Court to continue their negotiations to seek to include Mapfre in the discussions. (*Id*. ¶ 28.) This Court entered an Order granting this request on January 11, 2016 (dkt. 94), and the Parties reconvened on February 3, 2016 for a third full-

---

[5] To be sure, GMRS initially represented that it only had $4,000,000 in insurance, and an additional $2,000,000 was disclosed by GMRS during one of the Parties' mediation sessions.

day mediation session in Boca Raton, Florida. (Woodrow Decl. ¶ 29.) At this session, Mapfre

indicated that it was declining coverage for the 2010 and 2011 years, and Plaintiff and GMRS

decided to continue to pursue their negotiations. (*Id.*)

In the end, counsel for the Parties were able to reach an agreement with respect to the

framework of the proposed settlement and the relief to be made available to the Settlement Class.

(*Id.* ¶ 30.) Once an agreement in principle was reached with respect to the relief to be afforded to

the Settlement Class, the Parties negotiated Incentive Awards for the Class Representatives and

attempted to negotiate the issue of reasonable attorneys' fees for Class Counsel, which the

Parties were unable to resolve but have agreed to leave the amount of reasonable attorneys' fees

to be decided by a binding Order from the Court. (*Id.* ¶ 31.)

F.     **GMRS's Position**

At all times, GMRS has denied and continues to deny any wrongdoing whatsoever or that

it committed any of the wrongful acts or violations of law that are alleged in the pleadings in this

case or the *Zilveti* or *Thompson* actions and contends that it has acted properly at all times. (*See*

Declaration of Steven L. Woodrow, attached as Ex. B to Mot. for Prelim. Approval, Dkt. 97, ¶

31.) GMRS also denies that either the named Plaintiffs or the proposed settlement class are

entitled to any form of damages as a result of the conduct alleged in the pleadings. (*Id.*) GMRS

further made clear that it was prepared to vigorously oppose all claims and class certification and

that it believes it has meritorious defenses to such claims. (*Id.*)

On March 29, 2016 the Court granted preliminary approval of the instant settlement and

directed that notice be disseminated to the Class. (Dkt. 98.) Notice was thereafter mailed directly

to over 420,000 people, of whom over 10,500 have already filed claims. (See Declaration of

Kathleen Wyatt, attached hereto as Exhibit B, ¶¶ 7, 11.) Additionally, Class Counsel's office has

received hundreds of calls from class members who have questions about the settlement and Class Counsel has worked to diligently address all such inquiries.

A summary of the key terms and conditions of the Settlement Agreement follows.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

**A.    *Class Definition.*** The settlement class is defined as follows:

> All Persons in the United States or its territories who received a call successfully placed by or on behalf of GMRS to that Person's cellular telephone, through the use by GMRS of an ATDS, at any time from August 11, 2010 through December 31, 2014, consisting of approximately 688,650 Persons where the Person upon answering such call either: (a) participated in a GMRS survey, (b) declined to participate at the time of the first such call without objection to be called back at a later time, or, (c) upon answering such call directed never to be called by GMRS again.

(Ex. A, Settlement Agreement, § 1.9). The Settlement Class includes, but is not limited to, those Persons whose telephone numbers and other identifying information appears on the Class List. (*Id.*) The Class List refers to a list of cellular telephone numbers and Persons identified by GMRS as part of the Settlement Class. GMRS will use reasonable efforts to compile the Class List by searching its records for identifying information to match up against other records it has regarding the phone numbers it called. (Settlement Agreement § 1.9).

