# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ROBERT MARTIN and KRISTIN
ARMSTRONG,

                Plaintiffs,

v.                                    Case No:   6:14-cv-1290-Orl-31KRS

GLOBAL MARKETING RESEARCH
SERVICES, INC.,

                Defendant.

_____

## ORDER

This matter comes before the Court without a hearing on the Motion for an Award of Attorney Fees and Costs (Doc. 105) filed by the Plaintiffs, as well as the response in opposition (Doc. 113) filed by the Defendant and the Plaintiffs' reply (Doc. 125).   The Plaintiffs seek a $3 million award of attorney fees and reimbursable costs, which they calculate by applying a 30 percent multiplier to the gross settlement fund of $10 million.   The Defendant contends that the fee multiplier should be in the range of ten to 12.5 percent and be applied to the net settlement fund, resulting in an award of fees and costs of approximately $1 million.

### I.   Background

This is a class action lawsuit under the Telephone Consumer Protection Act, 47 U.S.C. § 227.   In their complaint (Doc. 1), filed in this Court on August 1, 2014, the Plaintiffs alleged that, while conducting political surveys, the Defendant improperly used an autodialer to make calls to their cell phones.   In June 2015, similar suits were filed in Pennsylvania and California, and shortly thereafter, an Amended Complaint (Doc. 48) was filed in this case.   The putative classes in the Pennsylvania and California cases were limited to residents of those states, while

that of the instant case was nationwide (aside from Pennsylvania and California).   The Pennsylvania case was subsequently transferred to the undersigned for consideration with this case.

In its answer to the Amended Complaint in this case, the Defendant admitted that it used autodialer systems to conduct political surveys but contended that the recipients had consented to the receipt of such calls.   (Doc. 62 at 2).   That consent, however, was admittedly not express. Rather, Defendant claimed implied consent from information provided in voter registration documents.   The effectiveness of that consent was the primary legal issue involved in this case.

During 2015, the parties engaged in extensive and contentious discovery, culminating in this Court's order (Doc. 84) on October 15, 2015, granting Plaintiffs' Second Motion to Compel (Doc. 64).   That order, or perhaps the prospect thereof, apparently led the parties to resume settlement negotiations, which had begun with a full-day mediation in April.   A second day of mediation occurred on October 20, 2015.   Although no agreement was reached that day, the parties continued to negotiate.   In January, 2016, Defendant advised Plaintiffs that it may have additional insurance coverage.[1]   At the third day of mediation on February 3, 2016, it was learned that no additional coverage was available and the parties reached this settlement shortly thereafter.

The Court preliminarily approved the settlement agreement (Doc. 97-1) (henceforth, the "Settlement Agreement") on March 29, 2016.   (Doc. 98).   The Settlement Agreement provided for a fund (henceforth, the "Settlement Fund") of up to $10,000,000 to cover claims made by class members at $15 per claim, as well as administrative costs, incentive awards to class representatives, and attorneys' fees.   (Doc. 97-1 at 18).

---

[1]   At this point, the parties were working under the belief that Defendant had $6 million of insurance coverage for these claims.

Pursuant to the preliminary approval order, notice was provided to the slightly more than 400,000 members of the settlement class whose addresses could be obtained.   (Doc. 138-1 at 2-3). On August 16, 2016, the Court conducted a fairness hearing.   On November 4, 2016, the Court entered its Final Order Approving Class Action Settlement (Doc. 139).   That order excluded from consideration the issue of costs and attorney fees.

16,148 valid claims were ultimately submitted, resulting in a total payment of $242,000 (Doc. 138-1 at 3).   In addition, the Settlement Fund was used to pay $20,000 in incentive awards to the class representatives and approximately $400,000 in administrative costs.   Finally, the Settlement Agreement requires Defendant to pay out of the fund a reasonable attorney fee and costs as determined by the Court, an issue the Court now addresses.

### III.   Legal Standard

Attorneys in a class action in which a common fund is created are entitled to compensation from the common fund as approved by the Court.   *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).   The fee awarded is usually based on a reasonable percentage of the common fund, *id*. at 774, and the majority of such common fund fee awards fall between 20 and 30 percent of the fund, *id.* at 775.   In determining the appropriate percentage award, the Court must look at the facts of each case, including the factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).   The most significant of the 12 *Johnson* factors include the time and skill required, the risk of prosecuting a contingent fee case, and the results obtained.

IV.     Analysis

   A.     The Lodestar and Multiplier

In its motion (Doc. 105) and supporting affidavits (Doc. 105-2), Plaintiffs submit a lodestar calculation of $1,046,153, based on 2,616.5 hours at rates between $100 per hour and $430 per hour.   (Doc. 105 at 27).   Plaintiffs' counsel also estimate that between $50,000-$75,000 of additional time will be required to finalize the settlement.[2]   (Doc. 105 at 28).   Given that the Plaintiffs are seeking a $3 million award of fees and costs, this yields a multiplier of 2.7.   A multiplier of 2-3 times lodestar to compensate for contingency risk is typical in common fund cases.   *Ressler v. Jacobson*, 149 F.R.D. 651, 654 n.4 (M.D.Fla. 1992).   Plaintiffs support their fee request with the affidavit of John Yanchunis (Doc. 105-3), an attorney admitted to the Florida Bar who practices primarily in the area of consumer class actions.   Yanchunis opines that a $3 million fee is reasonable under either the lodestar or common fund approach.   (Doc. 105-3 at 4-5).