**B.    *Individual Class Member Benefits.***

**1.    Cash Payments.** Class Members will have until the Claims Deadline— which is 45 days following the Final Approval Hearing so as to maximize the time Settlement Class Members have to submit claims—to sign and return a simple Claim Form entitling the Settlement Class Member to a cash benefit. The amount of each claim, if approved, is fifteen dollars ($15.00 USD) to each Class Member. (Settlement Agreement § 2.1.) Though highly unlikely, the amount of the claims may be reduced due to the following possible *pro rata*

reduction: if the total amount required to pay fifteen dollars ($15.00 USD) for each Approved

Claim would exceed the net amount remaining available for such payments from the Settlement

Fund (which totals $10,000,000) after payment of: (1) Defendant's portion of the Settlement

Administration Expenses, (2) the Incentive Awards to the Class Representatives, and (3) the Fee

Award, then each Settlement Class Member with an Approved Claim shall receive a *pro rata*

reduced amount for such Person's Approved Claim as determined by the remaining net balance

of the Settlement Fund after payment of such amounts for Expenses, Incentive Awards, and the

Fee Award. Given that the total amount of the fund is $10,000,000, it is almost certain that even

with an exceptional claims rate, sufficient funds will be available to pay every claimant $15.[6]

       **2.**      **Prospective Business Assurances.** In addition to securing cash relief for

the Class, the Settlement Agreement also requires GMRS to take affirmative steps to ensure that

it will comply with the TCPA going forward. (Settlement Agreement § 2.2.) That is, GMRS has

agreed to institute certain best practices on or before the Effective Date and to maintain such

practices for a period of eighteen months (18) months from the Effective Date. These steps

include commitments by GMRS: (1) to refrain from making calls to cellular phones using an

ATDS unless the call recipients have given prior express consent to receive such calls, and (2) to

use its best efforts to identify cellular telephone numbers from residential landline telephone

numbers prior to calling such cellular telephone numbers by means other than an ATDS. (*Id.*)

       **3.**      **Class Member List Removal Requests.** As an additional benefit, the

---

[6] The Court is well versed in claims rates in consumer class actions, and the present claims rate of 2.53%, though considered at the lower end of such rates, is eminently reasonable. Few class members actually remember GMRS's calls and the amount per claim is only $15. As the Settlement Fund is up to $10,000,000, there is more than sufficient funds to cover the claims, the costs of Notice and administration (which may exceed $400,000), the Class Representative Incentive Awards ($5,000 each), and proposed Class Counsel's award of reasonable attorneys' fees, which under the Settlement Agreement is to be determined by the Court.

Claim Form will provide each Settlement Class Member with an opportunity to expressly remove his or her cell phone number from any list or database of numbers that GMRS may have in its possession to which phone calls could be made. This will ensure that the Settlement Class Member is able to stop GMRS's calls now and in the future. (Settlement Agreement § 2.3.)

      **C.**    **Payment of Notice and Administrative Fees.** GMRS and/or its Insurer will pay (in accordance with any agreement between them regarding the sharing of such costs) for the cost of sending the Settlement Class notice and any other notice as required by the Court as well as all costs of administration of the Settlement Agreement out of the Settlement Fund. (Settlement Agreement § 4.6.) Such Notice includes direct mail notice to approximately 688,500 individuals, with supplemental internet publication notice for the years 2010 and 2011. (Settlement Agreement § 4.2(b) and (c).) The notice also features a Settlement Website that will include the traditional "long form" notice in addition to key documents and a feature that allows Claim Forms to be downloaded or submitted online. (Settlement Agreement § 4.2(d).) It is projected that the notice plan in this case may meet or exceed $400,000 in hard costs.

      **D.**    **Compensation for the Class Representatives:** In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, the Class Representatives in this matter shall, subject to the Court's approval, each receive an award of $5,000 ($20,000 total split four ways) as appropriate compensation for their time and effort serving as the Class Representatives in the litigation against the Defendant. (Settlement Agreement §8.3.)

      **E.**    **Payment of Reasonable Attorneys' Fees and Expenses.** In addition to all other relief, GMRS has additionally agreed to pay Class Counsel an amount for reasonable attorneys' fees and expenses. Despite extensive negotiations on this specific issue, the Parties were unable

to agree on an amount for such attorneys' fees and costs. Instead, the Parties agreed to submit the issue of the amount of reasonable attorneys' fees to the Court for a binding (non-appealable) decision. (Settlement Agreement § 8.1.) Plaintiffs filed their Motion for an award of reasonable attorneys' fees and for reimbursement of litigation expenses on July 1, 2016. (Dkt. 105.) Defendant filed its response to the Motion for attorneys' fees on July 15, 2016 (dkt. 113) and Plaintiffs will file their reply in support of the Motion by the August 1, 2016 deadline.