In its response (Doc. 113), the Defendant claims that the time expended by Plaintiffs' counsel is grossly excessive and that their hourly rates are above those customarily charged in Central Florida.   With respect to the time expended, Defendant relies primarily on the fact that Plaintiffs' counsel expended over six (6) times the amount of time incurred by Defendant's counsel.   In addition, Defendant generally argues that much of Plaintiffs' time was either unnecessary or duplicative.   As to the hourly rates, Defendant contends that the hourly rates for Plaintiffs' counsel should range from $200 per hour for Patrick Peluso to $350 per hour for Stefan Coleman and Steven Woodrow.   Defendant's arguments are supported by the affidavit of attorney Scott Dutton (Doc. 131).

---

[2] The requested fee includes approximately $28,000 in litigation costs.

After thorough review, the Court finds that the time expended by Plaintiffs' counsel should be reduced by 10 percent and that their hourly rates should be adjusted as follows:

| Attorney Name | Rate | Hours | Amount |
|---|---|---|---|
| Steven Woodrow | $325 | 924 | $300,300 |
| Patrick Peluso | $200 | 796 | $159,200 |
| Stefan Coleman | $350 | 623 | $218,050 |
| Law Clerk Rate | $100 | 12 | $1,200 |
| TOTAL | | | $678,750 |

Applying a 10 percent reduction to counsel's time and reducing the hourly rates as set forth above brings them in line with the typical amount of time expended and rates billed by similarly experienced members of the Central Florida legal community in a case such as this one.

Using a lodestar of $678,750 and a multiplier of three would produce a fee of $2,036,250.

**B.  The Results Achieved**

Ostensibly, this is a $10 million settlement, as that is the amount of the Settlement Fund obtained by the efforts of counsel for the Plaintiffs.[3]   In reality, however, the true economic value of this settlement is far less than $10 million.   The $10 million maximum amount of the "fund" is based on up to $6 million in insurance proceeds and a potential $4 million payment from Defendant.   But the parties only anticipated a claims rate of approximately 3 percent.   (The

---

[3] The Court rejects Defendant's argument this amount should be reduced to a net amount, excluding the administrative cost of settlement.

actual claims rate was roughly 4 percent.)   Moreover, the parties understood that the Defendant lacked the financial wherewithal to pay any part of the $4 million.

Even at a high claims rate of 5 percent, only about 20,500 claims were expected, which at $15 per claim would have amounted to class payments of $307,500.   Adding in the $400,000 of administrative costs plus the $20,000 incentive awards, the total anticipated payment would be less than $750,000.   Adding Plaintiffs' requested attorney/cost fee of $3,000,000 would still result in a total payment of less than $4,000,000, which is well within the defendant's policy limits.

Of course, there are non-economic benefits to this lawsuit and resulting settlement.   First, the suit was instrumental in causing Defendant to change its survey practices to comply with the Telephone Consumer Protection Act.   Second, the Settlement Agreement provided class members the opportunity to permanently remove themselves from Defendant's call list – and 90 percent of the claimants took advantage of this provision.

### C.   The Nature of this Case – Complex Litigation

Plaintiffs contend this was complex litigation requiring highly skilled lawyers.   Indeed, class action litigation presents its share of complexity and class counsel handled the case competently and professionally.   To their credit, counsel for the Plaintiffs did a great deal of research prior to filing suit and therefore had reason to believe that liability was clear and the potential class was large.

But the underlying lawsuit here was not complex.   It was undisputed that Defendant made thousands of automated calls without express consent, and Plaintiffs knew early on that Defendant had $4 million to $6 million of insurance coverage.   The only real issues were whether the Defendant could prevail on its theory of implied consent and whether the Defendant could protect

the identity of its customers.   It is true, however, that Defendant litigated this case aggressively and somewhat vexatiously, which required a great deal of additional work by Plaintiffs' counsel.

### D.  Costs

Class counsel's fee request includes approximately $28,000 of costs.   These costs include $20,000 in mediation expenses, plus travel.   The Court has reviewed these costs and finds them to be reasonable and relatively modest under the circumstances.   Defendant's objection to these costs are unfounded and rejected by the Court.

### V.       Conclusion

With a $10 million common fund, the accepted range within the Eleventh Circuit for a reasonable fee is $2 million to $3 million, with a benchmark of 25 percent or $2,500,000. Considering the *Johnson* factors, including a lodestar amount of $2,036,250[4] and a discounted value of the common fund, the Court concludes that a reasonable fee award under the circumstances of this case is $2,250,000.   Accordingly, it is hereby

**ORDERED** that the Motion for an Award of Attorney Fees and Costs (Doc. 105) is **GRANTED IN PART**, as set forth above, and the Court hereby awards a fee of $2,250,000.[5]

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 30, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[4] As noted *supra*, this figure is based on a revised lodestar amount of $678,750 multiplied by three.   Even using the Plaintiffs' original figure of $1,046,153, a multiplier at the low end of the normal range – i.e., two times the amount – would result in a fee of $2,092,306.

[5] This figure includes the $28,427.14 in costs for which Plaintiffs' counsel sought reimbursement.   (Doc. 105 at 29-30).