      **F.**    **Release.** Upon the effective date of the settlement, the Class Representatives, on behalf of themselves and the Settlement Class, will provide a release of all "Released Claims" to the "Released Parties" as further discussed at the Stipulation of Settlement's Section 3. (*See* Ex. A). The release is limited to all claims that were or could have been alleged in the litigation challenging GMRS's use of an automatic telephone dialing system to make any calls or any other violation of the TCPA (or similar State statute or law).

      As explained below, such terms are demonstrably fair, reasonable, and adequate.

## IV.   THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

      In approving a class action settlement, a district court must conduct "a hearing and ... [find] that it is fair, reasonable, and adequate." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The district court must also find that the settlement is not the product of collusion between the parties." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012).[7] The procedure for review of a proposed class action settlement is a well-known two-step process. Alba & Conte, 4 Newberg on Class Actions, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, Annotated Manual for Complex Litigation, § 21.632 (4th ed. 2004). The first step

---

[7] "Determining the fairness of the settlement is left to the sound discretion of the trial court," and will not be overturned absent an abuse of such discretion. *Bennett*, 737 F.2d at 986.

is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25, at 38-39 (quoting Manual for Complex Litigation, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008). This first step, preliminary approval, was satisfied on March 29, 2016 when the Court entered its preliminary settlement approval and ordered that notice be disseminated. (Dkt. 98.)

The second step, final approval, follows notice to the Class and the receipt of Class Member responses. On or about April 28, 2016, the Settlement Administrator began sending notice to the identifiable Settlement Class Members and the response has been overwhelming. (See Wyatt Decl., ¶ 7.) Over 10,500 claims have been submitted (*id*. ¶ 11) and hundreds of Class Members have called Class Counsel's offices to discuss the case and the Settlement. Moreover, the only objector is a professional objector/lawyer who has previously been admonished and who cut-and-pasted his objection.

In general, determining whether to grant final approval requires that the Court review and consider the following six factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F. Supp. at 986; *see also In re Sunbeam Securities Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001). The court is not required, however, to "reach any ultimate conclusions on the issues of fact and law underlying the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

As explained below, each consideration favors approval of the Settlement Agreement.

**A.     The Likelihood of Success at Trial**

This factor favors granting preliminary approval. The Plaintiffs are confident that they would have prevailed at trial. Nevertheless, there are always risks with litigating, and even multi-million dollar judgments have been reversed on appeal following trial. The uncertainty here was manifest given GMRS's numerous defenses, including its insistence that it had obtained prior consent to call class members, its claim that its system introduced sufficient human intervention so as not to qualify as an ATDS, and other supposed defenses.

Class certification is not automatic in TCPA cases. *C.f., e.g.*, *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Serv. Master*, 2009 WL 1810769, at *2 (N.D. Ill., June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted), *and Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008) (holding that where "some number of faxes were sent on defendant's behalf (with or without defendant's explicit authorization), potentially to tens of thousands of recipients . . . reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue" (internal citations omitted)), *and Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

As such, while the Plaintiffs are nearly certain that they could have prevailed on both certification and on the substantive merits of the case, they must allow room for reasonable doubt as to the recovery.

### B.   The Range of Possible Recovery

Given the sheer number of Settlement Class Members (688,500 cellphone users), a judgment against GMRS would be gargantuan given the TCPA's minimum statutory damages of $500 *per call.* Indeed, the damages in this case readily eclipse nine figures and may well traverse into billions of dollars. However, GMRS does not have the financial wherewithal to pay anywhere close to such amounts. Rather, as was made clear during the mediation process, any judgment adverse to GMRS would likely cause the company to go into bankruptcy, putting the future of its operations and employees into doubt and rendering any recovery by the class a nullity. (Dkt. 97, Ex B, ¶ 24.)

GMRS's central assets, as pertinent to this lawsuit, are its three insurance policies (covering the years 2012, 2013, and 2014) from Old Dominion Insurance Company. (*Id.*) These policies allow for maximum benefits of $2,000,000 per year, and through the negotiations proposed Class Counsel fought to ensure that Old Dominion committed the full $6,000,000 to fund the Settlement Agreement. (*Id.*) No additional insurance was available. (*Id.*)

As such, the $10,000,000 fund represents all of the money that could have been recovered as additional amounts threaten the solvency of GMRS—which would result in Settlement Class Members receiving next to nothing.

### C.   The Point on or Below the Range of Possible Recovery at Which Settlement is Fair, Adequate and Reasonable

As explained above, the Settlement Fund represents all of the money that GMRS is able to pay. Accordingly, it represents the "high end" of what is fair reasonable and adequate. This is

16

true even though TCPA claims allow for $500 in statutory damages and the Settlement
Agreement calls for payments of $15. This was necessary given the large number of Settlement
Class Members—if each person filed a valid claim, the fund would be exhausted entirely even
without considering the costs of Notice and Settlement Administration, the Class Representative
Incentive Awards, and any award of Reasonable Attorneys' Fees.

As one court recently noted "[t]he essential point here is that the court should not reject a
settlement solely because it does not provide a complete victory to plaintiffs, for the essence of
settlement is compromise." *Gehrich v. Chase Bank USA, N.A.*, 2016 WL 806549, at *7 (N.D. Ill.,
Mar. 2, 2016) (approving $34 million TCPA settlement for class of more than 32 million
individuals with claimant recovery of $52.50) (*citing Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir.
1996)). Here, as in *Gehrich* "[i]ndividual class members receive less than the maximum value of
their TCPA claims, but they receive a payout without having suffered anything beyond a few
unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time,
expense, and uncertainty of litigation. [GMRS], for its part, buys peace and mitigates risk." *Id.*

Furthermore, $15 is consistent with other awards in TCPA class actions, even those
against far larger companies with resources that dwarf GMRS's insurance policies. *See Kolinek
v. Walgreen Co.*, Case No. 1:13-cv-04806 (N.D. Ill.) (final approval given in a TCPA class
action settlement involving a $11 million fund for 9.2 million class members that resulted in
payments of $30 per class member); *see also Rinky Dink v. Elec. Merchant Sys., et al.*, 13-cv-
01347, Doc. No. 151 (W.D. Wash., Apr. 19, 2016) (approving awards in a TCPA action of
approximately $97 per class member); *Estrada v. iYogi, Inc.*, 2015 WL 5895942, at *7 (E.D.
Cal., Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members
estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, 12-cv-1118, Doc. No. 96 at ¶ 6 (N.D.

Cal., Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-00248, Doc. No. 137 (S.D. Cal., Sept. 28, 2012) (claimants received $40 each). While such amounts exceed $15, it must be recalled that GMRS does not have the resources that companies like Walgreens, Bank of America, or Discover Financial Services hold.

Additionally, it should be recalled that the Settlement also includes non-monetary relief, including an option that allows Settlement Class Members to opt out of receiving any calls from GMRS for any reason.

Given the strength of such relief, the Court should find that $15 per claim and $10,000,000 for the total fund show that the relief offered under this Settlement is fair, reasonable, and adequate.

**D.    The complexity, expense and duration of the litigation favors settlement**.

The case, while straightforward for a class action, was undoubtedly complex and expensive. Proposed Class Counsel has expended thousands of hours (and tens of thousands of dollars on out-of-pocket expenses) to litigate and negotiate a resolution of the case. Furthermore, the Parties have exchanged thousands of pages of documents and other written discovery and litigated a flurry of substantive motions. The first mediation was unsuccessful specifically because the Parties agreed that certain issues pertaining to discovery needed to be resolved by the Court. As such, following the declaration of impasse (dkt. 45), the Parties proceeded to finalize their meet and confer obligations and to brief—through two motions to compel by the Plaintiffs and a motion for protective order by GMRS—the contested discovery issues.

Ultimately the Court granted the Plaintiffs' Second Motion to Compel and GMRS wanted to return to the mediation process as a result, which eventually led to two additional full-day mediation sessions. The Parties then had to hold a third mediation session after GMRS

"discovered" that it may have an additional $4,000,000 in insurance. Accordingly, the discovery and motion practice, when coupled with the information disclosed regarding the contours of the Class and GMRS's financial position, allowed proposed Class Counsel to make a fair evaluation of the Settlement terms. (Woodrow Decl. ¶ 11.)

It should also be recalled that the expense and duration of the case were magnified by a series of frivolous defenses raised by GMRS. Such novel arguments included that:

- The TCPA's requirement of "prior express consent" can be satisfied through implied means, including by virtue of the fact that the people GMRS was calling had registered to vote;

- That the TCPA's requirement of "prior express consent" can be satisfied *after* the call is made so long as the called party indicates acceptance of the call;

- That GMRS did not use an autodialer because its automated system eventually connected eventually to a live person—while such a rule may apply to landline phone users, the rule is wholly inapplicable to cellphone calls such as those at issue in this case;

- That the TCPA is unconstitutional;

- That it wasn't required, despite the case being styled as a nationwide class action, to provide any discovery relating to any calls made to consumers outside of the States of the named plaintiffs—necessitating the filing of two separate lawsuits and two motions to compel discovery (which were ultimately granted in primary part);

- That it had no duty to disclose the clients from whom it obtained prior express consent to call consumers, even though GMRS repeatedly admitted that it relied on these clients to secure such consent and, absent such clients, had no proof of consent;

- That consumers give prior express consent to be called by GMRS when they register to vote, even though nothing is said at that time concerning GMRS or calls from any other outfit;

- That Plaintiff Armstrong's father's medical records were relevant to the case;

- That members of Congress and chairpersons of the FCC may be called to testify regarding the meaning and intent of the TCPA;

- That other TCPA class action settlements feature provisions allowing defendants to terminate the agreement if a certain claims threshold is surpassed (Defendant insurer's counsel instructed Class Counsel to review a specific settlement as an example, which Class Counsel did and, as Class Counsel explained would be the case, did not actually contain any such provision);

- Through failed motions to reconsider, that the Court neglected to consider or "overlooked" its prior arguments (dkts. 17, 81);

- That there was only $4 million in insurance from Old Dominion, when in reality there was $6 million (on top of potentially an additional $4 million from Mapfre, the claim for which has been denied);

- That it should be entitled to formal discovery related to Plaintiffs' request for attorneys' fees; and

- Other novel arguments for which GMRS failed to provide any support, but which required extra effort on the part of Class Counsel to discredit and disprove.

While none of GMRS's arguments had merit, Class Counsel was required to research, analyze, and ultimately refute such contentions. Hence, the complexity, expense, and duration of the litigation favors approving the settlement.

### E.  The Substance and Amount of "Opposition" to the Settlement Favors Approval of the Settlement Agreement

As indicated above, over 10,500 claims have been filed and only a single objection— lodged by a professional objector who has been repeatedly admonished by courts for the precise conduct he engages in with respect to the instant settlement—has been received. Class Counsel's papers responding to this objection and to GMRS's opposition to the Motion for Attorneys' Fees are presently due on August 1, 2016. In the interim, the fact that only one person objected out of 688,500 Settlement Class Members speaks to the strength of the Settlement. *See Bell Atl. Corp.* v. *Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. . . . This small proportion of objectors does not favor derailing settlement."); *accord*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (fact that only two class members objected out of 300,000 weighed in favor of requested fee award). And of course, the same holds true for the 123 Class Members who elected to opt out. (Wyatt Decl. ¶ 9.) When weighed against the 10,500 claims filed and the 688,500 Settlement Class Members, the proportion of persons who have elected to opt out is insignificant.

As such, this factor also weighs in favor of granting final approval.

**F.      The Stage of Proceedings Favors Approval as Well.**

As also explained above, the Settlement Agreement was reached only following almost a year's worth of arm's-length negotiations that included three full-day mediation sessions. Prior to the initial mediation and in between the first and second sessions, the Parties actively litigated the case, exchanged meaningful discovery, and otherwise presented their arguments and discovery disagreements to the Court. (Woodrow Decl. ¶¶ 4, 5, 13-22.) Through the discovery, briefing, and mediation process, proposed Class Counsel were able to obtain critical information regarding the size and scope of the proposed Settlement Class, the nature of GMRS's liability, and GMRS's ability to satisfy a judgment in any material respect. (Dkt. 97, Ex B, ¶ 24.) Accordingly, the stage of the proceedings is such that proposed Class Counsel came to the negotiations armed with the ability to fairly judge the fairness and reasonableness of the proposed recovery.

**G.      The Settlement was Achieved with the Help of a Respected Mediator who Ensured the Negotiations Were Free of Any Collusion.**

As a final consideration here, and while not dispositive, it bears restating that the Settlement Agreement was negotiated by a well-respected national mediator with substantial experience in resolving large consumer class actions. (Woodrow Decl. ¶ 10.) The mediator assured that at all times the negotiations, which were often contentious, stayed professional and arm's-length.

While some courts have observed that certain class actions settlements contain *indicia* of collusion where large fees are promised in exchange for insufficient relief to the settlement class, that is the opposite of the case here: in the instant matter, proposed Class Counsel secured an agreement from GMRS and its insurer to pay claims and other settlement amounts up to

$10,000,000. And rather than agree to proposed Class Counsel's fee together with a "free sailing" provision, the instant Settlement Agreement leaves the issue of awarding attorneys' fees to the binding decision of this Court following briefing by proposed Class Counsel, GMRS, and any objectors. (*Id.* ¶ 31.)

Accordingly, that the Settlement is free of collusion further militates in favor of granting preliminary approval.

## V.   THE NOTICE PLAN SATISFIED DUE PROCESS

Pursuant to the Settlement Agreement, GMRS, together with national claims administrator Kurtzman Carson Consultants ("KCC"), developed a notice plan to inform the class of this settlement in several ways. (Settlement Agreement § 1.44.) First, a "short form" notice was mailed, on or around April 28, 2016, directly to 422,709 Settlement Class Members informing them of the Settlement. (Wyatt Decl. ¶ 7.) 62,038 notices were returned as undeliverable and those addresses were run through a skip trace to locate an accurate address— as of July 22, 2016, 49,203 notices were re-mailed. (*Id.* ¶ 8.) This direct mailing reached over 59% of the Settlement Class. The notice plan also featured the creation of a case-dedicated website which provides users with the full-length notice and relevant case documents and deadlines. (*Id.* ¶ 4.) The notice plan also featured the creation of a toll-free telephone number with a recorded message replicating the key information from the notice forms. (*Id.* ¶ 5.) The Notices provided the settlement class members with a detailed explanation of their options to allow each of them to make an informed decision. (*See* Ex. B to Wyatt Decl.)

To expand the reach, the Notice Plan also included supplemental internet banner advertising that promoted the existence of the Settlement Agreement and directed consumers to the Settlement Website (which featured other key documents, deadlines, and the ability to

download claims and to file them electronically). From April 18, 2016 through April 28, 2016, over 77 million internet banner impressions were displayed, all targeted to reach adults over 18 years of age. (*Id.* ¶ 6.)

Between the direct mailed notice and the internet banner impressions, it is estimated that the overall reach of the notice campaign is 73.7% of likely Class members. (*Id.* ¶ 12.) The Notice comports with due process. (*Id.*) As such, Plaintiffs request that the Court find that the Notice campaign was sufficient and comported with due process.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval to the Class Action Settlement reached in this case.

Dated: July 26, 2016

**ROBERT MARTIN and KRISTEN ARMSTRONG**, individually and on behalf of all others similarly situated,

By:  _/s/ Steven L. Woodrow_

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

*Pro hac vice*

Stefan L. Coleman, Esq., Florida Bar no. 0030188
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
law@stefancoleman.com

23

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 26, 2016, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.


<u>/s/ Steven L. Woodrow</u>